UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN BURNS, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:01 CV 1442 (AVC) |
| | : | |
| V. | : | |
| | : | |
| TOWN OF SOUTHBURY; | : | |
| ALFIO CANDIDO, Jr., FIRST | : | |
| SELECTMAN, JOSEPH FROEHLICH, | : | |
| CONNECTICUT STATE TROOPER, | : | JUNE 7, 2005 |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Defendants, Town of Southbury and Alfio A. Candido, Jr., (collectively the "Defendants") hereby submit this Memorandum of Law in support of their Motion Summary Judgment on all claims alleged in the Plaintiff's Complaint dated August 1, 2001.

## I.     PRELIMINARY STATEMENT

The Plaintiff, a police officer, alleges that he was wrongfully denied a promotion to Corporal and claims that he was wrongfully suspended by the Defendants. He asserts that his treatment was in retaliation for the Driving While Intoxicated ("DWI") arrests he made, or in the alternative because of his police union activities. He also claims that he was denied procedural Due Process and had emotional distress intentionally inflicted upon him. However, based on case law authority and other supporting documentation, the Defendants are entitled to summary judgment in their favor. The Plaintiff engaged in no activities protected by the First Amendment and fails to plead or produce any evidence of a causal connection between his DWI arrests or union activities and the alleged harms he complains of. His Equal Protection claim fails because there is no right to be free from retaliation under the Equal Protection Clause. Further, the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Plaintiff was provided with procedural Due Process, including a full-blown hearing, and that

claim fails as well.  The Plaintiff's constitutional claims also fail because Mr. Candido is entitled

to qualified immunity and the Plaintiff cannot attribute any municipal violations to Southbury

under the framework of <u>Monell v. Department of Social Servs.</u>  Finally, the Plaintiff's

Intentional Infliction of Emotional Distress claim does not plead a colorable claim under state

common law, is preempted by the Labor Management Relations Act, and the Defendants are

entitled to governmental immunity on that claim.

## II.     <u>BACKGROUND</u>

Southbury is a community of approximately 18,000 citizens incorporated under the laws

of the State of Connecticut.  (Deposition of Alfio A. Candido, Jr., October 26, 2004, hereinafter

"Candido Dep.," p. 98, attached as Exhibit A.)  Southbury maintains a Board of Selectmen

consisting of six (6) members, including the First Selectman.  (<u>See</u> Southbury Charter, § 301,

attached as Exhibit B; Candido Dep., p. 20.).  At all times relevant to the Complaint, Mr.

Candido served as Southbury's First Selectman.  (Complaint, ¶ 2.).  The First Selectman serves

as the full-time executive and chief administrative officer of the Town.  (Charter, § 401.)  Mr.

Candido does not own, and has never owned a liquor store.  (Affidavit of Candido, "Candido

Aff.," attached as Exhibit C, ¶ 4.)

The Plaintiff is a Southbury police officer who resides in Wolcott, Connecticut.

(Deposition of  Plaintiff, December 17, 2004, "Pl. Dep.," attached as Exhibit D, p. 6; Complaint,

¶ 2.)  He alleges he began working for the Southbury Police Department (the "Department") in

1990.  (Complaint, ¶ 4.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### A.    The Southbury Police Department

Southbury operates the Department in conjunction with the Connecticut State Police. Under Southbury's Charter, the First Selectman serves as the Chief of the Department. (Charter, § Section 507.17.) However, the day-to-day operations of the Department are overseen by resident State Troopers from State Police Troop A, and these State Troopers do not report to the First Selectman. (Pl. Dep., p. 20; Deposition of Joseph Froehlich, April 12, 2005, hereinafter "Froehlich Dep.," p. 11, attached as Exhibit E.) Southbury has one State Trooper, a Sergeant, who leads the Department. From April 1997 to August 2001, State Police Sergeant Joseph Froehlich led the Department. (Froehlich Dep., p. 7.) Two (2) additional State Police officers comprise the next level of command. The State Police officers are all higher in the chain of command than the Town officers. The Department also employs at least three (3) Corporals who have supervisory authority over the Department's patrolmen. The Corporals are Town officers, and not State Police officers. (Candido Aff., ¶¶ 5-6.)

The Department is unionized under the American Federal of State, County, and Municipal Employees Local 15 (hereinafter the "Union"). (Complaint, ¶ 6.) Southbury and the Union have entered into a collective bargaining agreement recognizing the Union as the exclusive bargaining agent for the employees of the Police Department. (Complaint, ¶ 7.) At all times relevant to the Complaint, Southbury and the Union maintained a collective bargaining agreement recognizing the Union as the exclusive bargaining agent for the employees of the Department. (The Agreement between the Town of Southbury and the Union, effective 1997-2000, the "CBA," is attached as Exhibit F.) At all times relevant to his Complaint, the Plaintiff was a member in good standing of the Union, and therefore subject to its provisions and agreements. (Complaint, ¶ 9.) Since 1999, the Plaintiff has served as Vice President of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Union.  (Pl. Dep., p. 12; Complaint, ¶ 6.)  The Vice President's duties include assisting Union members in the grievance process.  (Pl. Dep., pp. 14-15.)

**B.     The Plaintiff's Problems at the Department**

During his tenure with the Department, the Plaintiff has exhibited some troubling behavior, including insubordination toward superiors and problem interactions with citizens. These problems led to "needs improvement" scores on two Performance Evaluation and Observation Reports under the "interpersonal relations" subsection.  (Reports attached hereto as Exhibit G, authenticated by Candido Aff., ¶ 7.)  These issues are particularly problematic in a town such as Southbury with a small police force (14-15 officers) and a small population consisting of the largest proportion of seniors in the state.  (Candido Aff., ¶ 8.)

In February 1996, the Plaintiff refused to report to one of the State Troopers resident in Southbury regarding a traffic control issue, stating to Mr. Candido: "Please be advised that I would not be able to serve as the liaison to the LTA [Legal Traffic Authority] any longer if I am to report to the Resident Trooper.  (2-15-96 memo to Mr. Candido from Plaintiff attached as Exhibit H, and marked as Exhibit 7 in Pl. Dep.)  In response, the Plaintiff was advised by Mr. Candido that "if you refuse to comply with a request from the Resident trooper that falls within your realm of police expertise, this could be considered insubordination, and therefore is subject to discipline."  (2-23-96 memo to Plaintiff from Mr. Candido attached as Exhibit I, and marked as Exhibit 8 in Pl. Dep.)

On December 11, 1999, Trooper Clayton Brown ordered the Plaintiff that he was not to work his requested overtime to complete a particular project.  However, the Plaintiff did indeed work unauthorized overtime on December 11, 1999 in direct violation of Trooper Brown's order. As a result, the Plaintiff was warned that "future instances [of insubordination] will be dealt with

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

on a progressive discipline level." (Performance Observation Report attached as Exhibit J, authenticated by Candido Aff., ¶ 9.) On another occasion, the Plaintiff failed to salute a Lieutenant at the State Police barracks, though required to do so. Sergeant Froehlich had to counsel him that he was required to salute the Lieutenant, a superior officer. (Froehlich Dep., pp. 62-63.) On yet another occasion, the Plaintiff failed to obey Sergeant Froehlich's directive that all warrants were to be approved by him or another supervisor. (Froehlich Dep., p. 59.) Further, in 1998, the Plaintiff disobeyed an order to discontinue a high-speed chase. (Froehlich Dep., pp. 65-66.)

Moreover, Mr. Candido and Sergeant Froehlich received complaints from two local families claiming that Plaintiff was unfairly targeting them. (Froehlich Dep., p. 39; Letter from Paul Zaloumis dated May 18, 1998, attached as Exhibit K and authenticated by Candido Aff., ¶ 10.) In fact, the Plaintiff had been ordered by the Department to have no interaction with these two families, the Arnold and Zaloumis families. (Froehlich Dep., pp. 38-39, 41-42.) The Department also received complaints from citizens including Attorneys David Bichelli and James Diamond that the Plaintiff was intimidating and stalking members of the public. (Candido Dep., p. 71; Froehlich Dep., pp. 47-49, 75-76.)

**C.    Corporal Promotions at the Department and the Promotion of Brian Hughes**

Under the CBA, the "First Selectman/Police Chief has the sole responsibility for determining selection criteria for the position of corporal." (CBA, Art. VI.A.) The selection of Corporals is left to the First Selectman's "discretion," however, "[a] minimum qualification of five (5) years of police experience [is] required for the position of corporal." (CBA, Art. VI.A.) Southbury's Personnel Rules state that the First Selectman may delegate interviews of candidates

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

to "his designees," and may utilize written and/or oral examinations in the promotional process. (Personnel Rules, attached as Exhibit L, § 6.2.)

Using the discretion afforded him under the CBA and the Personnel Rules, Mr. Candido elected to redesign the Corporal promotional process in 2000 in anticipation of filling a vacancy. (Candido Aff., ¶ 11.)  To that end, Mr. Candido asked Sergeant Froehlich to make a recommendation for redesigning the examination.  (Candido Aff., ¶ 12.)  Sergeant Froehlich studied the promotional practices of other police departments and state agencies and made a recommendation for a new process to Mr. Candido.  (Froehlich Dep., pp. 81-82.)  The process recommended included three (3) components: a written examination worth forty percent (40%); an oral examination worth forty percent (40%); and a component worth twenty percent (20%), based upon officers' training and experience as well as written reports called "performance evaluation reports" and "performance observation reports."  (Froehlich Dep., pp. 81, 83.)  Mr. Candido accepted Sergeant Froehlich's recommendation and made this the Corporal promotional process.  (Froehlich Dep., p. 81; Candido Dep., p 41.)

On or about April 25, 2000, Sergeant Froehlich sent a memorandum to all officers notifying them of a promotional exam. (Notice of Promotional Exam, Exhibit 9 from Pl. Dep., attached as Exhibit M.)  This notice listed the written examination date as June 6, 2000 and the oral examination as between June 12, 2000 and June 16, 2000.  Id.

Plaintiff and two other Southbury officers, Duane Manville and Brian Hughes, applied for the position of Corporal.  (Candido Dep., p. 46; Pl. Dep., p. 109.)  Because the Plaintiff's planned vacation conflicted with the date of the written examination, the exam was rescheduled to accommodate the Plaintiff.  (Froehlich Dep., p. 102.)  Sergeant Froehlich drafted the questions for the written examination and administered that test.  (Froehlich Dep., pp. 84, 88; Candido

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Dep., p. 39.)  The written exam was graded by a State Police Master Sergeant and Sergeant, as well as by an Assistant State's Attorney.  (Froehlich Dep., pp. 88-89.)  The oral exam questions were also created by Sergeant Froehlich.  (Froehlich Dep., p. 85.)  The oral board consisted of Sergeant Froehlich, Southbury labor counsel James Smith, Esq., and Danbury Police Captain Mark Rosato.  (Froehlich Dep., p. 90.)

All three (3) candidates had served with the force for approximately ten (10) years. (Candido Aff., ¶ 13.)  All three (3) applicants also scored well on the written and oral test portions of the Corporal's Test.  The Plaintiff scored 32 on the oral, while Officer Hughes scored a nearly identical 31.83, and Officer Manville scored a 27.  (Pl. Dep., p. 109; Exhibit 11 from Pl. Dep., attached hereto as Exhibit N.)  On the written exam, the Plaintiff scored 21.5, Officer Hughes scored 20.25, and Officer Manville scored a 19.  Id.  Mr. Candido then conducted the third part of the evaluation to determine which candidate would be the best leader in the Corporal position.  (Complaint, ¶ 21; Candido Dep., p. 51.).  However, Mr. Candido did not receive the oral or written test scores before he compiled the scores for the third and final portion of the Corporal's Exam.  Rather, Mr. Candido completed the third component and forwarded those scores to Sergeant Froehlich, who calculated the final scores and presented them to Mr. Candido. (Froehlich Dep., pp. 92-93; Candido Aff., ¶ 14.)

Then-Officer Hughes was known for his leadership, selfless teamwork and initiative at the Department.  (Candido Aff., ¶ 15.)  His efforts included creating and organizing a very successful program that introduced young people to careers in law enforcement.  (Candido Aff., ¶ 16; Candido Dep., p. 99.)  Under Hughes's leadership, that program has become on of the most recognized in the State of Connecticut.  (Candido Aff., ¶ 17.)  As an officer, Mr. Hughes also volunteered to undertake the considerable task of helping to run the Department's Motor Pool.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(Candido Aff., ¶ 18.)  This included taking responsibility to ensure that the Department's fleet was in working order and properly serviced and otherwise maintained.  (Candido Aff., ¶ 18.)  Officer Hughes was well-liked and known as a dependable officer with well-rounded credentials.  (Candido Aff., ¶ 20.)

Officer Manville was also a good officer.  He did not, however, maintain the extraordinary level of leadership and commitment to the Department demonstrated by Officer Hughes.  (Candido Aff., ¶ 21.)  The Plaintiff maintained a good record for DWI arrests, and received credit for his accomplishments in that area.  (Candido Dep., p. 58.)  However, the Plaintiff had taken it upon himself to make DWI arrests his primary focus instead of focusing on well-rounded police work and leadership endeavors.  (Candido Aff., ¶ 22.)  Moreover, as described above, the Plaintiff had a history of problem interactions within the Department and with the citizenry.

On the basis of Hughes' demonstrated leadership ability, versus the Plaintiff's problems interacting with the public and past issues with authority, Mr. Candido determined that Hughes would be awarded the highest score on the third component of the examination.  (Candido Aff., ¶ 23.)  Mr. Candido forwarded this score to Sergeant Froehlich who tallied the overall scores and informed Mr. Candido that Mr. Hughes had received the highest score.  (Froehlich Dep., p. 99.)  Officer Hughes was consequently promoted.  (Pl. Dep., p. 110.)

The Plaintiff was entitled under his collective bargaining agreement to bring a grievance protesting the decision, and did so.  This grievance was the subject of an arbitration before the State Board of Mediation and Arbitration.  The State Board's ruling on that grievance has not yet been issued.  (Candido Aff, ¶ 24.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### D.       The "John Doe" Incident and the Plaintiff's Insubordination

On or about July 20, 2000, the Department received a report that a man was running on the girders of a steel bridge connecting the towns of Southbury and Newtown, Connecticut. (Complaint, ¶ 24.)  The Plaintiff, among others, responded to the call.  (Complaint, ¶ 25.)  Upon arriving on the scene, the Plaintiff found that the individual reported running on the girders, identified as John Doe, was threatening suicide.  (Complaint, ¶ 25.)  Connecticut State Troopers Sergeant Mark Colangelo and Clayton Brown also arrived on the scene.  (Complaint, ¶ 26.)

After the state troopers took control of the scene, John Doe's sister, identified as "Jane Doe," arrived on the scene and walked to the bridge to confront her brother.  (Complaint, ¶ 27). Jane Doe was "obviously highly intoxicated" and was "shouting" a "barrage of profanity and was making the situation even more stressful and was jeopardizing [the officers] efforts to convince the suicidal party not to jump." (Statement of Sergeant Colangelo, attached hereto as Exhibit N, Pl. Dep. Exhibit 14 and authenticated by Candido Aff., ¶ 25.)  Indeed, the Plaintiff admits that Jane Doe was causing a "disturbance" at the scene, and "exasperated the scene."  (Pl. Dep., pp. 120-21, 130.)

Trooper Brown, who was on the bridge, stopped Jane Doe and identified himself as a State Trooper and asked Jane Doe to leave the bridge.  Both John Doe and Jane Doe were in an agitated and emotional state, and Trooper Brown was forced to physically restrain Jane Doe when she became combative.  Trooper Brown handcuffed Jane Doe and another instructed the Plaintiff to continue the arrest of Jane Doe and to take over the Jane Doe investigation.  (See Trooper Brown's statement, Exhibit 15 from Pl. Dep., attached hereto as Exhibit O.)  Despite the fact that the Plaintiff acknowledges the order was "lawful," the Plaintiff refused the order of his superior officer.  (Pl. Dep., p. 25.)   The Complainant's actions caused a public commotion and

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

"contributed to the tensions at the scene."  (Pl. Dep., pp. 120-21, 130; Exhibit O.)  Further, Troopers Brown and Colangelo were forced to deal with the insubordination of the Plaintiff and the possible risk posed by Jane Doe, instead of dealing with the John Doe concurrent incident. The Plaintiff's refusal to follow Troopers Brown and Colangelo's orders made the officers appear disorganized and not in control.  (See Exhibit O.)The Plaintiff's refusal further put those present, including John Doe, Jane Doe, and his fellow officers, in danger.  (See Exhibit N.)

The Plaintiff later admitted that he failed to follow the order.  (Complaint, ¶ 32.)  The Plaintiff apologized because he failed to follow orders.  (Complaint, ¶ 32; Pl. Dep., p. 138-39.)

### E.    The Department's Investigation and Imposition of Discipline

After the incident, Mr. Candido met with Sergeant Froehlich and indicated that he wanted the incident investigated.  (Froehlich Dep., p. 112.)  Sergeant Froehlich reported this to his superior, State Police Lieutenant Benjamin Chamble, and Lieutenant Chamble assigned the investigation of the incident to Sergeant Froehlich.  (Froehlich Dep., p. 114.)

Sergeant Froehlich's investigation including obtaining written statements from witnesses, including Sergeant Colangelo, Trooper Brown, and the Plaintiff.  (See Sergeant Froehlich's investigative report, attached hereto as Exhibit P.)  Sergeant Froehlich also interviewed seven (7) volunteer firefighters who were present at the scene.  Id. at 3.  Of note, in his written statement, Sergeant Colangelo described the Plaintiff's "performance and demeanor during this incident [ ]as unacceptable and a blatant act of insubordination."  Sergeant Colangelo further wrote that "[h]is defiance and failure to remove the accused female immediately added to an already stressful situation. It is my opinion that this female's prolonged presence at the scene could have jeopardized the efforts of the State Police personnel attempting to convince the suicidal party not to jump form the bridge."  (Exhibit N.)  Trooper Brown echoed these sentiments, writing:

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Officer Burns stated, "I'm not arresting her, I have nothing to do with this case and I did not see anything." This Trooper attempted to inform Officer Burns that he was going to take over the investigation and take the female into custody, but was interrupted each of several times by Officer Burns, who was raising his voice over this Trooper's. During this time frame Officer Burns stated, "I'm not taking this fucking case" and "I am not arresting her."

Officer Burns also stated, "You can't order me to take this case" and added several times that he was not going to arrest the female or investigate the incident because he did not see what took place. Officer Burns made these statements in a loud raised tone of voice and within close proximity to several volunteer firefighters, as well as other Volunteer Ambulance personnel in the area.

(See Exhibit O.) An additional eyewitness, Department Chaplain Father Frederick Curtis, gave a statement confirming that the Plaintiff, "upon being instructed by Tpr. Brown to take the female in question into custody, replied, 'I'm not going to arrest her.'" (Statement of Father Curtis, Exhibit 12 from Candido Dep., attached hereto as Exhibit Q.) On the basis of these witness statements and his investigation, Trooper Froehlich "established that…Resident Trooper Clayton Brown issued a legal order to officer Burns. This verbal command was given directly to officer Burns and he intentionally disobeyed this order." (Exhibit P.)

Mr. Candido, as Chief of Police, recommends the punishment for police officers acting contrary to their civil responsibilities. (Complaint, ¶ 36.) However, the Southbury Board of Selectman can approve or disapprove the Chief of Police's recommendations. (Charter, § 302; Complaint, ¶ 38.) The Town of Southbury considers insubordination by police officers a serious offense, and, in the Past, acts of insubordination in circumstances posing much less danger than the acts of the Plaintiff, received harsh penalties. For example, an officer who refused to remove a four-leaf clover pin from his helmet when instructed by a superior received a 10-day suspension, despite the fact that the pin did not pose any danger to the public or other officers. (Candido Dep., p. 124.) Punishments are severe, in part, to discourage any acts of insubordination among the force, no matter how small. (Candido Aff., ¶ 26.) It goes without

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

saying that adherence to orders is integral to the operation of any para-military organization, such as a municipal police department.  (Candido Aff., ¶ 27.)

After providing the Plaintiff with notice of the charges and evidence against him and allowing him an opportunity to explain his actions, the Southbury Board of Selectman held a meeting to decide the Plaintiff's punishment for his admitted insubordination.  (Candido Aff., ¶ 28.)  Based upon the findings of Trooper Froehlich's report, the Plaintiff's unsatisfactory explanation for his actions, and the potential danger caused by the Plaintiff's actions, the Board placed the Plaintiff on sixty-day suspension.  (August 29, 2000 letter to Plaintiff regarding the Board's findings and outlining previous acts of insubordination is attached hereto as Exhibit R and authenticated by Candido Aff., ¶ 29.)  The Plaintiff filed a grievance regarding his suspension, and the matter was eventually arbitrated before the State Board of Mediation and Arbitration.  (See Notice of Arbitration, attached as Exhibit S.)

F.    The Plaintiff's Complaint

In his Complaint dated August 1, 2001, the Plaintiff alleges in the First Count that Mr. Candido retaliated against him because of his Union activities and his DWI arrests, in violation of the First Amendment.  The Second Count is a claim that Southbury and Mr. Candido did not provide the Plaintiff the right to be heard prior to the issuance of his suspension, in violation of his right to due process.  The Third Count alleges violations of Fourteenth Amendment Equal Protection as to Mr. Candido.  The Fourth Count is a claim for violations of the First and Fourteenth Amendments as to the Town of Southbury for its alleged failure to enforce appropriate guidelines.  Finally, the Fifth Count alleges intentional infliction of emotional distress.  The Complaint seeks money damages in the amount of five million dollars, punitive

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

damages, and attorneys' fees.  Though the Complaint originally named Mr. Froehlich, the case against him was dismissed via the Court's ruling dated July 10, 2002.

For the reasons set forth more fully below, the Court should dismiss all of the Plaintiff's claims against the Defendants because there are no genuine issues of material fact on any of the claims.

## III.     ARGUMENT

### A.     Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The burden is on the moving party to show that no material facts are in dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Once the moving party has met its burden, the opposing party must come forward with specific evidence that proves there is a genuine issue of material fact for trial.  Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986).  The Second Circuit has recognized that "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases … the salutary purpose of summary judgment – to avoid protracted, expensive and harassing trials – apply no less to discrimination cases than to … other areas of litigation."  Abo-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466 (2d. Cir. 2000) (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).  "Much more recently, the Supreme Court reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact." Id. (citing Reeves v.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000), quoting St. Mary's

Honor Ctr. v. Hicks, 509 U.S. 502, 524, 113 S. Ct. 2742 (1993)).

In order to overcome a motion for summary judgment, a plaintiff must offer specific

support for his/her claims, not simply conclusory allegations.  See Bickerstaff v. Vassar College,

196 F.3d 435, 451 (2d Cir. 1999); Martin v. Town of Westport, 329 F.Supp.2d 318 (D.Conn.

2004).  A movant's burden is satisfied if it can point to an absence of evidence to support an

essential element of the non-moving party's claim.  Goenaga v. March of Dimes Birth Defects

Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

**B.**    **The Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law
and the Plaintiff Lacks Any Evidence to Support it.**

The Plaintiff claims that he was retaliated against in violation of his First Amendment

rights.  In order to establish a prima facie case of retaliation in violation of the First Amendment,

a plaintiff must show that "(1) his speech addressed a matter of public concern, (2) he suffered an

adverse employment action, and (3) a causal connection existed between the speech and the

adverse employment action so that it can be said that his speech was a motivating factor in the

determination."  Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir.2004) (citation omitted).  Whether a

plaintiff is claiming first amendment protection for expressive or associative activities, he or she

must still show that their conduct touches on a matter of public concern.  Id. at 104.  If Plaintiff

satisfies the prima facie test, the Defendants may avoid liability by "demonstrat[ing] by a

preponderance of the evidence that it would have taken the same adverse action regardless of the

protected speech."  Id.  Here, the Plaintiff cannot show either the first or third element of his

claim.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

1.      **Retaliation for Union Activities**

The Plaintiff first claims that his suspension was in retaliation for his "Union activities." (Complaint, ¶ 52.)  However, these activities did not address a matter of public concern and therefore do not constitute protected speech.  Moreover, there is no evidence of any causal connection between the Plaintiff's "Union activities" and his suspension.

a.      **The Plaintiff's Union Activities Did Not Touch on a Matter of Public Concern.**

"Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record."  Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir.1999).  The threshold question in assessing the free speech claim of a discharged government employee is whether the employee has spoken "as a citizen upon matters of public concern" or merely "as an employee upon matters only of personal interest."  Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).  Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community."  Id. at 146.  Speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern.  Id. at 148.  In making this determination, the Court considers the "content, form, and context of a given statement, as revealed by the whole record."  Id. at 147-48.

Here, the Plaintiff claims that he served as the Union's Vice President, and claims he was "personally responsible for twelve (12) Union grievances against Southbury, either on his own behalf or on behalf of Union members."  (Complaint, ¶¶ 6, 10.)  However, in none of these grievances was the Plaintiff speaking "as a citizen upon matters of public concern."  Rather, the grievances all relate to the internal working conditions of the Department.  This is a point that

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Plaintiff misapprehends.  Telling in this regard was the Plaintiff's statement at his deposition: "every grievance is a matter of public concern."  (Pl. Dep., p. 38.)

In his deposition and interrogatory responses, the Plaintiff explained his grievances. (Plaintiff's Interrogatory Responses No. 17, attached hereto as Exhibit T and marked as Exhibit 4 in Pl. Dep.)  Four (4) of the grievances were brought by the Plaintiff on his own behalf regarding personalized disputes with the Department.  These are: 1) the 12-19-99 grievance alleging that he was wrongfully denied overtime wages (Pl. Dep., pp. 61, 67); 2) the 1-21-00 grievance claiming that the Plaintiff was owed overtime pay (Pl. Dep., p 70); 3) the 7-19-00 grievance regarding the Plaintiff's non-promotion to Corporal (Pl. Dep., p. 75); and 4) the 10-3-00 grievance related to the Plaintiff's medical insurance while on suspension (Pl. Dep., pp. 76-77).  As set forth above, these are clearly grievances pertaining to internal personnel disputes and working conditions that do not involve matters of public concern.  See Connick, 46 U.S. at 148.  Additionally, two of these grievances were filed after the June 2000 Corporal promotion, and therefore could not have possibly factored into Mr. Candido's selection.  One of these also occurred after the Plaintiff was suspended, and therefore could not have served as a basis for that suspension.

The remaining grievances referenced by the Plaintiff also relate only to officers' working conditions and not to matters of broader public concern.  These include: 1) a 1994 grievance that the Plaintiff concedes is not part of his retaliation claim (Pl. Dep., p. 33); 2) a 3-9-98 grievance protesting the Department's order that computers be used to draft reports, rather than allowing reports to be done by hand (Pl. Dep., pp. 34-35); 3) a 6-25-99 grievance over the rate of pay received by officers for private duty jobs (Pl. Dep., p. 42); 4) a 12-16-99 grievance regarding use of pagers within the Department (Pl. Dep., pp. 46-47); 5) a 12-16-99 grievance claiming lost overtime pay by the Plaintiff and a Corporal (Pl. Dep., pp. 57-59); 6) a 12-13-99 grievance filed

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

on behalf of Corporal Slaiby regarding his use of holiday time off, which the Plaintiff filed

because "[Slaiby] asked [him] to" (Pl. Dep., p. 64); and 7) a 1-4-00 grievance regarding schedule

changes for Department officers (Pl. Dep., pp. 69-70).

As the Union's Vice President, it was the Plaintiff's responsibility to process grievances

on behalf on Union members. (Pl. Dep., 15.)  As such, they are part and parcel of the duties of

his position, and are not protected by the First Amendment for that reason.  See Kelly v. City of

Mount Vernon, 344 F.Supp.2d 395 (S.D.N.Y. 2004) (A communication by an employee to an

employer in the course of the employee's normal duties, in routine form, and containing standard

contents is not likely to address a matter of public concern.); Morris v. Crow, 142 F.3d 1379,

1382-83 (11th Cir.1998) (speech that occurs in the course of and as part of an employee's

ordinary duties is not protected.)

The mere fact that these grievances may have been items that affected officers other than

the Plaintiff does not convert them into protected expressions, because there is still no broad

public concern in the grievances.  Additionally, even if the grievances were somehow

tangentially related to a matter of public concern, they are still focused on the Department's

working conditions, and are not protected by the First Amendment.  See Ezekwo v. NYC Health

and Hosp. Corp., 940 F.2d 775, 781 (2d Cir.1991) (affirming district court's decision that

rejected a medical resident's claim that her series of letters and memoranda complaining of

various conditions at the hospital, including supervision, teaching skills, management, and

hospital maintenance, was constitutionally protected speech under the First Amendment. The

Court determined that the resident was not seeking to protect the public welfare and agreed with

the district court's finding that "the mere fact that one or two of Ezekwo's comments could be

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

construed broadly to implicate matters of public concern does not alter the general nature of her statements.")

>    **b.    The Plaintiff has Not Produced any Evidence of a Causal Connection Between His Union Activities and Suspension or Non-Promotion, and His Allegations are Legally Insufficient.**

The Plaintiff claims that "[t]he suspension was in retaliation for the plaintiff's Union activities." (Complaint, ¶ 52.) His allegation with regard to his non-promotion does not even mention retaliation, but merely states: "[b]ased on the illegitimate score by Candido, plaintiff was denied promotion." These allegations are not only untrue, but are insufficient, as a matter of law, to survive summary judgment. (See Candido Aff., ¶ 33, denying any retaliation.)

"[The Second Circuit has] held that a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link. Instead, he must produce 'some tangible proof to demonstrate that [his] version of what occurred was not imaginary.'" Cobb, 363 F.3d at 108, quoting Morris v. Lindau, 196 F.3d 102, 111 (2d Cir.1999). In fact, in the past, this same sort of claim has been dismissed for failure to state a claim. For example, in Estate of Smith v. Town of West Hartford, 186 F.Supp.2d 146, 156 (D.Conn.2002), the court held that the following allegation was insufficient to plead a causal connection: "The complaint merely alleges that Smith was the union president, was active in union activities and that the defendants' failure to take appropriate action was in retaliation for his position as union president and for seeking redress through the collective bargaining agreement on behalf of his fellow officers." Id. Similarly, the Court in this case held that the Plaintiff was not able to state a claim for retaliation against Sergeant Froehlich. (See Court's July 10, 2002 Written Opinion, p. 9 ("The complaint alleges no facts to show that a causal connection exists between Burns' protected association with the Union, the report prepared by Froehlich, and the allegedly adverse employment

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

determination against Burns by the Board.  Therefore, the court finds that the complaint insufficiently pleads a cause of actions based on retaliation.").)  Therefore, this claim must be dismissed because the Plaintiff has failed to allege any facts linking the Plaintiff's Union activities to any alleged deprivation of rights by Defendants Candido and Southbury.

Furthermore, insofar as the Plaintiff is claiming that he was retaliated against simply because of his Union membership or office, those claims fail plainly.  The Plaintiff has been a Union member since commencing with the Department.  (Complaint, ¶ 9.)  In fact, pursuant to the CBA, all members of the Department must be Union members.  (See CBA, Art. III.)  Plaintiff alleges he became Vice President of the Union in "early 1999."  (Complaint, ¶ 6.)  The first action of which Plaintiff complains did not occur until mid-2000, over a year later.  The lack of temporal proximity between these events as alleged renders a retaliation claim unsupportable as a matter of law.

Moreover, the evidence belies any claim of anti-union retaliation.  Mr. Candido is himself a veteran of union activism.  He is a former union steward and at one time ran for union office. (Candido Dep., p. 75.)  Further, Sergeant Froehlich testified that Mr. Candido never expressed any frustration with the Union or any concerns regarding the Plaintiff's activities on behalf of the Union.  (Froehlich Dep., pp. 21, 24.)  Importantly, the Plaintiff has also confirmed that, "[t]o [his] knowledge, there have been no other incidents of retaliation based upon union affiliation" by the Defendants.  (Exhibit T, Response to Interrogatory no. 7.)  There is simply no evidence of any causal nexus between the Plaintiff's union activities and his failure to be promoted or his suspension.  Rather, the evidence supports the Defendants' contention that the decision to promote now-Corporal Hughes was made for legitimate, non-retaliatory reasons.  In fact, Corporal Hughes himself had occupied the same Union office of Vice President as the Plaintiff

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

for the period immediately preceding the Plaintiff's tenure in that position, from approximately 1994 to 1999. (Candido Aff., ¶ 30; Froehlich Dep., pp. 106-07.)

Here, Mr. Candido made every effort to ensure the fairness of the promotional process. Despite the fact that the Charter authorizes him to promote any officer with five (5) years of experience, Mr. Candido sought to redesign the process to ensure fairness by establishing more objective criteria. In other words, Mr. Candido elected to include the components that the Plaintiff scored well on, despite the fact he was not required to. Moreover, when the Plaintiff was unable to attend the written examination, it was rescheduled to accommodate his conflict. (Froehlich Dep., p. 102.) These facts contradict the Plaintiff's claims.

## 2. Plaintiff Cannot State a Claim for Retaliation Based on his DWI Arrests.

The Plaintiff also falsely claims that Mr. Candido retaliated against the Plaintiff for his DWI arrests because Mr. Candido owns a liquor store in Southbury. (See Candido Aff., ¶ 33, denying any retaliation.) The Plaintiff cannot show that his DWI arrests constituted a protected activity and the evidence demonstrates that there exists no causal connection between his arrests and suspension or non-promotion.

Again, just as speech must touch on a matter of public concern to be protected, the Second Circuit has held that, in order to invoke First Amendment protections, other expressive activities must also touch on matters of public concern. See Cobb, 363 F.3d at 104. However, the Plaintiff's DWI arrest record does not constitute an expression by the plaintiff regarding a matter of public concern. It is beyond debate that making arrests for DWI infractions is part of the Plaintiff's job duties with the Department. See Conn.Gen.Stat. § 14-227a. Thus, the Plaintiff was simply doing his job, not expressing himself on a matter of public concern. See Kelly, 344 F.Supp.2d at 395 (A communication by an employee to an employer in the course of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

employee's normal duties, in routine form, and containing standard contents is not likely to address a matter of public concern.); Morris, 142 F.3d at 1382-83 (speech that occurs in the course of and as part of an employee's ordinary duties is not protected.).

In a similar case, Koch v. Hutchinson, 847 F.2d 1436 (10th Cir.), cert. denied, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988), the court held that a fire marshal's report as to the cause of a fire did not constitute speech on a matter of public concern. There, the plaintiff was demoted from his position as Fire Marshal, because he issued a report concluding that a fire had been caused by arson and failed to indicate in the report that a laboratory test suggested that a cracked gas valve was a possible cause. Investigations conducted by others concluded that the fire was not caused by arson. The court held that the plaintiff's report was not on a matter of public concern, because it was "simply one of many routine official reports which are processed through the City's local governmental agencies on a daily basis," it was not helpful to the public in evaluating the conduct of the government, and it was not in any way motivated or inspired by alleged government improprieties or by a desire to expose those improprieties. Id. at 1447-48. Just as fire investigations are important to the public, so are DWI arrests. However, job functions, even related to uncovering criminal behavior, do not garner First Amendment protection if they are routine aspects of one's job.

Moreover, the Plaintiff's cannot demonstrate a causal connection between his DWI arrest record and his suspension. The Plaintiff's suspension was based on a very serious disciplinary infraction which could have served as a justifiable basis for his termination. The Plaintiff has not asserted that his non-promotion was in retaliation for his DWI arrests, only that his suspension was in retaliation for those arrests. (Pl. Dep., p. 115.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In fact, this wild conspiracy theory was dreamt up by the Plaintiff's former attorney, based on a mistaken belief that that Mr. Candido owned a liquor store. (Pl. Dep., p. 92 ("Q. Do you know whether or not Candido owns a liquor store? A. I didn't make that claim. My attorney did.")) Mr. Candido, in fact, does not own a liquor store. (Candido Aff., ¶ 4.; Pl. Dep., p. 94 (admitting that Plaintiff has no knowledge of whether Mr. Candido does in fact own a liquor store.)) Rather, it relatives of Mr. Candido who own a liquor store in Southbury. (Candido Aff., ¶ 31.)

Individuals purchasing liquor from the liquor store in question are not allowed to drink at the liquor store. See Conn.Gen.Stat. § 30-20. Individuals do not leave the liquor store intoxicated, and DWI arrests are not made on individuals leaving the liquor store. See Conn.Gen.Stat. § 30-86(b). On the rare occasion where an intoxicated individual enters the store to purchase liquor, the liquor store is not allowed to sell to that individual, and can be held liable for doing so. See Conn.Gen.Stat. §§ 30-86(b), 30-102. Further, the Plaintiff admits that he is unaware whether his DWI arrests have negatively impacted Mr. Candido's relatives' store. (Pl. Dep., p. 98.) The facts alleged in the Plaintiff's Complaint therefore fail to allege a colorable claim of "retaliation on the basis of DWI arrests," and the Plaintiff's claims in this regard are, at best, a conspiracy theory.

Mr. Candido has actually been quite supportive of the Plaintiff's DWI efforts. In fact, Mr. Candido attended a Mothers Against Drunk Driving ("M.A.D.D.") ceremony where the Plaintiff received an award as a showing of support. (Candido Dep., p. 70.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### C.    Plaintiff's Procedural Due Process Claim Fails as a Matter of Law.

In the Second Count, the Plaintiff claims that he was denied Due Process rights with regard to his suspension.[1]  The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest.  U.S. Const. amend XIV, § 1; Bd. of Regents v. Roth, 408 U.S. 564, 569-70 & n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  However, at the time the Plaintiff filed suit, he had not exhausted the administrative remedies available to him under his collective bargaining agreement, and his grievance regarding his non-promotion is still pending with the State Board of Mediation and Arbitration.  The Plaintiff is therefore precluded from asserting any Due Process infirmities associated with that claim.  See Id.

In accordance with the mandates of Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487 (1985), the Plaintiff was provided with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Id. at 546.  Here, the Plaintiff was informed in a letter from Mr. Candido[2] of the charges against him and was given a copy of Sergeant Froehlich's investigative report prior to a "pre-disciplinary hearing" at which the Plaintiff was permitted to have Union representation and

---

[1] There is no indication that Plaintiff is claiming a denial of Due Process rights with regard to his promotion denial. (See Complaint, Second Count.)  Such a claim would fail because "a civil servant seeking a promotion 'does not possess any mandated right to appointment or any other legally protectable interest.'"  McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir.2001) (quoting Cassidy v. Municipal Civ. Serv. Comm'n, 37 N.Y.2d 526, 529, 375 N.Y.S.2d 300, 337 N.E.2d 752 (1975)); see also Kalkowski v. Town of Hamden, No. 3:99CV1158 (RNC), 2000 WL 435552, at *2 (D.Conn. Mar.13, 2000) (holding that a police officer was not deprived of a property interest where he was not deprived of any employment opportunity except a promotion); Looby v. City of Hartford, 152 F.Supp.2d 181, 190 (D.Conn. 2001)("Here, the City regulations provide that the Chief has discretion to chose which candidates get promoted from the subset of eligible candidates that is certified to him…Thus, the plaintiff has no cognizable property right to promotion to captain.")  Additionally, the Plaintiff did receive generous procedural protections in the form of his grievance process, including an arbitration proceeding.  (Pl. Dep., p. 75.)

[2] This Letter is mistakenly dated "March 17, 2000," but was drafted and sent between July 20 and August 15, 2000. (Candido Aff., ¶ 32.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

explain his side of the story.  (Candido Aff., ¶ 33; Letter attached as Exhibit U, authenticated by Candido Aff., ¶ 32.)   However, even if he had not received the requisite procedural protections prior to the imposition of discipline, the protections afforded him subsequent to the suspension are in accordance with the mandates of the Due Process clause.  (See Exhibit S.)  The Plaintiff certainly cannot claim that the procedure afforded to him by the grievance procedures, most notably the arbitration proceedings before the State Board of Mediation and Arbitration, in any way lacked procedural protections.

A recent decision by Judge Kravitz addressed a similar situation.  In Martin v. Town of Westport, 329 F.Supp.2d 318 (D.Conn.2004), the court examined a grievance procedure similar to that in the instant case.  (See CBA, Art. VIII.)  The procedure in Martin concluded with "Step 4," which allowed the union to appeal the matter to arbitration and stated that "[t]he decision of the Board shall be final and binding on both parties."  The Martin court held that:

> It is well-established in case law that the type of grievance procedure provided Mr. Martin by the CBA is sufficient to satisfy constitutional standards. For example, in Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206 (2d Cir.2003), the Second Circuit held as follows:
>
> The CBA, which governed [plaintiff's] employment, established a grievance and arbitration procedure, and [the plaintiff] took advantage of these procedures by filing two grievances that were considered by the Board and by pursuing arbitration. Courts have held that such post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process. See e.g., Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir.1988); Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir.2002) (pre-deprivation notice and 'the full arbitration afforded by the collective-bargaining agreement w[ere] more than sufficient to satisfy' due process requirements). Harhay 323 F.3d at 213.
>
> It is apparent from Mr. Martin's brief that he takes issue not with the process he was provided but rather with the result reached by that process.

Id. at 335.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Here, as in <u>Martin</u>, the Plaintiff has been given the full ability to testify, have other witnesses testify on his behalf, and cross examine witnesses providing adverse testimony. The Plaintiff has been afforded full due process. In fact, the Plaintiff was in the process of setting forth his case in front of an arbitration panel about the same time he filed a claim stating he had not been heard. Accordingly, his Due Process claim in the Second Count should be dismissed.

**D.     The Plaintiff is Unable to State a Claim Under the Equal Protection Clause.**

In his Third Count, the Plaintiff claims a violation of the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. This claim fails as a matter of law.

The Plaintiff's claim here is that equal protection of the law was denied to him in that "[t]he defendants pursued charges and prosecution in retaliation for the plaintiff's union activities." (Complaint, ¶ 66.) However, the Equal Protection clause does not provide recourse for claims of retaliation. <u>Bernheim v. Litt</u>, 79 F.3d 318, 323 (2d Cir.1996) ("Although claims of retaliation are commonly brought under the First Amendment…and may also be brought under Title VII…we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."); <u>Petrario v. Cutler</u>, 187 F.Supp.2d 26, 35 (D.Conn.2002) (Granting summary judgment to employer and stating "[t]he Second Circuit has not recognized a right under the Equal Protection Clause to be free from retaliation based on union activity."); <u>Grossbaum v. Indianapolis-Marion County Bldg. Auth.</u>, 100 F.3d 1287, 1296 n. 8 (7th Cir.1996)(Equal Protection Clause "does not establish a general right to be free from retaliation"); <u>Watkins v. Bowden</u>, 105 F.3d 1344, 1354 (11th Cir.1997) (Stating that claims of retaliation for expressive activity regarding matters of public concern should be pursued under the First Amendment, and "[a] pure or generic retaliation claim…simply does not implicate the Equal Protection Clause.").

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

As such, the Plaintiff's Equal Protection claim fails as a matter of law and should be dismissed.

    **E.**    **The Plaintiff Cannot Impute Liability to Southbury or to Mr. Candido in His Official Capacity.**

In this case, the Plaintiff cannot impute liability for the Plaintiff's suspension or non-promotion, even if wrongful, to the municipal defendants, i.e., Southbury and Mr. Candido in his official capacity. As such, the claims against the municipal Defendants should be dismissed.

Under Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978), a municipality may only be held liable under 42 U.S.C. § 1983 if a plaintiff proves the existence of: "'(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir.1995) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.1983)). Liability is not available under a theory of respondeat superior. Instead, a municipality is liable only where "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." Brown v. Board of City. Commissioners, 520 U.S. 397, 400, 117 S.Ct. 1382 (1997). A plaintiff may prevail by showing that a final policymaker engaged in a policy or practice of arbitrariness or discrimination in promotions, that a final policymaker knew of and ratified the arbitrariness or discrimination by lower level municipal employees or that the practice of arbitrariness or discrimination in promotions was so widespread as to form a custom and practice of the City, despite the lack of an official policy of arbitrariness or discrimination. See Monell, 436 U.S. at 690-91. "The essential principles espoused in Monell apply equally to defendants sued in their official capacities." Knicrumah v. Albany City School Dist., 241 F.Supp.2d 199, 209 (N.D.N.Y. 2003) citing Monell, 436 U.S. at 690 n. 3.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Here, there is no evidence of any policy on the part of Southbury to either retaliate against employees or to deny them due process of law.  To the contrary, the Town's Personnel Rules specifically state that "[e]mployment in the Town government shall be based on merit and fitness, free of political consideration"  "The Town will deal with it employees based upon the principles of merit" and "[a]ppointment, promotions and other actions requiring the application of the merit principle shall be based on fairness and systematic tests or evaluations." (Exhibit L, Article I.)  In fact, the Plaintiff has admitted that he is unaware of any other incidents of Union retaliation.  (Exhibit T, Interrogatory response no. 7.)  As such, the Plaintiff cannot point to a final policymaker engaged in a policy or practice of arbitrariness or retaliation in promotions and discipline, and cannot impute liability to Southbury for the non-promotion or suspension.

Here, the Plaintiff has alleged a retaliatory motive only on the part of Mr. Candido. However, in imposing the discipline, Mr. Candido was only one of six (6) selectmen voting for the sixty (60) day suspension, and the ultimate decision was made by the Board.  (Complaint, ¶ 45; Candido Dep., pp. 118, 122.)  As the District Court for the Western District of New York observed in <u>Gupta v. Town of Brighton</u>, 9 F.Supp.2d 242, 245-246 (W.D.N.Y.1998), the purported discriminatory motives of one Board member cannot evidence a retaliatory motive for the Board as a whole.  That court stated:

> Moreover, even if it could be established that two of the Town Board members intended to discriminate against the plaintiff, that intent to discriminate can not be imputed to the Town, where the two members constituted a minority of the Town Board, and there are no allegations that the remaining members discriminated or intended to discriminate against the plaintiff. "Municipal liability [cannot rest] on so frail a foundation."

<u>Id.</u> (quoting <u>Scott-Harris v. City of Fall River</u>, 134 F.3d 427, 440 (1st Cir.1997) (holding that a municipality may not be held liable under § 1983 where the basis of the claim is that two of nine

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

municipal board members had discriminatory motives when voting on budget proposal); rev'd on other grounds, <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 118 S.Ct. 966, 969 n.2, 40 L.Ed.2d 79 (1998) (recognizing dismissal of claims against municipality)).  Furthermore, the Board relied largely upon the report of Sergeant Froehlich, who is not a Southbury employee, to arrive at its decision to suspend the Plaintiff.  As such, liability cannot be imputed for the acts of a non-employee.

Because the Plaintiff cannot cite any municipal practice or custom of retaliation in employment practices, he is unable to impute any liability to the Town.  Accordingly, the Plaintiff cannot prove a municipal violation under 42 U.S.C. § 1983, and his claim fails as against the municipal Defendants.

**F.    Mr. Candido is Entitled to Qualified Immunity as to the Plaintiff's Constitutional Claims.**

Insofar as Mr. Candido is being sued in his individual capacity in this case, those claims fail because Mr. Candido is entitled to qualified immunity.  Qualified immunity is more than a simple defense - it is "an entitlement not to stand trial or face the other burdens of litigation,…an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  The question of qualified immunity is an issue to be decided as a matter of law by the court.  <u>Warren v. Dwyer</u>, 906 F.2d 70, 76 (2d Cir. 1990); <u>see</u> <u>Mendoza v. Block</u>, 27 F.3d 1357, 1360 (9th Cir. 1994) (pure question of law).

In <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001), the Supreme Court ruled that the "requisites of a qualified immunity defense must be considered in proper sequence."  <u>See</u> <u>Ehrlich v. Town of Glastonbury</u>, 348 F.3d 48, 54-55 (2d Cir. 2003).  That sequence requires consideration as a threshold matter the question of whether the officials' conduct violated a constitutional right.  <u>Saucier</u>, 533 U.S. at 201.  "This must be the initial inquiry."  <u>Id.</u>  In setting

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

forth the sequenced approach to qualified immunity, the Supreme Court "speaks in mandatory terms -- lower courts *must* determine the violation before engaging in a qualified immunity analysis." Ehrlich, 348 F.3d at 55 (emphasis in original).

In determining whether the violation of a constitutional right has been alleged, the validity of the qualified immunity analysis "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. 635, 639 (1987); see International Action Ctr. v. United States, 365 F.3d 20, 25 (D.C. Cir. 2004). Thus, at the first stage of the inquiry, courts must not define the relevant constitutional right in overly general terms, less they strip the qualified immunity defense of all meaning. International Action, 365 F.3d at 25. For example, it does no good to allege that a public official violated the right to free speech, and then conclude that the right to free speech has been "clearly established" in this country since 1791. Id. Instead courts must define the right "to a degree that would allow officials reasonably to anticipate when their conduct may give rise to liability for damages." Id. (citation, internal quotations and brackets omitted).

If a violation is established, "the next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201. The Second Circuit recently described the process of determining whether a right was "clearly established" in Huminski v. Corsones, 2004 WL 2248175, at *27 (2d Cir. Oct. 7, 2004). In that case, the court recognized that a right is "clearly established" if its "'contours…[are] sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Id. (quoting Anderson, 483 U.S. at 640). "'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Id. That is the right must be defined with

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

"reasonable specificity."  Id. (citation and internal quotation marks omitted).  "In performing this analysis, [courts within the Second Circuit] look to the established law of the Supreme Court and of [the Second Circuit] at the time of the defendants' actions."  Id; see Anobile v. Pelligrino, 303 F.3d 107, 125-26 (2d Cir. 2002).

Under the final step of the analysis, even if a plaintiff demonstrates that a defendant violated a clearly established law, a defendant is entitled to qualified immunity if a reasonable official could have believed that his actions were lawful in light of clearly established law and the circumstances confronting him.  Poe v. Leonard, 282 F.3d 123, 146 (2d Cir. 2002).  A defendant is therefore entitled to summary judgment on qualified immunity grounds, if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officials of reasonable competence could disagree on the legality of the defendant's actions.  Id.  When the facts are not in dispute, the issue of whether an official acted reasonably should be determined by the court on a motion for summary judgment.  Id.  A district court errs by "not conducting the legal inquiry necessitated by the defense of qualified immunity, which requires that a court determine whether under the plaintiff's version of the facts, reasonable officers in the defendant's position could disagree as to the legality of his actions."  Id.

Here, the Defendants strongly believe that the Plaintiff has not engaged in any expression or association protected by the First Amendment.  As set forth above, and based on the caselaw there cited, it certainly cannot be said that it was clearly established in 2000 that retaliation against an employees for their making DWI arrests or processing routine grievances for themselves and other Union members violated the First Amendment.  Determining whether expression touches on matter of public concern entails a sophisticated, fact-specific analysis.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Moreover, even if there had been a violation of clearly established rights, a reasonable official could have believed that Mr. Candido's actions were lawful in light of clearly established law and the circumstances confronting him. Certainly, reasonable officials could disagree as which candidate should have been promoted. When determining the proper candidate for the Corporal position, Mr. Candido considered the candidates' employment histories, and his knowledge of the candidates. (Candido Dep., pp. 51-54.) The evidence reveals that Officer Hughes had established an excellent reputation for teamwork and leadership. The evidence also reveals that the Plaintiff had a questionable reputation for leadership, as demonstrated by his previous (and later) acts of insubordination. Mr. Candido also took into consideration the qualities he deemed crucial to the successful execution of the position. He used all logical available resources, including his own personal knowledge of the three candidates, to make a reasonable determining as to who would be the best candidate for the position.

Further, Mr. Candido's actions with regard to the Plaintiff's suspension were also objectively reasonable. There, he relied on the investigation of Sergeant Froehlich in making his recommendation to the Board of Selectmen and in voting for the suspension. Such reliance was entirely reasonable. See Velez Rivera v. Agosto Alicea, 334 F.Supp.2d 72, 90-91 (D.Puerto Rico 2004) (holding reliance on experts' recommendations sufficient to satisfy the "objectively reasonable" prong of the qualified immunity defense.). Moreover, in imposing the discipline, the Plaintiff was only one of six (6) selectmen voting for the sixty (60) day suspension, and he is immune from liability for the additional reason that his vote was not determinative and his actions were not the "but for" cause of the alleged constitutional deprivation.

Mr. Candido is entitled to qualified immunity in this case, and is entitled to summary judgment on the constitutional claims against him.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**G.    Plaintiff's Intentional Infliction of Emotional Distress Claim Must Be Dismissed.**

The Plaintiff has failed to state colorable claim of intentional infliction of emotional distress under Connecticut's stringent standards.  The Court recognized this infirmity in the Plaintiff's Complaint when it dismissed the Intentional Infliction claim as against Sergeant Froehlich in its July 10, 2002 opinion.

**1.    The Plaintiff Fails to State a Colorable Claim of Intentional Infliction of Emotional Distress.**

The Plaintiff is precluded from asserting this claim at trial because he cannot point to any evidence demonstrating that the Defendants intentionally inflicted emotional distress on him. The standard for proving intentional infliction of emotional distress in Connecticut is a high one, and the Plaintiff's claims do not even approach that threshold.  Accordingly, the Fifth Count of the Plaintiff's Complaint is should be decided in the Defendants' favor on summary judgment.

In order to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of their conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of plaintiff's distress; and (4) the emotional distress sustained by plaintiff was severe.  Petyan v. Ellis, 200 Conn. 243, 253 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."  Id.  Additionally, in the employment context, the Connecticut Supreme Court has found, "the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  Id. at 254, n. 5 (quoting Prosser & Keeton, Torts, § 12 at 60 (5th ed. 1984)).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hill v. Pinkerton Security & Investigation Services, Inc., 977 F. Supp. 148, 159 (D. Conn. 1997) (citations omitted, internal quotation marks omitted).

In this case, the Plaintiff's claims in the Complaint are that he was wrongfully suspended and not promoted. Even if they were somehow true, these allegations are clearly insufficient to withstand a motion for summary judgment. See, e.g., Allen v. Egan, 303 F.Supp.2d 71, 78 (D.Conn. 2004) (Squatrito, J.) ("[Plaintiff's] allegations, which the court accepts as true for the purposes of this motion, essentially amount to employment discrimination. Although employment discrimination is illegal, it does not per se give rise to a claim for intentional infliction of emotional distress."); Hill v. Meta Group, 62 F.Supp.2d 639, 644 D.Conn.1999)("No case has held that a discriminatory failure to promote, standing alone, amounts to extreme and outrageous behavior.") Courts have held that the elements of this tort were not satisfied in cases with far more egregious facts alleged than in the present case.

For example, in Dollard v. Board of Education, 63 Conn.App. 550, 552-53 (2001), the plaintiff alleged that the defendants hypercritically scrutinized every aspect of her work and personal life, publicly admonished her and organized a plan to force her to resign. Despite those allegations, this court determined that the defendants' actions did not constitute outrageous or extreme conduct. Id. at 554. In Appleton v. Board of Education, 254 Conn. 205, 211 (2000), the court did not find extreme or outrageous conduct where the plaintiff was forced to resign, subjected to psychiatric evaluations, escorted off employer's premises by police and subjected to condescending comments made by the employer. See also Carnemolla v. Walsh, 75 Conn.App.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

319, 331-32 (2003) (Court failed to find extreme and outrageous conduct where the plaintiff

employee was accused of embezzling company funds); Bator v. Yale-New Haven Hospital, 73

Conn.App. 576, 577-78 (2002)(Court striking emotional distress claim where employee was

allegedly subjected to abusive and disparate treatment, including unfair pay and discipline, where

supervisors falsely accused him of endangering a patient's life, suggested that he seek psychiatric

help and recommended that he attend anger management classes.)  Accordingly, because the

Plaintiff's allegations do not, as a matter of law, rise to level of being atrocious or utterly

intolerable, summary judgment is appropriate as to the Fifth Count.[3]

### 2. Southbury and Mr. Candido are Entitled to Governmental Immunity on the Plaintiff's Intentional Infliction Claim.

Additionally, Southbury and Mr. Candido are entitled to government immunity as

respects the Plaintiff's tort claim against them in his official capacity.  Under Conn. Gen. Stat. §

52-557n (a)(2)(A), a "political subdivision of the state shall not be liable for damages to person

or property caused by: Acts or omissions of any employee, officer or agent which

constitute…actual malice or willful misconduct."  "Under Connecticut law, the term

'willfulness' is synonymous with 'intentional.'"  Pane v. City of Danbury, 267 Conn. 669, 685,

841 A.2d 684 (2004) (Affirming grant of summary judgment for municipality, and holding that

municipality is immune from liability for the tort of intentional infliction of emotional distress, in

accordance with the provisions of § 52-557n (a)(2)(A).)  A lawsuit against a government official

in his or her official capacity "is not a suit against the official but rather is a suit against the

---

[3] 28 USCA § 1367(c) states 'The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--(3) the district court has dismissed all claims over which it has original jurisdiction…'  In this case, it would be unfair to the Defendants do so, given the intentional infliction of emotional distress claim's obvious and complete lack of merit and the expenses attendant in defending a second state court action.  See, e.g., White v. Martin, 23 F.Supp.2d 203, 206 n.6. (D.Conn. 1998) ("Having dismissed all of plaintiff's claims upon which our federal jurisdiction is based, we could decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss them on that basis…However, because these claims are asserted against the [same] defendants as well, and because of the apparent lack of merit in the claims, we choose instead to consider the merits of [the defendant's] motion to dismiss these claims.")

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

official's office.  As such, it is no different from a suit against the [government] itself."  <u>Will v.</u>

<u>Michigan Dept. of State Police</u>, 492 U.S. 58, 71, 109 S.Ct 2304 (1989).  Therefore, the

intentional infliction of emotional distress claims against Mr. Candido in his official capacity is

barred by the provisions of Conn. Gen. Stat. 52-557n.  <u>Hadden v. Southern New England Tele.</u>

<u>Co.</u>, 2004 WL 2039792 (Conn.Super. 2004) (striking intentional tort claims against municipal

employees in their official capacities.).

> **3.    The Plaintiff's Emotional Distress Claim is Preempted by § 301 of the
> Labor Relations Management Act, 29 U.S.C. § 185.**

During all times material to his Complaint, the Plaintiff was a member in good standing

of the Union.  (Pl. Dep., p. 11.)  As such, the Plaintiff's Intentional Infliction claim related to his

suspension and non-promotion is preempted by the LMRA.

"Section 301 of the LMRA confers subject matter jurisdiction over suits alleging

violations of the collective bargaining agreement.... In enacting § 301, Congress intended that

uniform federal labor law would prevail over inconsistent, state specific rules."  <u>Wilhelm v.</u>

<u>Sunrise Northeast, Inc.</u>, 923 F.Supp. 330, 334 (D.Conn.1995). Thus, "[w]hen resolution of a

state-law claim depends upon interpretation of a collective bargaining agreement, the claim must

either be treated as a § 301 claim or dismissed as pre-empted by federal-labor contract law."  <u>Id.</u>

(citing <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 221, 105 S.Ct. 1904, 85 L.Ed.2d 206

(1984)).  Section 301 preemption extends to state law tort claims as well as contract claims. <u>See</u>

<u>Baker v. Farmers Elec. Co-op., Inc.</u>, 34 F.3d 274, 279 (5th Cir.1994) ("In [<u>Allis-Chalmers Corp.</u>

<u>v.] Lueck</u> [471 U.S. 202, 208 (1985)], the Supreme Court recognized that the coverage of section

301 extends beyond contract claims for breach of a labor agreement to include state tort claims

which require analysis of a labor contract.").

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> Whether a claim for intentional infliction of emotional distress is preempted under section 301 of the LMRA depends upon an examination of the alleged facts underlying the plaintiff's claim.  If the conduct is alleged to have occurred during the course of the termination process, as part of appropriate employee discipline, or in connection with the grievance or arbitration proceedings concerning the employee, the claim is preempted because resolution of the claim would require the Court to evaluate the conduct of the employer in light of the terms of the CBA.

Jenkins v. Area Co-op. Educ. Services, 2004 WL 413267, *2 (D.Conn.2004), citing

Kellman v. Yale-New Haven Hosp., 64 F.Supp.2d 35, 36-37 (D.Conn.1999) (employee's claim

for intentional infliction of emotional distress based on his termination preempted) and Ellis v.

Lloyd, 838 F.Supp. 704, 707-08 (D.Conn. 1993) (intentional infliction of emotional distress

claim preempted when based upon employment grievances filed against the plaintiff) and

Anderson v. Coca Cola Bottling Co., 772 F.Supp. 77, 82 (D.Conn.1991) (employee's claim for

intentional infliction of emotional distress based on issuance of written warnings by his

supervisor preempted) and Petrucelli v. Cytec Industries, Inc., 1996 WL 684401, at *5 (D.Conn.

May 23, 1996) (employee's claim for intentional infliction of emotional distress based on

circumstances surrounding his promotions, layoffs, and grievances/arbitrations preempted).

Here, the conduct is alleged to have occurred is "part of appropriate employee discipline" and

promotion processes, and the Intentional Infliction claim is preempted because resolution of the

claim would require the Court to evaluate the conduct of the employer in light of the terms of the

CBA.  As such, the Defendants are entitled to summary judgment on this claim.

   **H.     No Punitive Damages May Be Awarded Against Municipalities or Municipal Employees Sued in Their Official Capacities and the Plaintiff's Punitive Damages Claim is Therefore Improper.**

   "Municipalities and municipal officials who are sued in their official capacities are

immune from punitive damages under the civil rights laws."  M.O.C.H.A. Soc., Inc. v. City of

Buffalo, 199 F.Supp.2d 40, 52 (W.D.N.Y. 2002) citing City of Newport v. Fact Concerts, Inc.,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) and Deepwells Estates Inc. v. Incorporated

Village of Head of Harbor, 973 F.Supp. 338, 351 (E.D.N.Y.1997), appeal dismissed, 162 F.3d

1147 (2d Cir.1998); see also Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 262

(2d Cir. 1997)("[Plaintiff], however, has sued those officers in their official capacity only, so

they enjoy the same immunity from punitive damages as the City.")  Accordingly, the Plaintiff's

claim for punitive damages in this case is improper as against Southbury and Mr. Candido in his

official capacity, and the Defendants should be granted summary judgment with regard to that

portion of the Plaintiff's Prayer for Relief.

## IV.    CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that this Court grant

their Motion for Summary Judgment.


THE DEFENDANTS
TOWN OF SOUTHBURY AND
ALFIO A. CANDIDO, JR.


BY:    _____
James M. Sconzo
Fed. Bar No. ct04571 and
Jonathan C. Sterling
Fed. Bar No. ct24576 of
HALLORAN & SAGE LLP
One Goodwin Square
Hartford, CT  06103
Tele: (860) 522-6103
Their Attorneys

HALLORAN
& SAGE LLP

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

<u>**CERTIFICATION**</u>

This is to certify that on this 8th day of June, 2005, the foregoing was either mailed, postpaid, or hand-delivered to:

Marc. P. Mercier
Beck & Eldergill, P.C.
447 Center Street
Manchester, CT  06040

Beth Z. Margulies
Attorney General's Office
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120


_____
Jonathan C. Sterling

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ ʟʟᴘ

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105