UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN BURNS, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:01 CV 1442 (AVC) |
| | : | |
| V. | : | |
| | : | |
| TOWN OF SOUTHBURY; | : | |
| ALFIO CANDIDO, Jr., FIRST | : | |
| SELECTMAN, JOSEPH FROEHLICH, | : | |
| CONNECTICUT STATE TROOPER, | : | JUNE 7, 2005 |
|     Defendants. | : | |

## **LOCAL RULE 56(a)1 STATEMENT**

Pursuant to Local Rule 56(a)1, the Defendants, Town of Southbury and Alfio A. Candido, Jr., submit the following statement of material facts to which there are no genuine issues to be tried:[1]

1. Southbury is a community of approximately 18,000 citizens incorporated under the laws of the State of Connecticut. (Deposition of Alfio A. Candido, Jr., October 26, 2004, hereinafter "Candido Dep.," p. 98, attached as Exhibit A.)

2. Southbury maintains a Board of Selectmen consisting of six (6) members, including the First Selectman. (See Southbury Charter, § 301, attached as Exhibit B; Candido Dep., p. 20.).

3. At all times relevant to the Complaint, Mr. Candido served as Southbury's First Selectman. (Complaint, ¶ 2.).

4. The First Selectman serves as the full-time executive and chief administrative officer of the Town. (Charter, § 401.)

---

[1] Referenced documents are attached to the Memorandum in Support of Defendant's Motion for Summary Judgment filed herewith.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

5. Mr. Candido does not own, and has never owned a liquor store. (Affidavit of Candido, "Candido Aff.," attached as Exhibit C, ¶ 4).

6. The Plaintiff is a Southbury police officer who resides in Wolcott, Connecticut. (Deposition of Plaintiff, December 17, 2004, "Pl. Dep.," attached as Exhibit D, p. 6; Complaint, ¶ 2.)

7. He alleges he began working for the Southbury Police Department (the "Department") in 1990. (Complaint, ¶ 4.)

8. Under Southbury's Charter, the First Selectman serves as the Chief of the Department. (Charter, § Section 507.17.)

9. However, the day-to-day operations of the Department are overseen by resident State Troopers from State Police Troop A, and these State Troopers do not report to the First Selectman. (Pl. Dep., p. 20; Deposition of Joseph Froehlich, April 12, 2005, hereinafter "Froehlich Dep.," p. 11, attached as Exhibit E.)

10. Southbury has one State Trooper, a Sergeant, who leads the Department. From April 1997 to August 2001, State Police Sergeant Joseph Froehlich led the Department. (Froehlich Dep., p. 7.)

11. Two (2) additional State Police officers comprise the next level of command. The State Police officers are all higher in the chain of command than the Town officers. The Department also employs at least three (3) Corporals who have supervisory authority over the Department's patrolmen. The Corporals are Town officers, and not State Police officers. (Candido Aff., ¶¶ 5-6.).

12. The Department is unionized under the American Federal of State, County, and Municipal Employees Local 15 (hereinafter the "Union"). (Complaint, ¶ 6).

2

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

13. Southbury and the Union have entered into a collective bargaining agreement recognizing the Union as the exclusive bargaining agent for the employees of the Police Department. (Complaint, ¶ 7.)

14. At all times relevant to the Complaint, Southbury and the Union maintained a collective bargaining agreement recognizing the Union as the exclusive bargaining agent for the employees of the Department. (The Agreement between the Town of Southbury and the Union, effective 1997-2000, the "CBA," is attached as Exhibit F.)

15. At all times relevant to his Complaint, the Plaintiff was a member in good standing of the Union, and therefore subject to its provisions and agreements. (Complaint, ¶ 9.)

16. Since 1999, the Plaintiff has served as Vice President of the Union. (Pl. Dep., p. 12; Complaint, ¶ 6.)

17. The Vice President's duties include assisting Union members in the grievance process. (Pl. Dep., pp. 14-15.)

18. The Plaintiff received "needs improvement" scores on at least two Performance Evaluation and Observation Reports under the "interpersonal relations" subsection. (Reports attached hereto as Exhibit G, authenticated by Candido Aff., ¶ 7.)

19. Southbury has a small police force (14-15 officers) and a small population consisting of the largest proportion of seniors in the state. (Candido Aff., ¶ 8.)

20. In February 1996, the Plaintiff wrote to Mr. Candido: "Please be advised that I would not be able to serve as the liaison to the LTA [Legal Traffic Authority] any

3

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

longer if I am to report to the Resident Trooper. (2-15-96 memo to Mr. Candido from Plaintiff attached as Exhibit H, and marked as Exhibit 7 in Pl. Dep.)

21. The Plaintiff was advised by Mr. Candido that "if you refuse to comply with a request from the Resident trooper that falls within your realm of police expertise, this could be considered insubordination, and therefore is subject to discipline." (2-23-96 memo to Plaintiff from Mr. Candido attached as Exhibit I, and marked as Exhibit 8 in Pl. Dep.)

22. On December 11, 1999, Trooper Clayton Brown ordered the Plaintiff that he was not to work his requested overtime to complete a particular project. However, the Plaintiff did indeed work unauthorized overtime on December 11, 1999 in direct violation of Trooper Brown's order. As a result, the Plaintiff was warned that "future instances [of insubordination] will be dealt with on a progressive discipline level." (Performance Observation Report attached as Exhibit J, authenticated by Candido Aff., ¶ 9.)

23. On another occasion, the Plaintiff failed to salute a Lieutenant at the State Police barracks, though required to do so. Sergeant Froehlich had to counsel him that he was required to salute the Lieutenant, a superior officer. (Froehlich Dep., pp. 62-63.)

24. On yet another occasion, the Plaintiff failed to obey Sergeant Froehlich's directive that all warrants were to be approved by him or another supervisor. (Froehlich Dep., p. 59.)

25. Further, in 1998, the Plaintiff disobeyed an order to discontinue a high-speed chase. (Froehlich Dep., pp. 65-66.)

4

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

26. Moreover, Mr. Candido and Sergeant Froehlich received complaints from two local families claiming that Plaintiff was unfairly targeting them. (Froehlich Dep., p. 39; Letter from Paul Zaloumis dated May 18, 1998, attached as Exhibit K and authenticated by Candido Aff., ¶ 10.)

27. In fact, the Plaintiff had been ordered by the Department to have no interaction with these two families, the Arnold and Zaloumis families. (Froehlich Dep., pp. 38-39, 41-42.)

28. The Department also received complaints from citizens including Attorneys David Bichelli and James Diamond that the Plaintiff was intimidating and stalking members of the public. (Candido Dep., p. 71; Froehlich Dep., pp. 47-49, 75-76.)

29. Under the CBA, the "First Selectman/Police Chief has the sole responsibility for determining selection criteria for the position of corporal." (CBA, Art. VI.A.)

30. The selection of Corporals is left to the First Selectman's "discretion," however, "[a] minimum qualification of five (5) years of police experience [is] required for the position of corporal." (CBA, Art. VI.A.)

31. Southbury's Personnel Rules state that the First Selectman may delegate interviews of candidates to "his designees," and may utilize written and/or oral examinations in the promotional process. (Personnel Rules, attached as Exhibit L, § 6.2.)

32. Using the discretion afforded him under the CBA and the Personnel Rules, Mr. Candido elected to redesign the Corporal promotional process in 2000 in anticipation of filling a vacancy. (Candido Aff., ¶ 11.)

5

One Goodwin Square  
225 Asylum Street  
Hartford, CT 06103

HALLORAN  
& SAGE LLP

Phone (860) 522-6103  
Fax (860) 548-0006  
Juris No. 26105

33. To that end, Mr. Candido asked Sergeant Froehlich to make a recommendation for redesigning the examination. (Candido Aff., ¶ 12.)

34. Sergeant Froehlich studied the promotional practices of other police departments and state agencies and made a recommendation for a new process to Mr. Candido. (Froehlich Dep., pp. 81-82.)

35. The process recommended included three (3) components: a written examination worth forty percent (40%); an oral examination worth forty percent (40%); and a component worth twenty percent (20%), based upon officers' training and experience as well as written reports called "performance evaluation reports" and "performance observation reports." (Froehlich Dep., pp. 81, 83.)

36. Mr. Candido accepted Sergeant Froehlich's recommendation and made this the Corporal promotional process. (Froehlich Dep., p. 81; Candido Dep., p 41.)

37. On or about April 25, 2000, Sergeant Froehlich sent a memorandum to all officers notifying them of a promotional exam. (Notice of Promotional Exam, Exhibit 9 from Pl. Dep., attached as Exhibit M.)

38. This notice listed the written examination date as June 6, 2000 and the oral examination as between June 12, 2000 and June 16, 2000. Id.

39. Plaintiff and two other Southbury officers, Duane Manville and Brian Hughes, applied for the position of Corporal. (Candido Dep., p. 46; Pl. Dep., p. 109.)

40. Because the Plaintiff's planned vacation conflicted with the date of the written examination, the exam was rescheduled to accommodate the Plaintiff. (Froehlich Dep., p. 102.)

6

One Goodwin Square　　　　HALLORAN　　　　Phone (860) 522-6103
225 Asylum Street　　　　　& SAGE LLP　　　　Fax (860) 548-0006
Hartford, CT 06103　　　　　　　　　　　　　　Juris No. 26105

41. Sergeant Froehlich drafted the questions for the written examination and administered that test. (Froehlich Dep., pp. 84, 88; Candido Dep., p. 39.)

42. The written exam was graded by a State Police Master Sergeant and Sergeant, as well as by an Assistant State's Attorney. (Froehlich Dep., pp. 88-89.)

43. The oral exam questions were also created by Sergeant Froehlich. (Froehlich Dep., p. 85.)

44. The oral board consisted of Sergeant Froehlich, Southbury labor counsel James Smith, Esq., and Danbury Police Captain Mark Rosato. (Froehlich Dep., p. 90.)

45. All three (3) candidates had served with the force for approximately ten (10) years. (Candido Aff., ¶ 13.)

46. All three (3) applicants also scored well on the written and oral test portions of the Corporal's Test. The Plaintiff scored 32 on the oral, while Officer Hughes scored a nearly identical 31.83, and Officer Manville scored a 27. (Pl. Dep., p. 109; Exhibit 11 from Pl. Dep., attached hereto as Exhibit N.)

47. On the written exam, the Plaintiff scored 21.5, Officer Hughes scored 20.25, and Officer Manville scored a 19. Id.

48. Mr. Candido then conducted the third part of the evaluation to determine which candidate would be the best leader in the Corporal position. (Complaint, ¶ 21; Candido Dep., p. 51.).

49. However, Mr. Candido did not receive the oral or written test scores before he compiled the scores for the third and final portion of the Corporal's Exam. Rather, Mr. Candido completed the third component and forwarded those scores

7

One Goodwin Square    HALLORAN    Phone (860) 522-6103
225 Asylum Street    & SAGE LLP    Fax (860) 548-0006
Hartford, CT 06103        Juris No. 26105

to Sergeant Froehlich, who calculated the final scores and presented them to Mr. Candido. (Froehlich Dep., pp. 92-93; Candido Aff., ¶ 14.)

50. Then-Officer Hughes was known for his leadership, selfless teamwork and initiative at the Department. (Candido Aff., ¶ 15.)

51. His efforts included creating and organizing a very successful program that introduced young people to careers in law enforcement. (Candido Aff., ¶ 16; Candido Dep., p. 99.)

52. Under Hughes's leadership, that program has become on of the most recognized in the State of Connecticut. (Candido Aff., ¶ 17.)

53. As an officer, Mr. Hughes also volunteered to undertake the considerable task of helping to run the Department's Motor Pool. (Candido Aff., ¶ 18.)

54. This included taking responsibility to ensure that the Department's fleet was in working order and properly serviced and otherwise maintained. (Candido Aff., ¶ 18.)

55. Officer Hughes was well-liked and known as a dependable officer with well-rounded credentials. (Candido Aff., ¶ 20.)

56. Officer Manville was also a good officer. He did not, however, maintain the extraordinary level of leadership and commitment to the Department demonstrated by Officer Hughes. (Candido Aff., ¶ 21.)

57. The Plaintiff maintained a good record for DWI arrests, and received credit for his accomplishments in that area. (Candido Dep., p. 58.)

8

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

58. However, the Plaintiff had taken it upon himself to make DWI arrests his primary focus instead of focusing on well-rounded police work and leadership endeavors. (Candido Aff., ¶ 22.)

59. On the basis of Hughes' demonstrated leadership ability, versus the Plaintiff's problems interacting with the public and past issues with authority, Mr. Candido determined that Hughes would be awarded the highest score on the third component of the examination. (Candido Aff., ¶ 23.)

60. Mr. Candido forwarded this score to Sergeant Froehlich who tallied the overall scores and informed Mr. Candido that Mr. Hughes had received the highest score. (Froehlich Dep., p. 99.)

61. Officer Hughes was consequently promoted. (Pl. Dep., p. 110.)

62. The Plaintiff was entitled under his collective bargaining agreement to bring a grievance protesting the decision, and did so. This grievance was the subject of an arbitration before the State Board of Mediation and Arbitration. The State Board's ruling on that grievance has not yet been issued. (Candido Aff, ¶ 24.)

63. On or about July 20, 2000, the Department received a report that a man was running on the girders of a steel bridge connecting the towns of Southbury and Newtown, Connecticut. (Complaint, ¶ 24.)

64. The Plaintiff, among others, responded to the call. (Complaint, ¶ 25.)

65. Upon arriving on the scene, the Plaintiff found that the individual reported running on the girders, identified as John Doe, was threatening suicide. (Complaint, ¶ 25.)

9

One Goodwin Square  
225 Asylum Street  
Hartford, CT 06103

HALLORAN  
& SAGE LLP

Phone (860) 522-6103  
Fax (860) 548-0006  
Juris No. 26105

66. Connecticut State Troopers Sergeant Mark Colangelo and Clayton Brown also arrived on the scene. (Complaint, ¶ 26.)

67. After the state troopers took control of the scene, John Doe's sister, identified as "Jane Doe," arrived on the scene and walked to the bridge to confront her brother. (Complaint, ¶ 27).

68. Jane Doe was "obviously highly intoxicated" and was "shouting" a "barrage of profanity and was making the situation even more stressful and was jeopardizing [the officers] efforts to convince the suicidal party not to jump." (Statement of Sergeant Colangelo, attached hereto as Exhibit N, Pl. Dep. Exhibit 14 and authenticated by Candido Aff., ¶ 25.)

69. Indeed, the Plaintiff admits that Jane Doe was causing a "disturbance" at the scene, and "exasperated the scene." (Pl. Dep., pp. 120-21, 130.)

70. Trooper Brown, who was on the bridge, stopped Jane Doe and identified himself as a State Trooper and asked Jane Doe to leave the bridge. Both John Doe and Jane Doe were in an agitated and emotional state, and Trooper Brown was forced to physically restrain Jane Doe when she became combative. Trooper Brown handcuffed Jane Doe and another instructed the Plaintiff to continue the arrest of Jane Doe and to take over the Jane Doe investigation. (See Trooper Brown's statement, Exhibit 15 from Pl. Dep., attached hereto as Exhibit O.)

71. Despite the fact that the Plaintiff acknowledges the order was "lawful," the Plaintiff refused the order of his superior officer. (Pl. Dep., p. 25.)

72. The Complainant's actions caused a public commotion and "contributed to the tensions at the scene." (Pl. Dep., pp. 120-21, 130; Exhibit O.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

73. Further, Troopers Brown and Colangelo were forced to deal with the insubordination of the Plaintiff and the possible risk posed by Jane Doe, instead of dealing with the John Doe concurrent incident. The Plaintiff's refusal to follow Troopers Brown and Colangelo's orders made the officers appear disorganized and not in control. (See Exhibit O.)

74. The Plaintiff's refusal further put those present, including John Doe, Jane Doe, and his fellow officers, in danger. (See Exhibit N.)

75. The Plaintiff later admitted that he failed to follow the order. (Complaint, ¶ 32.).

76. The Plaintiff apologized because he failed to follow orders. (Complaint, ¶ 32; Pl. Dep., p. 138-39.)

77. After the incident, Mr. Candido met with Sergeant Froehlich and indicated that he wanted the incident investigated. (Froehlich Dep., p. 112.)

78. Sergeant Froehlich reported this to his superior, State Police Lieutenant Benjamin Chamble, and Lieutenant Chamble assigned the investigation of the incident to Sergeant Froehlich. (Froehlich Dep., p. 114.)

79. Sergeant Froehlich's investigation including obtaining written statements from witnesses, including Sergeant Colangelo, Trooper Brown, and the Plaintiff. (See Sergeant Froehlich's investigative report, attached hereto as Exhibit P.)

80. Sergeant Froehlich also interviewed seven (7) volunteer firefighters who were present at the scene. Id. at 3.

81. Of note, in his written statement, Sergeant Colangelo described the Plaintiff's "performance and demeanor during this incident [ ]as unacceptable and a blatant act of insubordination." Sergeant Colangelo further wrote that "[h]is defiance and

11

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

failure to remove the accused female immediately added to an already stressful situation. It is my opinion that this female's prolonged presence at the scene could have jeopardized the efforts of the State Police personnel attempting to convince the suicidal party not to jump form the bridge." (Exhibit N.)

82. Trooper Brown echoed these sentiments, writing: "Officer Burns stated, 'I'm not arresting her, I have nothing to do with this case and I did not see anything.' This Trooper attempted to inform Officer Burns that he was going to take over the investigation and take the female into custody, but was interrupted each of several times by Officer Burns, who was raising his voice over this Trooper's. During this time frame Officer Burns stated, 'I'm not taking this fucking case' and 'I am not arresting her.' Officer Burns also stated, 'You can't order me to take this case' and added several times that he was not going to arrest the female or investigate the incident because he did not see what took place. Officer Burns made these statements in a loud raised tone of voice and within close proximity to several volunteer firefighters, as well as other Volunteer Ambulance personnel in the area." (See Exhibit O.)

83. An additional eyewitness, Department Chaplain Father Frederick Curtis, gave a statement stating that the Plaintiff, "upon being instructed by Tpr. Brown to take the female in question into custody, replied, 'I'm not going to arrest her.'" (Statement of Father Curtis, Exhibit 12 from Candido Dep., attached hereto as Exhibit Q.)

84. On the basis of these witness statements and his investigation, Trooper Froehlich "established that…Resident Trooper Clayton Brown issued a legal order to officer

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Burns. This verbal command was given directly to officer Burns and he intentionally disobeyed this order." (Exhibit P.)

85. Mr. Candido, as Chief of Police, recommends the punishment for police officers acting contrary to their civil responsibilities. (Complaint, ¶ 36.)

86. However, the Southbury Board of Selectman can approve or disapprove the Chief of Police's recommendations. (Charter, § 302; Complaint, ¶ 38.)

87. An officer who refused to remove a four-leaf clover pin from his helmet when instructed by a superior received a 10-day suspension. (Candido Dep., p. 124.)

88. After providing the Plaintiff with notice of the charges and evidence against him and allowing him an opportunity to explain his actions, the Southbury Board of Selectman held a meeting to decide the Plaintiff's punishment for his admitted insubordination. (Candido Aff., ¶ 28.)

89. Based upon the findings of Trooper Froehlich's report, the Plaintiff's unsatisfactory explanation for his actions, and the potential danger caused by the Plaintiff's actions, the Board placed the Plaintiff on sixty-day suspension. (August 29, 2000 letter to Plaintiff regarding the Board's findings and outlining previous acts of insubordination is attached hereto as Exhibit R and authenticated by Candido Aff., ¶ 29.)

90. The Plaintiff filed a grievance regarding his suspension, and the matter was eventually arbitrated before the State Board of Mediation and Arbitration. (See Notice of Arbitration, attached as Exhibit S.)

91. The Plaintiff's 12-19-99 grievance alleged that he was wrongfully denied overtime wages (Pl. Dep., pp. 61, 67)

13

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

92. The Plaintiff's 1-21-00 grievance claimed that the Plaintiff was owed overtime pay (Pl. Dep., p 70).

93. The Plaintiff's 7-19-00 grievance was regarding the Plaintiff's non-promotion to Corporal (Pl. Dep., p. 75).

94. The Plaintiff's concedes that his 1994 grievance is not part of his retaliation claim (Pl. Dep., p. 33).

95. The Plaintiff's 3-9-98 grievance protested the Department's order that computers be used to draft reports, rather than allowing reports to be done by hand (Pl. Dep., pp. 34-35).

96. The Plaintiff's 6-25-99 grievance was over the rate of pay received by officers for private duty jobs (Pl. Dep., p. 42).

97. The Plaintiff's 12-16-99 grievance was regarding use of pagers within the Department (Pl. Dep., pp. 46-47).

98. The Plaintiff's 12-16-99 grievance claimed lost overtime pay by the Plaintiff and a Corporal (Pl. Dep., pp. 57-59).

99. The Plaintiff's 12-13-99 grievance filed on behalf of Corporal Slaiby regarding his use of holiday time off, which the Plaintiff filed because "[Slaiby] asked [him] to" (Pl. Dep., p. 64).

100. The Plaintiff's 1-4-00 grievance regarding schedule changes for Department officers (Pl. Dep., pp. 69-70).

101. The Plaintiff's 10-3-00 grievance related to the Plaintiff's medical insurance while on suspension (Pl. Dep., pp. 76-77).

14

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

102. Mr. Candido is himself a veteran of union activism. He is a former union steward and at one time ran for union office. (Candido Dep., p. 75.)

103. Sergeant Froehlich testified that Mr. Candido never expressed any frustration with the Union or any concerns regarding the Plaintiff's activities on behalf of the Union. (Froehlich Dep., pp. 21, 24.)

104. The Plaintiff has also confirmed that, "[t]o [his] knowledge, there have been no other incidents of retaliation based upon union affiliation" by the Defendants. (Exhibit T, Response to Interrogatory no. 7.)

105. Corporal Hughes himself had occupied the same Union office of Vice President as the Plaintiff for the period immediately preceding the Plaintiff's tenure in that position, from approximately 1994 to 1999. (Candido Aff., ¶ 30; Froehlich Dep., pp. 106-07.)

106. The Plaintiff was informed in a letter from Mr. Candido of the charges against him and was given a copy of Sergeant Froehlich's investigative report prior to a "pre-disciplinary hearing" at which the Plaintiff was permitted to have Union representation and explain his side of the story. (Candido Aff., ¶ 33; Letter attached as Exhibit U, authenticated by Candido Aff., ¶ 32.)

15

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

                                        THE DEFENDANTS
                                        TOWN OF SOUTHBURY AND
                                        ALFIO A. CANDIDO, JR.

BY:       _____
             James M. Sconzo
             Fed. Bar No. ct04571 and
             Jonathan C. Sterling
             Fed. Bar No. ct24576 of
             HALLORAN & SAGE LLP
             One Goodwin Square
             Hartford, CT  06103
             Tele: (860) 522-6103
             Their Attorneys

## **CERTIFICATION**

    This is to certify that on this 8th day of June, 2005, the foregoing was either mailed, postpaid, or hand-delivered to:

Marc. P. Mercier
Beck & Eldergill, P.C.
447 Center Street
Manchester, CT  06040

Beth Z. Margulies
Attorney General's Office
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120

                                                _____
                                                Jonathan C. Sterling

16

One Goodwin Square       HALLORAN       Phone (860) 522-6103
225 Asylum Street         & SAGE LLP       Fax (860) 548-0006
Hartford, CT 06103                                 Juris No. 26105