**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KEVIN BURNS | : | CIVIL ACTION NO: 3:01CV01442(AVC) |
|     Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| TOWN OF SOUTHBURY AND IN | : | |
| THEIR INDIVIDUAL AND OFFICIAL | : | |
| CAPACITIES ALFIO A. CANDIDO, JR, | : | |
| FIRST SELECTMAN; JOSEPH | : | |
| FROEHLICH, CONNECTICUT STATE | : | |
| TROOPER | : | |
|     Defendants | : | JULY 29, 2005 |
| | : | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Kevin Burns ("Plaintiff") hereby submits this memorandum of law in opposition to Defendants' motion for summary judgment.

## I.  PROCEDURAL BACKGROUND

As a result of the conduct alleged herein, Plaintiff instituted a five count complaint against Alfio Candido ("Candido"), Joseph Froehlich and the Town of Southbury ("Southbury") seeking damages, pursuant to 42 U.S.C. Section 1983,  for violations of his

First Amendment rights, and his rights to Equal Protection and Procedural Due Process pursuant to the Fourteenth Amendment. Plaintiff also brought, in the Fifth Count, a state law claim for intentional infliction of emotional distress.

On July 10, 2002, the Court dismissed all Plaintiff's claims against Defendant Joseph Froehlich.

Following the completion of discovery in 2005, the remaining Defendants Candido and Southbury moved for summary judgment on all counts on June 7, 2005.  Plaintiff hereby opposes that motion.

## II.    STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED

Plaintiff hereby adopts by reference and incorporates as facts supporting this motion those contained in his Local Rule 56(a)2 Statement.

## III.    ARGUMENT

### A.    Defendant Must Meet a Heavy Burden in Order to Obtain Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted only where the pleadings and supporting papers show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  See, e.g., Burlington Coat Factory Warehouse v. Esprit de Corp., 769 F.2d 919, 923 (2d Cir. 1985).  Courts have recognized that summary judgment is a drastic remedy to

2

be granted only where the requirements of Rule 56 have been clearly met.  United States v. Bosurgi, 530 F.2d 1105 (2d Cir. 1976).

The burden of proving that no genuine factual dispute exists rests on the party seeking summary judgment, and the court must draw inferences from the evidence presented in light most favorable to the party opposing the motion.  Adickes v. S.H. Kress Co., 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); Heyman v. Commerce and Indus. Inc. So., 524 F.2d 1317, 1320 (2d Cir. 1975).  Moreover, there must be no controversy regarding the inferences to be drawn from the evidentiary facts.  Schwabenbauer v. Board of Educ., 667 F.2d 305, 313 (2d Cir. 1981).

In ruling on a summary judgment motion, the court cannot decide controverted issues of fact, but can only determine "whether there are issues to be tried."  Heyman, 524 F.2d at 1320.  The burden falls on the moving party to establish that no relevant facts are in dispute.  Id., at 1319-20.  Summary judgment can be granted only where there exists "a complete failure of proof concerning an essential element of the non-moving party's case."  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986).  As long as the plaintiff has adduced sufficient facts to substantiate the elements of his claim, summary judgment is inappropriate.  Donahue v. Windsor Locks Bd. of Fire Comm'rs., 834 F.2d 54, 58 (2d Cir. 1987), citing Celotex, 106 S.Ct. at 2554.

3

Moreover, in determining whether the moving party has carried its burden of persuasion, the court must take account of the entire setting of the case, and must consider all papers of record as well as any materials prepared for the motion.  "If ... there is any evidence in the record from any source from which a reasonable inference in the [non-moving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment . . ."  In Re: Japanese Elec. Pro. Anti-Trust Litigation, 723 F.2d 238, 258 (3d Cir. 1983), rev'd on other grounds, sub nom. Matsushito Elec. Indus. Co. v. Zenith Radio Corp., 105 S. Ct. 1863 (1986).  When the party against whom summary judgment is sought "comes forth with affidavits or other material obtained through discovery that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate."  Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).

Plaintiff has presented both sufficient evidence to establish that there are genuine issues of material fact and Defendant's motion for summary judgment must be denied.

**B.    Plaintiff's Union Activities Are Protected by the First Amendment.**

Contrary to Defendants' arguments, Plaintiff's union activities, including the filing of unfair labor practice charges and numerous grievances, are protected under the First Amendment both intrinsically and because they involve speech on matters of public concern.

4

In <u>Clue v. Johnson</u>, 179 F.3d 57, 59, 61 (2d Cir. 1999), the Second Circuit expressly held that union activities, such as the handing out of leaflets and newsletters from a dissident employee group, satisfied the public concern requirements set forth in <u>Connick v. Meyers</u>, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).    Indeed, it is beyond dispute that

> [t]he First Amendment protects the right of public employees to join together in a union, to seek redress for grievances through that collective entity, and to be free from retaliation for engaging in such activities. <u>Smith v. Arkansas State Highway Employees</u>, 441 U.S. 463, 464-65, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). The Second Circuit has held that, '[t]here is no doubt that retaliation against public employees solely for their union activities violates the First Amendment. <u>Clue v. Johnson</u>, 179 F.3d 57, 60 (2d Cir. 1999); <u>Stellmaker v. DePetrillo</u>, 710 F.Supp. 891, 892 (D.Conn. 1989)('[T]he state may not abridge the right of public employees to associate in a labor union and to seek redress of grievances through collective action, nor may it retaliate against an employee for doing so.')(internal citations omitted); <u>Gavrilles v. O'Connor</u>, 611 F.Supp. 210 (D.Mass. 1985).

<u>Petran v. Cutler</u>, 187 F.Supp.2d 26, 31-32 (D.Conn. 2002).

More importantly for this case, the <u>Clue</u> court declined to hold that the union activities in question need be "of public concern" to find shelter under the First Amendment. <u>Clue</u>, 179 F.3d at 60, n. 2. Plaintiff's conduct is instrinsically protected by the First Amendment since the right to union membership and association "would be 'meaningless' if an employee could be punished for filing a grievance." <u>Carter v. Kurzejeski</u>, 706 F.2d 835, 838 (8th Cir. 1983).

Assuming arguendo that Plaintiff must satisfy a "public concern" requirement, he must ultimately demonstrate by a preponderance of the evidence that: (1) he engaged in conduct protected by the First Amendment, including speech addressed to a matter of

public concern (2) defendants then took adverse action against him; and (3) a causal connection exists between the protected conduct and the adverse action such that the former "was a motivating factor" in the latter. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)(citing Mt. Healthy School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87, 97 S.Ct. 568, 50 L.ed.2d 471 (1977).

"Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d. Cir. 1999).

Even if the "public concern" requirement is applicable to union activities, Defendants' reliance upon Kelly v. City of Mount Vernon, 344 F.Supp.2d 395 (S.D.N.Y. 2004) and Morris v. Crow, 142 F.3d 1379 (11Th Cir. 1998) is misplaced because neither case actually involves any protected union activity. In Kelly, the police officer's "speech" involved the preparation of reports made solely in the context of his position as the Executive Officer of the Patrol Division. Again in Morris, the "speech" was only an accident report "generated pursuant to [the employee's] official and customary duties as an accident investigator with the sheriff's office." Id. at 1382. By contrast, Plaintiff's activities in the instant case do not arise out of his capacity as a police officer but instead out of his status as a member in and officer of a public employee union. For that reason alone, Defendants' arguments must be

rejected.  See <u>Heil v. Santor</u>, 1997 WL 102451 (S.D.N.Y. 1997)(complaints about bad faith bargaining and labor law violations raised by union president implicate matters of public concern)(copy attached hereto as Exhibit A).

Regardless of the capacity in which Plaintiff spoke, however, "[t]he Supreme Court [has not] articulate[d] a precise definition of 'public concern' but [has] concluded that an employee's job related speech relates to a matter of public concern when it is relevant to the public's evaluation of the government employer's performance." <u>Roe v. City of San Diego</u>, 356 F.3d 1108, 1115 (9th Cir. 2004), reversed on other grounds, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004). In this case, as described below, a municipality's efforts to undermine and ignore a public employee union relate directly to the proper functioning and performance of government. <u>Heil v. Santor</u>, supra.

Defendants have either ignored entirely or mischaracterized Plaintiff's union activities in an attempt to minimize their constitutional significance.  Plaintiff's actions were not merely limited to the filing of personal grievances but included the filing of and participation in numerous unfair labor practice charges brought before the State of Connecticut Department of Labor Connecticut State Board of Labor Relations ("Labor Board").

On or about September 3, 1999, Plaintiff filed, on behalf of his union, a complaint with the Labor Board alleging that Southbury had engaged in "bad faith bargaining by not responding to grievances submitted by the union." Exhibit 1, Pl. Aff., para. 45; Exhibit 10.

In late 1999 or early 2000, Plaintiff filed two other complaints asserting that Southbury had violated labor law by failing to comply with a grievance settlement and unilaterally ceasing a past practice. Exhibit 1, Pl. Aff., para. 60; Exhibit 11; Exhibit 12.

Finally, in March, 2000, Plaintiff filed a complaint alleging that the Town's subcontracting of bargaining unit work was "hindering its employees from continuing to bargain collectively" and was an attempt to "disband and eliminate the union." Exhibit 1, Pl. Aff., para. 47; Exhibit 13.

Plaintiff's filing of charges of bad faith bargaining, union busting and violations of Connecticut labor laws clearly implicate matters of public concern. "Moreover, while Heil may not have been motivated by concern for the public at large, the charges nonetheless raised allegations of bad faith bargaining and violations of New York labor law, both matters of at least arguable social and political concern." Heil v. Santor, 1997 WL 102451 at *5; See also Butcher v. City of McAlester, 956 F.2d 973 (10th Cir. 1992)(Section 1983 claim stated where individuals alleged "union busting" and subversion).

Plaintiff's grievances, whether personal or representative, also involve matters of public concern.  For example, Plaintiff's grievance of March 9, 1998 challenged

8

management's requirement that officers, during their shift, return to the station and use computers to prepare reports rather than remaining in the field and completing them by hand. Thus, the grievance directly implicates public safety since patrol and field activities are restricted as a result of the report policy. Exhibit 1, Pl. Aff., para. 49.

Again on June 25, 1999, Plaintiff filed a grievance regarding compensation for private duty work, motivated, in part, by a public concern that lower pay could result in officers declining to work and leaving unsupervised construction and road sites. Exhibit 1, Pl. Aff., para. 50.

Plaintiff's grievance dated December 16, 1999, sought to air concerns about Defendant Town's practice of using emergency pagers for routine contacts and the attendant disruption of emergency response caused by officers disregarding pager contacts. Exhibit 1, Pl. Aff., para. 51.

Likewise, Plaintiff's grievance dated December 19, 1999 addressed and was motivated by the fact that the Defendant Town's requirement that Plaintiff leave work without completing reports puts DUI convictions at risk. Exhibit 1, Pl. Aff., para. 18.

Finally, on January 4, 2000, Plaintiff filed a grievance regarding the Defendant Town's failure to give notice of schedule changes because, in part, such a practice wasted taxpayer money by requiring overtime compensation to cover the shift changes. Exhibit 1, Pl. Aff., para. 52.

Collectively and individually, such long-standing and repeated speech on matters of management-union relations, bad faith bargaining, public safety, police staffing, and budgetary issues is more than sufficient to establish a First Amendment claim. See Morris v. Lindau, 196 F.3d 102, 111 (2d Cir. 1999)("Comments … which included speech on crime rates, police staffing, equipment shortages and related budgetary matters quite plainly involve matters of public concern.").

That Plaintiff may benefit in some way from changes in the practices challenged by the unfair labor practice charges and grievances does not change the fact that they addressed and were motivated in part by matters of public concern. "Mixed" motive speech is clearly protected. Connick v. Meyers, 461 U.S. 138, 103 S. Ct. 1684, 75 L.Ed.2d 708 (1983); See also Mount Healthy City District Board of Education v. Doyle, 429 U.S. 274 (1977); Pickering v. Board of Education, 391 U.S. 563 (1968); Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999).

Plaintiff's history of asserting claims of bad faith negotiations, labor law violations, police staffing and budgetary matters stands in stark contrast to the physician in Ezekwo v. NYC Health and Hosp. Corp., 940 F.2d 775 (2d Cir. 1991) whose

> statements did not address matters of public concern. Her complaints were personal in nature and generally related to her own situation within the HHC residency program. Our review of her prolific writings convinces us that Ezekwo was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation and individual development as a doctor.

10

Id. at 781.

Such a purely selfish and private description of Plaintiff's union activities is hardly possible in this case and, accordingly, summary judgment must be denied.

### C.   Plaintiff Has Produced Evidence of a Causal Link Between His Union Activity and Defendants' Acts in Disciplining and Refusing to Promote Plaintiff.

Plaintiff has produced sufficient evidence of a causal link between his union activity and Defendants' acts in disciplining and refusing to promote him so as to preclude summary judgment.

The causation element of a First Amendment retaliation claim 'can be established either indirectly by means of circumstantial evidence, for example, by showing the protected activity was followed by adverse treatment ..., or directly by evidence of retaliatory animus.  Morris, 196 F.3d at 110 (citation omitted); Cobb, 363 F.3d at 108 (same)(quoting Morris). In terms of circumstantial evidence, retaliatory intent may be inferred from an ongoing course of adverse action by the defendant against the plaintiff. See e.g., Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994)(holding that allegations of defendants continuous, nine year refusal of plaintiffs' requests to enforce municipal zoning rules created inference of defendant's retaliatory intent; Housing Works, Inc. v. City of New York, 72 F.Supp.2d 402, 426 (S.D.N.Y. 1999)("Evidence of a 'pattern of antagonism' or prior retaliatory conduct may serve as circumstantial evidence of retaliation.")(listing cases); Economic Opportunity Comm'n v. County of Nassau, 106 F.supp.2d 433, 437 (.E.D.N.Y. 2000)(citing Housing Works and Gagliardi). Similarly, "[d]epartures from the normal procedural sequence" of governmental decisionmaking "also might afford evidence that improper purposes are playing a role," while "[s]ubstantive departures too may be relevant, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached." Village of Arlington Heights v. Metro Housing Development Corp., 429 U.S. 252, 267, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); see also United States v. Yonkers, 96 F.3d 600, 612 (2d Cir. 1996)(noting that constitutionally impermissible purposes for governmental

11

action may be established by evidence of procedural and substantive departures in governmental decisionmaking).

<u>Women's Interart Center, Inc. v. New York City Economic Development Corp.</u>, 2005 WL 1241919, *28 (May 23, 2005)(copy attached hereto as Exhibit B).

Estate of Smith v. Town of West Hartford, 186 F.Supp.2d 146, 156 (D.Conn. 2002) is inapposite.  In that case, the plaintiff failed to set forth any description of his "union activity, when he engaged in that activity or how the defendants retaliated against him in response to that activity, except to state, in a conclusory fashion, that the 'acts of the defendants' amounted to a denial of [his]  right to free speech and assocation and to seek redress from government without retaliation." Id at 157. Plaintiff in the instant case has alleged far more in the complaint itself, and in this memorandum. He has identified specifically the subject matter and date of his union activites - 4 charges to the Labor Board and 12 grievances from 1998 through 2000 - as well as the retaliatory conduct of Defendants in denying his promotion in July, 2000 and suspending him in August, 2000.

Defendants' reliance upon Estate of Smith reflects a misunderstanding of the nature of Plaintiff's allegations. Plaintiff does not assert "that he was retaliated against simply because of his Union membership or office" as stated in Defendants' Memorandum of Law, page 19. It is instead his union activity on behalf of and not mere status as a member in the union that forms the basis of this lawsuit. Thus, Plaintiff's union membership throughout his tenure with Southbury is a fact irrelevant to a consideration of the merits of this case.

Temporal proximity is instead provided by the connection between Plaintiff's assumption of union leadership in 1999, his ever increasing union activity in 1999 and 2000, and the promotion denied in July, 2000 and the suspension in August, 2000.

That during his working life Defendant Candido participated in collective bargaining is also of no consequence to Plaintiff's claim. Defendant Candido first ignored and then retaliated against Plaintiff for filing grievances and charges of unfair labor practices. Exhibit 3, Candido Test., p. 63; Exhibit 4, Rosa Test., p. 118; Exhibit 10; Exhibit 11; Exhibit 12; Exhibit 13.  Mr. Candido's redesign or rescheduling of the promotional test is likewise of no moment. Plaintiff's claims revolve around the administration and scoring of the test and promotion itself, not the methodology of design.

Nor is this Court's prior dismissal of Plaintiff's claims against Joseph Froehlich a substitute for the obligation of the remaining Defendants to establish undisputed facts upon which summary judgment could be granted.  The dismissal of the counts against Mr. Froehlich on the grounds of insufficient pleading is of no use in evaluating the merits of Plaintiff's remaining claims, bolstered as they are by depositions, documents and affidavits.

In contrast to the immaterial considerations advanced by Defendants, Plaintiff has produced direct evidence that with respect to the promotion, Defendant Candido specifically considered Plaintiff's union related activities.  In his testimony before the Labor Board, Defendant Candido stated that in evaluating Plaintiff for promotion, he explicitly

relied upon and viewed negatively Plaintiff's history of filing grievance.  Exhibit 3, Candido Test., p. 63. Again, when confronted by the union president about the suspension imposed upon Plaintiff, Defendant Candido made explicit reference to Plaintiff's history of filing grievances.  Such statements represent direct evidence of Defendant Candido's anti-union and retaliatory animus.

Plaintiff has also produced circumstantial evidence that Defendant Candido departed from the terms of and long-standing practices under the collective bargaining agreement by relying upon negative observation reports that were not integrated into Plaintiff's lauditory annual evaluations.  Defendants' Exhibit F, pp. 18-19; Exhibit 1, Pl. Aff., paras. 8-10. Defendant Candido has even proffered clearly pretextual claims in support of his evaluation of Plaintiff's qualifications in the form of the alleged citizen complaint from James Diamond, Esq. and Plaintiff's failure to salute. Defendant Candido could not have relied upon those events as he was never informed of them by Joseph Froehlich. Exhibit 2, Depo., Froehlich, p. 49, 63.

Also false is Defendant Candido's argument that he could not have retaliated against Plaintiff in the promotion because he independently administered his scoring without communicating with Joseph Froehlich.  In fact, Defendant Candido testifed repeatedly that he regularly met with and involved Sergeant Froehlich in the scoring of the third component of the promotional test.  Exhibit 5, Depo., Candido, pp. 42-43, 46, 59-60.

Finally, Plaintiff has also shown that Defendant Candido's description of the relative qualifications of the promotional candidates is false and represents a departure from the promotional factors set up by Defendants themselves. Plaintiff's arrest history is not limited, as claimed by Defendant Candido, solely to DUIs but instead reveals a superiority over the other candidates in every category of police activity. Exhibit 1, Pl. Aff., paras. 12-14, 24-26; Exhbit 2, Depo., Froehlich, pp. 85, 97; Exhbit 6.

With respect to the suspension, Plaintiff has produced evidence of a causal link to his union activity by showing that the investigation was commenced at the request of Defendant Candido the day after Plaintiff grieved the promotional decision. Exhibit 1, Pl. Aff., paras. 28-36.

In addition to that compelling temporal proximity, Plaintiff has also produced evidence that the penalty imposed upon him was far more severe than any ever imposed upon an allegedly insubordinate or even repeatedly disciplined officers. In contrast to the 60 days Plaintiff received, Officer Tierney received 5 days for wilfully failing to follow a direct order. Exhibit 1, Pl. Aff., para. 42; Exhibit 5, Depo., Candido, p. 124. Officer Slaiby received a 4 day suspension for investigating a complaint in which a family member was a suspect and a demotion only after a second serious offense in which a 911 caller died. Exhibit 1, Pl. Aff., para. 43.

Where, as here, Defendants have not addressed in any credible way the differential treatment between Plaintiff and other employees, summary judgment is inappropriate. McKnight v. Monroe County Sheriff's Dept., 2002 WL 311332702, *9 (S.D. Ind. 2002)(summary judgment in a Title VII case denied "because Defendant's evidence as to whether it would have imposed the same suspension absent any retaliatory motive presents a close call, relying heavily on credibility determinations that are inappropriate for resolution on summary judgment.")(copy attached hereto as Exhibit C). For the same reasons, summary judgment on the issue of causation is inappropriate here as well.

**D.     Plaintiff Has Stated a Valid Claim for Procedural Due Process Violations.**

Defendant has failed to address, and has, in fact, admitted in its Memorandum of Law, page 27, that Plaintiff was not provided any opportunity to respond to the charges against him prior to his suspension by the Southington Board of Selectman. As such, Plaintiff has a valid Procedural Due Process claim. To succeed on his due process claim, Plaintiff must show that (a) he as a protected property interest, (b) of which he was deprived (c) without an adequate notice and opportunity to be heard . McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001). Pursuant to the Fifth and Fourteenth Amendments, that notice and

hearing must generally occur prior to a property deprivation. United States v. James Daniel Good Real Prop., 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). Failure to do so violates the constitution unless there exists some "extraordinary situation[ ] where some valid government interest is at stake that justifies postponing the hearing until after the event." Id. at 53; See also Bray v. City of New York, 346 F.Supp.2d 480, 489-90 (S.D.N.Y. 2004).

In this case, Defendants cannot and do not claim that Plaintiff was provided any opportunity to plead his case to or appear in front of the Southbury Board of Selectman before his 60 day suspension was imposed. Nor do the Defendants justify that failure by reference to some exigency compelling only postdeprivation hearings.

That Plaintiff exercised his rights to file grievances and ultimately arbitrate the suspension is irrelevant to his claim and thus Defendants reliance upon Martin v. Town of Westport, 329 F.Supp.2d 318 (D.Conn. 2004) is misplaced.

The "[a]vailability of postdeprivation proceedings [do] not excuse city official's failure to follow established predeprivation procedures before placing employee on involuntary medical leave of absence; had employee received required written notice, she might have successfully contested her placement on medical leave according to

17

established procedures or received suggested medical treatment and returned to work." <u>Roach v. City of New York</u>, 782 F.Supp. 261, 265-66 (S.D.N.Y. 1992).

Plaintiff in this case was deprived of any opportunity to convince the actual decisionmaking authority, the Board of Selectman, not to take action. Having robbed him of that critical opportunity, Defendants cannot now substitute postdeprivation proceedings.

**E.    Plaintiff Has Stated a Valid Claim for Equal Protection Violations.**

Defendants have mischaracterized Plaintiff's claim for violations of his right to equal protection by first attempting to restrict it to only one version of such a claim and by then denying its legal validity. Both efforts fail because Plaintiff has stated multiple valid bases for an equal protection violation.

The purpose of the equal protection clause of the Fourteenth Amendment is to ensure impartial government. Thus, "[t]he concept of equal protection under both the federal and state constitutions has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." <u>Reynolds v. Sims</u>, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); <u>Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432 105 S.Ct. 3249, 87 L.Ed. 313 (1985).

An equal protection violation is predicated upon proof that the plaintiff, compared with others similarly situated, was selectively treated; and that either there was no rational basis for the selective treatment or that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); <u>Bizzarro v. Miranda</u>, 394 F.3d 82, 86 (2d Cir. 2005); <u>LeClair v. Saunders</u>, 627 F.2d 606, 609-10 (2d Cir. 1980). Thus, equal protection claims fall into several alternative categories, including "class of one", retaliation for the exercise of constitutional rights and a malicious intent to injure.

Contrary to Defendants' argument, the Second Circuit has recognized an equal protection claim in the context of allegations of retaliation for the exercise of First Amendment rights. In <u>Terminate Control Corp. v. Horowitz</u>, 28 F.3d 1335, 1353 (2d Cir. 1994), the court reversed the dismissal of a contractor's equal protection claim against building inspectors finding that he had adequately alleged "selective treatment ... in retaliation for the exercise of its First Amendment rights." Plaintiff has alleged just such a claim by asserting retaliation for assertion of his First Amendment right to union activity.

In addition, a fair reading of Plaintiff's complaint and his allegations as they have been fleshed out through depositions and affidavits, is that it includes claims both that he was treated differently than similarly situated officers for no rational basis and that he was

19

subjected to a malicious bad faith intent to injure.  Plaintiff has repeatedly asserted

throughout this case that, given Southbury's prior history in disciplining employees,

Defendants can offer no rational basis for his suspension or escape the inference that he

was maliciously punished. Exhibit 1, Pl. Aff., paras. 41-43; Exhibit 5, Depo., Candido, pp.

122-24.  The same is true with respect to Plaintiff's promotional claims since Defendants'

proffered reasons, including prior reports of problems and Plaintiff's excessive focus on

DUIs, are alleged to be false and a pretext for irrational and/or malicious treatment.  Exhibit

1, Pl. Aff., paras. 13-15, 32-34; See also Complaint, Count One, para. 48, Third Count,

paras. 67, 68.

    For those  reasons, summary judgment on the equal protection claim is improper.

**F.    Defendant Candido's Conduct May Properly Form The Basis Of Liability
        Against Both  Him And The Town Of Southbury**

    Defendants claim that because Defendant Candido was only one of six selectman

voting to suspend Plaintiff, any improper motive on the part of Defendant Candido could not

serve to support a claim of retaliation against either Defendants. The decision, however,

cited by Defendants, <u>Gupta v. Town of Brighton</u>, 9 F.Supp.2d 242 ( W.D.N.Y., Jun 26,

1998), is not based upon  evidence, or lack thereof, of retaliatory animus among the

majority of individual board members.  Instead, the court in <u>Gupta</u> dismissed plaintiff's claim

based upon the determination that the defendant board members acted in their legislative

capacity and were therefore "immune from civil liability".  <u>Id.</u>, at 245.

Scott-Harris v. City of Fall River, 134 F.3d 427 (1st Cir., 1997), similarly cited by the Defendants, also discusses legislative immunity but acknowledges it is a question of fact to be determined by the jury:

> Although legislative immunity is absolute within certain limits, legislators are not immune with respect to all actions that they take. The dividing line is drawn along a functional axis that distinguishes between legislative and administrative acts. The former are protected, the latter are not. . . If the facts used in the decision making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. . .[I]f the action "single[s] out specifiable individuals and affect[s] them differently from others," it is administrative. . . When the material facts are genuinely disputed, however, the question [of whether an action is legislative or administrative] is properly treated as a question of fact, and its disposition must await the trial.

Scott-Harris v. City of Fall River, supra at  440-441 (Internal quotations and citations omitted).

Given the facts of this case, it is clear that the actions of Defendants is suspending Plaintiff were not legislative but administrative.  There is no immunity for such conduct. Id.

Plaintiff does not base liability upon the doctrine of "respondent superior", which is insufficient pursuant to Monell v. Dept. of Social Services, supra, 436 U.S. at 663, 663-64 n 7.  Rather, it is the retaliatory animus of Defendant Candido, who initiated, shepherded, and

21

prosecuted the suspension to the Southbury Board of Selectman which forms the basis of official liability.  Where the very initiation of the suspension and the presentation itself was tainted by Candido's retaliatory motive, official liability is appropriate.

In <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the United States Supreme Court elaborated on the scope of municipality liability under § 1983 and concluded that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." <u>Id.</u>, at 480, 106 S.Ct. 1292.

Plaintiff has asserted sufficient evidence to support his claim that Defendant Candido's conduct before and to the Southbury Board was retaliatory.  Accordingly, summary judgment must be denied both because the application of legislative immunity is a factual one for the jury and is inapplicable under the circumstances of this case.

### G.    Defendants Are Not Entitled to Qualified Immunity on a Motion for Summary Judgment

Although Defendants' brief correctly adumbrates the principles applicable to defense of qualified immunity, they have failed to acknowledge the proper state of the law and have not established an undisputed set of facts upon which the defense can unequivocally rest.

The doctrine of qualified immunity is designed to shield, under certain circumstances, a government official from personal liability for allegedly unlawful actions. <u>Anderson v. Creighton</u>, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Officials sued under Section 1983 are not entitled to qualified immunity and may be held

personally liable if, in performing discretionary functions, they engage in conduct that violates "clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 LED. 2d 396, 102 S. Ct. 2727 (1982).

When evaluating a qualified immunity claim a court should consider: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 129-30 (2d. Cir. 2004).

Defendants are clearly wrong when they claim that Plaintiff's right to be free from retaliation for union activity was not defined or clearly established.  In Gavrilles v. O'Connor, 611 F.Supp. 210, 211 (D.Mass. 1985), the court rejected a claim of qualified immunity stating:

> [b]y 1980, however, the United States Supreme Court had made clear that First Amendment freedom of association protects the right of public employees to join together in a union, to advocate and seek redress for grievances through that collective entity, and to be free from retaliation for engaging in such activities. Smith v. Arkansas State Highway Employees, 441 U.S. 463, 464-65, 99 S.Ct. 1826, 1827-28, 60 L.Ed.2d 360 (1979) (*per curiam*); *See also*, United Mine  Workers of America, District 12 v. Illinois State Bar Association, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967); *NAACP v. Button,* 371 U.S. 415, 429-31, 83 S.Ct. 328, 335-37, 9 L.Ed.2d 405 (1963). The impermissibility of retaliating against an employee for engaging in union activities was clearly established by 1982. Insofar as the filing and processing of grievances is a legitimate union pursuit, I rule that defendants

reasonably should have known that retaliation against plaintiff for participating in that activity is constitutionally prohibited.

See also <u>Moreland v. Sherlock</u>, 1996 WL 111881, *8 (N.D. Ill. 1996)(In rejecting qualified immunity defense, court held that "[c]learly, at the time the defendants acted against plaintiff in 1991 and 1992, both the case law and relevant statutes were sufficiently settled on the issue of the right of association by union  members.")(copy attached hereto as Exhibit D).

Within this circuit, the case of <u>Clue v. Johnson</u>, 179 F.3d 57 (2d Cir. 1999) has been found to be "sufficiently specific with respect to the rights of an employee to be free from retaliation for his or her union activity to give notice to [Defendants] that [their] acts were unconstitutional." <u>Runyon v. New York City Transit Authority</u>, 2002 WL 31093609, *4 (S.D.N.Y. 2002)(copy attached hereto as Exhibit E).

As a matter of law, Defendants may not rely upon their subjective ignorance of the Plaintiff's constitutional rights to support a defense of qualified immunity.  Instead, the defense of qualified immunity requires an analysis by an "objectively reasonable" person standard. <u>Blissett v. Coughlin</u>, 66 F.3d 531(2nd Cir., 1995).  In light of the undisputed nature of Plaintiff's actions in filing unfair labor practice charges and grievances, Defendants could not have reasonably believed that their retaliatory acts were constitutional.

Defendants' argument also fails to adequately acknowledge that "[t]hough '[i]mmunity ordinarily should be decided by the court,' see Hunter v. Bryant, 502 U.S. 224, ----, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991), that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required, see e.g., Frank v. Relin, 1 F.3d 1317, 1328 (2d Cir.), cert. denied, 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); Ying Jing Gan, 996 F.2d at 532; see also Hurlman v. Rice, 927 F.2d 74, 78 (2d Cir. 1991)." Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994).

In this case, and as described above in Section III.C, there are a plethora of disputed facts relating to Defendant Candido's attitude and feelings toward Plaintiff because of his union activities, the proffered versus actual considerations used in promoting Officer Hughes, Plaintiff's qualifications as compared to his colleagues, as well as Defendant Candido's knowledge of Plaintiff's alleged performance incidents.

The same is true with respect to Plaintiff's suspension. As described in Sections III.C and E above, factual issues remain with respect to the method and severity of the punishment imposed upon Plaintiff when compared to other officers.

Defendants' reliance upon Velez Rivera v. Agosta Alicea, 334 F.Supp.2d 72 (D.Puerto Rico 2004) is inappropriate.  In that case, human resources experts recommended to the defendant that the plaintiff's appointment to and continued

employment with the Puerto Rico Government Development Bank was improper. There, is, however, no per se qualified immunity because of reliance upon an expert opinion. Dale v. Kelley, 908 F.Supp. 125, 137 (W.D.N.Y. 1995): see also U.S. v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)(qualified immunity not available for executing officer where, despite judge's signature, warrant is so deficient that the officer cannot reasonably presume it to be valid).

In this instant case, Defendants did not actually rely on Sergeant Froehlich's investigation in starting the inquiry or in setting the suspension. Therefore, the investigation offers no insulation to Defendants.

**H.    As Plaintiff Has Brought His Claims For Intentional Infliction of Emotional Distress and Punitive Damages Against Defendant Candido In His Individual Capacity, These Claims May Not Be Dismissed**.

Defendants' arguments fail to acknowledge that Plaintiff has plead his claim for intentional infliction of emotional distress against Mr. Candido in both his official and individual capacities. Defendants have advanced no arguments upon which the claims against Defendant Candido individually could be dismissed.

**I.    The Plaintiff Has Alleged Conduct Which Establishes A Claim For Intensional Infliction Of Emotional Distress**

Defendants make the general claim that conduct alleged by Plaintiff fails to rise, or sink, to the level of "extreme and outrageous" and therefore Plaintiff's claim for intentional infliction of emotional distress is insufficient.

In support of this claim Defendants cite cases in which an employee was subject to mere annoyance or offensive treatment while employed. Defendants have not produced a single case that has dismissed a claim of intentional infliction of emotional distress where an employee has been suspended or terminated for allegation of serious misconduct, as in the instant case. The allegations of misconduct made against Plaintiff are severe and go to the very core of responsibilities due from a police officer. As described by Defendants themselves:

> The Town of Southbury considers insubordination a serious offense, and, in the past, [less severe] acts of insubordination . . .received harsh penalties. . . It goes without saying that adherence to orders is integral to the operation of any-para-military organization, such as a municipal police department.

Def's Brief, pp. 11-12.

Such conduct is especially egregious and rises to the level of "extreme and outrageous" where the perpetrator of the acts is one in a position of power who then exploits that power over the defendant. See Mellaly v. Eastman Kodak Co., 42 Conn.Supp. 17, 20, 597 A.2d 846, 848 (1991), quoting 1 Restatement (Second), Torts § 46, comment

(e) ("The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." ).

It is the hierarchical nature of the police para-military organization which placed Defendant Candido in a position of power and made the removal of Plaintiff for "insubordination", an offense to order "integral" to the organization, such a devastating accusation against Plaintiff.  The particular facts and relationships in such a situation is a determination for the trier of fact.  Connecticut courts have tended to favor leaving the question of whether conduct is "extreme and outrageous" to the jury. See, e.g. Berry v. Loiseau, 223 Conn. 786 (1992).  Further courts have recognized removal from employment, based upon retaliation for union activities to constitute Intensional infliction of emotional distress.  See Floridiliza Roston v. Circuit-Wise, Inc., 7 Conn.L.Rptr. 328, 7 C.S.C.R. 1147 (1992). Accordingly, summary judgment on Plaintiff's claim for intentional infliction of emotional distress is inappropriate.

> **J.**    **Plaintiff's Emotional Distress Claim Is Not Preempted by § 301 of the Labor Relations Management Act, 29 U.S.C. § 185.**

Preemption pursuant to § 301 of the Labor Relations Management Act, 29 U.S.C. § 185 applies only claims which, by their nature, require examination and interpretation of the collective bargaining agreement.  "In enacting § 301, Congress intended that uniform federal labor law would prevail over inconsistent, state specific rules." Wilhelm v. Sunrise

28

Northeast, Inc., 923 F.Supp. 330, 334 (D.Conn.1995).  Common law claims are not

preempted where the determination of such claim does not require interpretation of the

collective bargaining agreement.  "However, if a state-law claim can be resolved without

interpreting a collective bargaining agreement, section 301 does not preempt the claim."

Carvalho v. International Bridge & Iron Co., 2000 WL 306456, at *2 (D.Conn. 2000)(copy

attached hereto as Exhibit F).

In essence, where the employee challenges conduct which is consistent with the

collective bargaining agreement, § 301 of the Labor Relations Management Act, 29 U.S.C.

§ 185 preempts any such claim.  However, where the conduct and motivations alleged are

not sanctioned by the collective bargaining agreement, common law tort claims are not

preempted, regardless of whether or not the harm arose as part of appropriate employee

discipline or during or during grievance or arbitration proceedings, the claim is not

preempted by § 301 of the LMRA. See Vorvis v. Southern New England Telephone Co.,

821 F.Supp. 851, 853-55 (D.Conn.1993)(employee's intentional infliction of emotional

distress claim not preempted where supervisor mistreated the plaintiff through verbal

abuse, false statements about her job performance and unfair discipline); Claps v.

Moliterno Stone Sales, Inc., 819 F.Supp. 141, 154 (D.Conn.1993)(employee's intentional

infliction of emotional distress claim not preempted where supervisor and superintendent

engaged in a series of demeaning and abusive practices); Brandmeyer v. Brescome

<u>Barton, Inc.</u>, 1999 WL 391097, at *4 (Conn.Super.Ct. June 1, 1999)(intentional infliction of emotional distress claim based upon abusive practices of supervisors and unfair discipline not preempted)(copy of case attached hereto as Exhibit G).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and based on the facts set forth in Plaintiff's submission filed herewith, Defendants' motion for summary judgment must be denied.

PLAINTIFF

By:
    Marc P. Mercier, Fed Bar No: ct10886
    Beck & Eldergill, P.C.
    447 Center Street
    Manchester, CT 06040
    Tel:  (860) 646-5606

### <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing has been mailed this 29th day of July, 2005, to the following parties:

James M. Sconzo
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT   06103


Marc P. Mercier

Burns\pleadings\MemOpp07-05.pld