1997 WL 102451 (S.D.N.Y.), 156 L.R.R.M. (BNA) 2503

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
James HEIL, Plaintiff,
v.
Robert SANTORO, individually and as Chief of Police of the Village of Rye Brook, New York, Salavatore M. Cresenzi, individually, and as Mayor of the Village of Rye Brook, The Board of Police Commissioners of the Village of Rye Brook, and The Village of Rye Brook, New York, Craig Benson, individually and Christopher Russo, individually and as Village Administrator of the Village of Rye Brook, Defendants.
No. 94 Civ. 9109 BDP.
Feb. 28, 1997.

MEMORANDUM DECISION AND ORDER

PARKER, District Judge.
*1 James Heil brings this action pursuant to 42 U.S.C. § 1983 against the Board of Police Commissioners of the Village of Rye Brook ("The Board"), The Village of Rye Brook ("The Village"), Robert Santoro, Chief of Police of the Village, Salvatore M. Cresenzi, Mayor of the Village, and a number of other Village officials, alleging violations of his rights to free speech and to petition the government for redress of grievances under the First Amendment to the United States Constitution. *See* U.S. Const. Amend. I. In substance, Heil contends that defendants subjected him to interrogation and a disciplinary hearing in retaliation for filing an improper labor practice charge against the Rye Brook Police Department ("the Department"). *See* N.Y. Civil Service Law § 209-a.1 (McKinney 1983). Currently before the Court is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, the motion is granted.
BACKGROUND
The pertinent facts, gleaned from the record and cast in the light most favorable to the plaintiff are as follows. James Heil is a police officer with the Rye Brook Police Department. In April 1994, Heil was appointed president of the Rye Brook Police Benevolent Association ("P.B.A."). He continues to serve in that position.
During the early part of 1994, officials from the Village entered into preliminary discussions with officials from the City of Rye ("City") regarding the possibility of consolidating their police forces. On August 19, 1994, in connection with these discussions, defendant Craig Benson, labor counsel to the Village, and Vincent Toomey, labor counsel for the City, wrote a three-page memorandum (the "August 19 memorandum") outlining a proposed strategy for securing the agreement of the City's and Village's respective police unions-- the Rye Police Association and the P.B.A.--to a consolidated police department. [FN1] The P.B.A.'s contract with the Department had expired on May 31, 1994, and subsequent attempts during that spring and summer to negotiate a new contract had been unsuccessful.

> FN1. The memorandum suggests, *inter alia*:

> The Unions should be advised that the City and Village are of the opinion that they have a statutory right to abolish their Departments and to provide police services through a newly created department ... [and that] they have no obligation to negotiate the abolition of their Departments or the initial terms and conditions for employees of any newly created department.

> ....

> We believe the approach to take is to present the Unions with the spectra of a contract that the newly formed Department would impose if there is not agreement with the Unions on the terms of the consolidation. Given the opportunity to initially unilaterally establish terms and conditions of employment, a new employer would likely impose a contract with terms and conditions which are inferior to those which are contained in either of the current contracts. The parties can hopefully negotiate a contract similar

> to the existing contracts.

The August 19 memorandum, which was addressed to Russo, Cresenzi, Edward Dunn, Mayor of the City, and Frank Culross, City Manager of the City, was faxed to the office of defendant Christopher Russo, the Village Administrator. According to Heil, Elizabeth Bottali, a secretary employed by the Village's administrative offices, found the memorandum on Russo's desk and photocopied it. Elizabeth Bottali then gave an unaltered copy of the memorandum to her husband, Mark Bottali ("Sgt.Bottali"), a police sergeant with the Department and a member of the P.B.A. Sgt. Bottali, in turn, delivered the memorandum to Heil.
Elizabeth Bottali, in response to subsequent questioning, stated that the words "CONFIDENTIAL MEMORANDUM" was noticeably displayed on the top of the first page of the document that she gave to her husband. Heil contends that no such language appeared on the face of the copy he received from Sgt. Bottali, nor was he otherwise made aware that the memorandum was confidential. Rather, Heil contends that the defendants coerced Elizabeth Bottali into stating that the copy of the memorandum she duplicated contained the "CONFIDENTIAL MEMORANDUM" heading.
**\*2** Heil claims that after reading the August 19 memorandum, he became concerned that the Village, by pursuing police force consolidation instead of negotiating to renew its expired contract with the P.B.A., was not bargaining in good faith. Consequently, on September 2, 1994, Heil, in his capacity as P.B.A. president, filed an improper labor practice charge with the New York State Public Employment Relations Board ("PERB"). Affixed to the charge was an altered copy of the August 19 memorandum. To generate the altered copy, Heil had taken the original three-page memorandum to a commercial copying service where he reduced the size of the original, pasted the reduced document so that it fit onto one page and then shredded the original. Defendants contend that the only substantive change Heil made to the memorandum was the elimination of the "CONFIDENTIAL MEMORANDUM" notation on the consolidated version.
Upon realizing that Heil had somehow obtained a copy of the August 19 memorandum, defendants Santoro, Crescenzi, Russo, and Benson initiated an investigation into the

circumstances surrounding Heil's possession of the document. On September 9, 1994, Santoro requested that Heil meet him to discuss a "little problem." When he arrived to meet Santoro, Heil was met by Santoro, Cresenzi, and Benson and was questioned about his possession of the memorandum. Heil cut short the questioning, advising Santoro and the others that he was willing to cooperate, but, because he was scheduled for surgery the following week and was on medication, he could not continue at that time. Santoro followed Heil outside and, according to Hell, asked him to return or, in the alternative, to schedule a date on which they could resume the questioning. Defendants claim that Santoro ordered Heil to remain for questioning. Heil left the premises.

On September 12, 1994, Benson again questioned Heil, this time in the presence of an attorney for the P.B.A., about his possession of the memorandum. Hell provided his version of how he came to possess a copy of the memorandum and why and how he had altered it. Heil stressed that the copy that he had received from Bottali had not been marked confidential.

Unsatisfied with the explanation, Santoro filed three disciplinary charges against Heil. The first alleged that Heil had violated Department's Rules and Regulations by publicly disclosing confidential information. The second alleged that Heil had been insubordinate by failing to obey Santoro's September 9 direct order to remain for questioning. The final charge alleged that Heil had violated the Department's Rules and Regulations by failing to provide truthful answers to Benson's September 12 questions. [FN2]

> FN2. The Department's Rules and Regulations state in pertinent part:
>
> Members shall treat the official business of the Department as confidential. Information regarding official business shall be disseminated only to those for whom it is intended in accordance with established departmental procedures. Members may remove or copy official
>
> records or reports from a police installation only with approval of the Chief of Police.
>
> ....
>
> Officers shall promptly obey any written or oral lawful orders of a superior officer.
>
> ....
>
> Upon the order of the Chief, the Chief's designee or a superior officer, members shall truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of the Department which may be asked of them.

A disciplinary hearing was convened before the Rye Brook Board of Police Commissioners. The Board dismissed the charge alleging Heil's disclosure of confidential information, found Heil guilty of insubordination, and found him not guilty of failing to provide truthful answers. As a result of the Board's determination, Heil was suspended without pay for ten days.

*\*3* Heil subsequently filed this action alleging that defendants' unfavorable personnel actions, including the investigation, the pressing of disciplinary charges, and his subsequent suspension, were taken in retaliation for filing an unfair labor practice charge with the PERB, in violation of his First Amendment rights.

Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that they did not violate Heil's First Amendment rights, and that, in any event, the individual defendants are entitled to qualified immunity. For the reasons stated below, defendants' motion is granted.

DISCUSSION

A. Standard For Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, "a motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). The burden then shifts to the nonmoving party to come forward with "specific facts, showing that there is a genuine issue of fact for trial," Fed.R.Civ.P. 56(e), by a showing sufficient to establish the existence of every element essential to the party's case, and on which the party will bear the burden of proof at trial.

In deciding whether a genuine issue of material fact exists, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

B. Heil's First Amendment Claim

Government employees have a right under the First Amendment to speak on matters of public concern. *See Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996). That right, however, is not unlimited. *See Connick,* 461 U.S. at 146; *Sheppard,* 94 F.3d at 827; *Bernheim v. Litt,* 79 F.3d 318, 324 (2d Cir.1996); *Jeffries v. Harleston,* 52 F.3d 9, 12 (2d Cir.), *cert. denied,* 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 114 (1995); *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.), *cert. denied,* 502 U.S. 921 (1993). Indeed, the Supreme Court has recognized that a public employer has "a legitimate interest in regulating the speech of its employees that differs significantly from its interest in regulating the speech of people in general." *Piesco v. City of New York,* 933 F.2d 1149, 1155 (2d Cir.), *cert. denied,* 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991) (citing *Pickering,* 391 U.S. at 568).

Thus, to be protected the employee's speech "must be on a matter of public concern, and [his] interest in expressing [himself] on this matter must not be outweighed by any injury the speech could cause to the 'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Waters v. Churchill,* 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (citing *Pickering,* 391 U.S. at 568); *see Frank,* 1 F.3d at 1328; *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.1993).

*\*4* Our Court of Appeals has held that a public employee who claims to have been disciplined for the exercise of his First Amendment rights must establish two elements: (1) that the speech can "fairly be characterized as constituting a matter of public

concern," *Frank,* 1 F.3d at 1328; *see* *Connick,* 461 U.S. at 146, and (2) that the speech was "at least a substantial or motivating factor in the employer's adverse employment action." [FN3] *Ezekwo v. New York City Health and Hospitals Corp.,* 940 F.2d 775, 780 (2d Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991); *see* *Sheppard,* 94 F.3d at 827; *Frank,* 1 F.3d at 1328. The first element is a question of law, the second a question of fact. *Frank,* 1 F.3d at 1329.

> FN3. In addition to his freedom of speech claim, Heil contends that the defendants violated his right to petition the government for a redress of grievances. The First Amendment right to petition the government, "which is an assurance of a particular freedom of expression ... is
>
> 'generally subject to the same constitutional analysis' as the right to free speech.' " *White Plains Towing,* 991 F.2d at 1059 (citing *Wayte v. United States,* 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

The question of whether an employee's speech addresses a matter of public concern "must be determined by the content, form and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147-48; *Ezekwo,* 940 F.2d at 781. Speech will fairly be characterized as matter of public concern if it "relate[s] to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146; *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir.), cert. denied, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). A public employee's speech on matters of purely personal interest or internal office affairs does not constitute a matter of public concern and is therefore not entitled to constitutional protection. *See* *Connick,* 461 U.S. at 148-49 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case.").
Here, Heil alleges the defendants retaliated against him for filing an unfair labor practice charge in which he accused the Village of failing to bargain in good faith. Defendants argue that, because the question of whether the Village refused to negotiate with the union related solely to intramural employment issues, the charge did not touch on a matter of public concern and thus does not implicate the First Amendment.
"An employee's speech, activity or association, merely because it is union-related, does not touch on a matter of public concern as a matter of law." *Gros v. Port Washington Police Dist.,* 944 F.Supp. 1072, 1078 (E.D.N.Y.1996) (citing *Boals v. Gray,* 775 F.2d 686, 693 (6th Cir.1985) (where employee received additional two-day suspension because he asked to have a union representative present, that statement did not touch on matter of public concern)); *McEvoy v. Shoemaker,* 882 F.2d 463 (10th Cir.1989) (plaintiff's complaint about mismanagement of personnel and department's failure to promote him was a matter of private rather than public concern); *see* *American Postal Workers Union v. United States Postal Serv.,* 598 F.Supp. 564, 568-69 (D.D.C.1984) (postal worker's column in union news letter discussing strategies for increasing union membership was not a matter of public concern).
*\*5* By the same token, union-related speech that, as it must, relates to employment issues will not necessarily be excluded from First Amendment protection. *See, e.g.,* *Broderick v. Roache,* 751 F.Supp. 290, 291 (D.Mass.1990) (statements made by police union president critical of police department's law enforcement policies and practices touched on matters of pubic concern). *Cf.* *Gros,* 944 F.Supp. at 1081 ("[I]n certain circumstances, a PBA president speaking to commissioners regarding staffing issues and shortages could constitute a matter of public concern."). The considerations underlying the "public concern" test apply as equally to union activities as they would to any other speech by a public employee. As the *Connick* Court emphasized:

[w]hen a public employee speaks not as a citizen upon a matter of public concern, but instead as an employee upon matters of only personal interest, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
Connick, 461 U.S. at 146-47. The requirement that speech involve matters of public concern "reflects both the historical evolvement of the rights of public employees, and the common sense realization that government offices could not function if every employment decision becomes a constitutional matter." Ezekwo, 940 F.2d at 781 (citing Connick, 461 U.S. at 143).

Viewed in light of these considerations, Heil's PERB charge can be said to touch on matters of public concern. [FN4] There is no indication that when Heil, in his capacity as P.B.A. president, filed the charges he was acting solely to protect his own private interests, *see* Connick, 461 U.S. at 148, or that any significant component of his motive was the protection of his own reputation. See Ezekwo, 940 F.2d at 781. Moreover, while Heil may not have been motivated by concern for the public at large, the charges nonetheless raised allegations of bad faith bargaining and violations of the New York labor law--both matters of at least arguable social and political concern. *Cf. Connick,* 461 U.S. at 481 (holding that speech regarding actual or potential wrongdoing on the part of the district attorney's staff is a matter of public concern); Piesco, 933 F.2d 1149 (holding that employee's testimony concerning competency requirements for police officers is of public concern); Giacalone, 850 F.2d 79 (holding that concerns expressed about legality and ethical propriety of government agency's litigation strategy are of public concern). In sum, while Heil's speech comes close to the line separating public from private speech, it does not cross it.

> FN4. Heil claims that, in addition to his concern regarding the Department's failure to bargain in good faith, the charges were motivated by his concern that the consolidation and resulting abolition of a number of sergeant positions would jeopardize the public's health and safety. As those allegations implicate matters of more direct public concern, Heil contends that his interest in speech is entitled to greater protection than the unfair labor charge alone would warrant. As Heil did not raise that issue in his PERB charge, that allegation, while of public concern, does
>
> not implicate the First Amendment. When balancing the employee's and the government employer's interests, "abstract concern about a particular subject carries no weight if the employee chooses not to articulate it." Giacalone v. Abrams, 850 F.2d 79, 86-87 (2d Cir.1988).

As to the second element of plaintiff's First Amendment claim--defendants' retaliatory motive in taking the adverse employment actions against Heil-- defendants argue that their actions were purely responsive to Heil's violation of the Department's Rules and Regulations and were not motivated by the unfair labor practice charges. Heil, as we have seen, maintains that he was innocent of the disciplinary charges and that they were motivated by defendants' desire to retaliate against him for exercising his free speech rights.

**\*6** The question of whether the speech was a substantial factor in the Department's employment decision is a question of fact. Frank, 1 F.3d at 1329. Here, Heil alludes to the Department's alleged failure to press disciplinary charges against the Bottalis as evidence that the defendants "singled [him] out" because he had "expressed his opinion" to the PERB. Contrary to Heil's unsubstantiated representations, disciplinary charges were filed against Sgt. Bottali for disseminating confidential information. Those

charges were dropped after Heil was found not guilty of similar charges. Benson Supp. Aff. ¶ 3. No charges were filed against Elizabeth Bottali because she resigned from her position with the Village. Benson Supp. Aff. ¶ 2.

Similarly, without any personal knowledge or supporting evidentiary facts, Heil alleges that Elizabeth Bottali was coerced into stating, untruthfully, that the August 19 memorandum was marked confidential. That allegation was squarely denied by Benson, labor counsel to the Village, who had participated in the questioning of Elizabeth Bottali. *See* Benson Aff. ¶ 12. Allegations of fact such as those advanced by Heil, which are not grounded in personal knowledge, play no role in summary judgment proceedings. *Baker,* 72 F.3d at 255.

Drawing all reasonable inferences in favor of Heil, however, it is possible for a fact finder to conclude from the facts which have been properly presented, *see* Fed.R.Civ.P. 56(e), that the investigation and the disciplinary charges were intended as retaliation for the PERB charge. For instance, Heil claims that, on September 9, he was never ordered to remain for questioning about his possession of the memorandum, but was merely asked to stay or provide defendants with a date on which they could resume their inquiry. Moreover, he alleges that he truthfully answered all of defendants' questions during the September 12 questioning. Heil's failure to follow the order of his superiors and his alleged failure to provide truthful answers formed the basis for two of the Departments' charges against Heil. Since Heil's assertions arguably call into question defendants' motivation for instituting the disciplinary charges, a fact finder could conclude that the hearing was convened for retaliatory purposes. The question is a close one, but at this point, Heil wins close calls.

In any event, as a general matter, summary judgment "is inappropriate when, as here, 'questions of motive predominate in the inquiry about how big a role the protected behavior played in the employment decision.' " *Piesco,* 933 F.2d at 1155 (quoting *Peacock v. Duval,* 694 F.2d 644, 646 (9th Cir.1982)). Accordingly, the Court cannot conclude that the question of whether Heil's speech was a substantial factor in defendants' decision to discipline him raises no triable factual issues.

Defendants are nonetheless protected from liability if they can satisfactorily demonstrate that Heil's conduct interfered with the "effective and efficient fulfillment of [their] responsibilities to the public." *Connick,* 991 F.2d at 1059; *see Frank,* 1 F.3d at 1329. This is because a government official may take an unfavorable employment action against an employee for speech--even on a matter of public concern--where the speech has the potential to disrupt the work environment. *Sheppard v. Beerman,* 94 F.3d at 827. When asserting this defense, "the [government's] burden in justifying a particular discharge varies depending upon the nature of the employee's expression. *Frank,* 1 F.3d at 1329. The closer the employee's speech reflects on matters of substantial public concern, the greater must be the employer's showing of a likelihood of disruption before the employee may be punished. *Jeffries,* 52 F.3d at 13. "[T]he court must thus perform a balancing analysis, measuring, *inter alia,* the extent to which the employee's speech touched upon matters of public concern against the extent to which the employee's conduct interfered with the functioning of the workplace." *White Plains Towing,* 991 F.2d at 1059 (citing *Connick,* 461 U.S. at 150-52).

**\*7** Under the balancing test, the government's burden is to show likely interference, not actual disruption. *Jeffries,* 15 F.3d at 13 (citing *Waters,* 511 U.S. at 673). A corollary of this principle is that a government employer's reasonable predictions of disruption are entitled to "substantial weight even when the speech involved is on a matter of public concern." *Waters,* 511 U.S. at 673; *see McCabe v. Sharrett,* 12 F.3d 1558, 1570 (11th Cir.1994) (public employer's interest "will weigh heavily if the employee's exercise of the [First Amendment] right would compromise loyalty and confidentiality").

Although the Court finds that the PERB charges touched on matters of public concern, the nature of those charges is such that the balance between the desirability of uninhibited speech on the one hand and reasonable and effective control of the work place on the other clearly tilts toward the employer.

Practically speaking, Heil's charges were an attempt by the police union to gain leverage in contract negotiations. After the Village agreed to reopen contract negotiations, the PERB charges were withdrawn. Plaintiff's charges alleging the Village's failure to bargain may not have been motivated out of self-interest alone, but they were pressed to raise the stakes in contract negotiations. Advancing the public's right to know about the Village's alleged failure to bargain was, at best, of secondary, if not tertiary, concern. [FN5] See *Ezekwo,* 940 F.2d at 781.

> FN5. The allegations certainly did not rise to the level of "allegations of fraud, theft, and misallocation of public funds," which are "matters of serious concern and as such [are] entitled to 'greater weight' in the *Pickering* balance." *Piesco,* 933 F.2d at 1157 (citing *Vasbinder v. Ambach,* 926 F.2d 1333, 1339-40 (2d Cir.1991).

On the other side of the scale is the likelihood of disruption to police operations and the protection of the strong interest police departments have in maintaining "discipline, esprit de corps, and uniformity" among their employees. See *Kelley v. Johnson,* 425 U.S. 238, 246, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). That interest derives from the obligation of law enforcement agencies to protect the public, and justifies the enactment of rules and regulations which "place [ ] myriad demands upon the members of the police force, duties which have no counterpart with respect to the public at large." *Id.* at 245. Because order and confidence between officers and their superiors are essential to the operation of a law enforcement agency, violations of department rules such as occurred here pose significant dangers. See *Giacalone v. Abrams,* 850 F.2d 79, 89 (2d Cir.1988).

Here town and police officials saw a sensitive memorandum they understood to be confidential appended to a public filing relating to an ongoing labor dispute. A proceeding ensued inquiring into the circumstances under which the memorandum was obtained and used. Defendants reasonably perceived a potentially serious violation of department rules and reasonably concluded that to overlook this violation would result in "likely interference" with the proper functioning of the department. See *Jeffries,* 15 F.3d at 13. Giving these conclusions the "substantial weight" that is required, I find the potential disruption to departmental discipline outweighs Heil's interest in pressing charges before the PERB.

*CONCLUSION*

**8* For the reasons stated above, defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted. The Clerk of the Court is directed to dismiss this action.

SO ORDERED

S.D.N.Y.,1997.

Heil v. Santoro

1997 WL 102451 (S.D.N.Y.), 156 L.R.R.M. (BNA) 2503

**Motions, Pleadings and Filings (Back to top)**

- 7:94cv09109 (Docket) (Dec. 20, 1994)

END OF DOCUMENT