2002 WL 31132702 (S.D.Ind.), 90 Fair Empl.Prac.Cas. (BNA) 35
United States District Court,
S.D. Indiana,
Indianapolis Division.
Beverly McKNIGHT, Plaintiff,
v.
MONROE COUNTY SHERIFF'S DEPARTMENT, Defendant.
No. IP 00-1880-C-B/F.
Sept. 23, 2002.

John H Haskin, Haskin Lauter Cohen & Larue, Indianapolis, IN, for Plaintiff.
Robert M Kelso, Kightlinger & Gray, Indianapolis, IN, for Defendant.

**ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT**

SARAH EVANS BARKER, Judge.
***1** This is a discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff Beverly McKnight claims that Defendant Monroe County Sheriff's Department discriminated against her based on her sex by subjecting her to a hostile work environment and failing to promote her to the detective division, and retaliated against her for complaining of alleged acts of harassment. Defendant moved for summary judgment on a number of grounds. For the reasons set out in detail below, we *GRANT IN PART* and *DENY IN PART* Defendant's Motion for Summary Judgment. [FN1]

> FN1. Defendant also moves to strike portions of McKnight's responses to Defendant's Statement of Material Facts. However, Defendant's motion does not identify with specificity the alleged improper factual assertions or legal conclusions to be stricken. Instead, Defendant urges the Court to strike those responses to the Statement of Material Facts that contain inappropriate factual assertions and legal argument. Although we must view the facts in the light most favorable to the non-moving party, in this case McKnight, we do not adopt legal conclusions disguised as fact, nor do we adopt "inappropriate" factual assertions. Absent specificity from Defendant as to which portions of Plaintiff's responses it challenges and the grounds on which those portions should be stricken, we *DENY* the Motion to Strike.

*Factual Background*

The following facts are undisputed. On or about September 25, 1984, Defendant Monroe County Sheriff's Department ("MCSD") hired Plaintiff Beverly McKnight as a merit officer. Pl's Resp. to Def's Statement of Material Facts ¶ 1. Ms. McKnight worked for MCSD for several years and, by 1998, had attained the rank of corporal; she was the only female officer in the department with supervisory authority. Pl's Statement of Add'l Material Facts ¶ 35. Officers within the department occasionally engaged in sexually charged conversations. *Id.* ¶ 81. Starting in 1998, Ms. McKnight encountered related behavior within her department that led her to file the present lawsuit.

On October 26, 1998, Ms. McKnight accompanied Road Deputy Rick Blocksom, then one of her subordinates, on an alarm response call within Monroe County. Pl's Resp. to Def's Statement of Material Facts ¶ 3. During the excursion, Blocksom told McKnight that he

should not have to work with a woman or take orders from one, that he did not think she should have been promoted over him and that he would get even with her. *Id.* McKnight reported these comments to Captain Steve Chambers, but Chambers took no disciplinary action with respect to Deputy Blocksom. *Id.* ¶ 4.

Current Monroe County Sheriff Stephen Sharp was elected in November 1998 and took office in January 1999. *Id.* ¶ 2. Sometime in January 1999, in Ms. McKnight's presence, Deputy Blocksom informed Sheriff Sharp that Blocksom and McKnight had sex on a picnic table in nearby Karst Park several years earlier. *Id.* ¶ 5. Sheriff Sharp took no action in response to this story. *Id.* Later, in March 1999, in the presence of Captain Chambers, Deputy Mike Hammock looked back and forth at McKnight's breasts and said, "I'd like to climb aboard, maybe now I can get me a shot at that." *Id.* ¶ 6. Captain Chambers laughed at the remark, but took no action. *Id.* Again in March 1999, McKnight complained to Captain Chambers that Deputy Hammock "had smacked her on the rear end," to which Chambers replied, "Well, you know Mike." *Id.* ¶ 7.

Such behavior and remarks continued through the summer of 1999. On or about June 10, 1999, Deputy Hammock reportedly looked Ms. McKnight up and down and said, "Hey pretty girl, any chance I can get me a shot of that today?" *Id.* ¶ 8. McKnight instructed Hammock to "knock it off" and "stop it." *Id.* Then, in August 1999, McKnight complained to Captain Chambers that Deputy Hammock had bumped into her chest "very purposefully" and then said, "Oh, just a little morning feel." *Id.* ¶ 9. Later, in October 1999, after McKnight had been directing traffic in the rain, Deputy Hammock said to her, "You look pretty good wet, honey, I'd like to see you wet all over." *Id.* ¶ 10.

***2** Also in 1999, Ms. McKnight was promoted to sergeant, as was her male colleague Rex Vint. *Id.* ¶ 18. Unlike Vint, however, McKnight was not assigned to the detective division. *Id.* ¶¶ 17-18. Sheriff Sharp stated in his affidavit that he chose not to assign McKnight to the detective division because "he had been informed by a prosecutor in the Monroe County Prosecutor's Department that the Plaintiff was not considered to be trustworthy or a credible witness." *Id.* ¶ 19.

Throughout this time period, several unattributed cartoons referencing Ms. McKnight were distributed throughout the department. *Id.* ¶¶ 11. McKnight complained about the cartoons to Captain Chambers and to Sheriff Sharp, but no action was taken until January 2000. At that time, Sharp requested that Detective Brad Swain investigate a cartoon circulated in December 1999 portraying Chambers, Blocksom, and Plaintiff in a sexual pose. *Id.* ¶ 12. The investigation failed to uncover the cartoon's author. *Id.* ¶ 13. On October 6, 2000, Sharp issued a departmental directive to "cease and desist" such cartoons. *Id.* ¶ 15. Following the investigation and the subsequent directive, the number of cartoons circulated throughout the department decreased. *Id.* ¶ 14.

On or about October 26, 1999, Sharp notified Ms. McKnight that charges would be brought to the Monroe County Sheriff's Merit Board in connection with allegations that she had falsified time records. *Id.* ¶ 21. Weeks later, on November 23, 1999, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of sex and retaliation for engaging in protected conduct. Pl's Statement of Add'l Material Facts ¶ 62. The charge stated:

I was hired on September 24, 1984, as a Merit Officer. Over the course of the past many months, I have been both verbally,[sic] and non-verbally sexually harassed, and harassed because of my sex. I have complained about this harassment through my chain of command, and no action has ever been taken. I have also been retaliated against for opposing discrimination by being written up and threatened with departmental discipline. This harassment has risen to the point that any reasonable person would consider my employment arena to constitute a hostile working environment.

I believe that I have been discriminated against because of my sex, female, and in retaliation for opposing discrimination, in violation Title VII of the Civil Rights Act of 1964, as amended.

Def's Br. in Supp. of Mot. for Summ. J., Ex. 5. McKnight was subsequently issued a right-to-sue letter by the EEOC.

Cartoons continued to circulate through the department after Ms. McKnight filed the charge, including one drawing that depicted her having sex with an EEOC investigator. Pl's Statement of Add'l Material Facts ¶ 63. On several occasions since the filing of the lawsuit, McKnight's radio traffic while on duty was "keyed over," which posed a danger by impeding her ability to transmit radio signals. *Id.* ¶ 92. On one such occasion, Sheriff Sharp investigated and determined that McKnight's radio traffic was, in fact, keyed over, but he was unable to identify the individual responsible. *Id.* ¶¶ 97-98.

**\*3** On December 15, 1999 [FN2], the Merit Board held a hearing on the charges that Ms. McKnight falsified time records. Pl's Resp. to Def's Statement of Material Facts ¶ 22. At the hearing, McKnight was represented by counsel and permitted to present evidence on her own behalf. *Id.* On December 20, 1999, following an executive session, the Merit Board concluded that McKnight had on five occasions knowingly and intentionally misrepresented days worked on her time records. The Merit Board demoted McKnight to the rank of Road Deputy. *Id.* ¶ 23.

> FN2. The dates provided for the hearing and the issuance of findings by the Merit Board are not internally consistent within the chronology provided in the Statement of Material Facts. The Court recognizes that where the parties have indicated these events took place in December 2000, they most likely took place in December 1999.

Following her demotion, Ms. McKnight took an extended vacation and returned to work on or around February 10, 2000. Pl's Statement of Add'l Material Facts ¶ 64. In only two weeks back on the job, McKnight lodged seven complaints against her coworkers for incidents of "harassment," six of which purportedly took place during those two weeks. *Id.* ¶ 65. In her complaints, McKnight alleged the following: 1) Records Clerk Dawna Miller had written "guilty" on a copy of her service record and shared it with other county offices, which embarrassed McKnight; 2) Two officers in McKnight's presence discussed how many times a man can ask a woman out before the conduct approaches sexual harassment, and, on the same day, other officers had blocked her car into the parking lot during the lunch hour; 3) Upon learning that he had been assigned to work in the same district as McKnight, Deputy Hammock said, "This is a bunch of shit;" 4) At a morning roll call meeting, Officer Troy Thomas picked up a copy of the Bloomington Independent newspaper and asked aloud, "Who brought this piece of shit in here?"--a comment McKnight felt was directed at a story in the newspaper about her lawsuit; 5) Records Clerk Dawna Miller on one particular occasion failed to relay a phone message from McKnight's husband, resulting in a delay in picking up McKnight's child that day; 6) Deputy Hammock made a remark suggesting that other officers did not like McKnight and left the room to avoid her presence; and 7) Deputy Hammock and Dawna Miller made comments about changing a time card in McKnight's presence and Miller remarked, "You know, there are thieves around here that would do that," and laughed. Materials in Supp. of Def's Mot. for Summ. J., Report by Col. Steven Chambers. During roll call on or about March 3, 2000, Chambers announced that McKnight had made complaints of harassment. Def's Statement of Material Facts ¶ 26. Chambers investigated each of the seven complaints and, in a report dated March 7, 2000, concluded that all were unsubstantiated. Pl's Statement of Add'l Material Facts ¶ 67. Chambers did not explicitly conclude that McKnight had provided false statements, but stated that, in each instance, "it was basically her word against theirs." *Id.* ¶ 68. Chambers informed McKnight that the results of his investigation would be submitted to the Merit Board, and, according to Sheriff Sharp, McKnight was "read the rights that she was going to be disciplined." *Id.* ¶ 70. Shortly thereafter, McKnight went home sick and later called in to say that she had been admitted to a local stress care unit. *Id.* ¶ 70.

**\*4** When McKnight returned to work on or around March 23, 2000, Sharp accused

McKnight of making false statements to superior officers when questioned or interviewed and ordered McKnight to undergo a psychological evaluation. *Id.* ¶ 72. Sharp provided the results of Captain Chambers' investigation to the Merit Board, and, seven months later, the Board determined that it would take no action. *Id.* ¶¶ 77, 78. Following the Board's determination, Sharp suspended McKnight for fifteen days without pay, the maximum penalty he could impose. *Id.* ¶ 79. Upon learning she would be suspended, McKnight alleges that she asked Sharp, "So you are suspending me for complaining about sexual harassment?" and Sharp replied, "Yes." *Id.* ¶ 80. McKnight filed this lawsuit on December 6, 2000.

*Standard of Review*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir.1998).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. Id. at 322-23. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir.1994), citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Celotex, 477 U.S. at 322-24; Anderson, 477 U.S. at 249-52.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge,* 24 F.3d at 290. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. Venters v. City of Delphi, 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir.1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920.

*Analysis*

**\*5** Plaintiff has brought claims under Title VII of the Civil Rights Act of 1964, specifically alleging hostile work environment sexual harassment, failure to promote, and retaliation, and Defendant has moved for summary judgment as to these claims. We address each in turn.

*1. Hostile work environment sexual harassment*

Plaintiff first contends that a string of inappropriate workplace incidents made her working environment "hostile and unbearable," in violation of Title VII, which prohibits creating, condoning, or tolerating a hostile work environment. A "hostile" work environment is one that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " Shanoff v. Illinois Dept. of Human Services, 258 F.3d 696, 704 (7th Cir.2001) (internal citations omitted); Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir.1998). The issue of whether the work environment is hostile "turns on whether the alleged harassment occurred because of the sex of the complainant." Haugerud v. Amery School Dist., 259 F.3d 678, 692 (7th Cir.2001). In other words, the question is whether the employee was " 'exposed to disadvantageous terms or conditions of employment to which members of

the other sex [were] not exposed.' " *Id.,* quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).

Proof of hostile environment is two-pronged. In order to prevail, the plaintiff must show, *objectively,* that a reasonable person in her position would have perceived the environment to be hostile and present evidence sufficient to raise a reasonable inference that she *subjectively* perceived the environment to be abusive. Haugerud, 259 F.3d at 693; Adusumilli, 164 F.3d at 361. This requires that we determine both whether a reasonable person would perceive the alleged conduct as hostile or abusive and whether Plaintiff actually perceived the conduct in this manner. The Seventh Circuit has recognized that

[d]rawing the line [between vulgar behavior and sexually harassing behavior] is not always easy. On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is not consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir.1995). In order to determine whether the work environment is objectively hostile, we consider all of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Haugerud, 259 F.3d at 693. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (piecing together several quotations).

**\*6** Here, Plaintiff's hostile environment claim rests on 1) five sexually suggestive comments made over a one-year period; 2) a subordinate's comment that he should not have to take orders from a woman and would get even with her; 3) one incident in which a coworker "very purposefully" bumped into Plaintiff and made a sexually suggestive remark; 4) another incident in which a coworker touched her buttocks; and 5) a series of cartoons, most of which disparaged Plaintiff's job performance and some of which depicted Plaintiff in sexual situations.

Since Ms. McKnight complained to her superiors about this conduct, we will assume that she subjectively perceived these incidents to be abusive and hostile. Objectively, however, we must conclude that the alleged incidents are not so severe or pervasive as to create a hostile work environment. In reaching this conclusion, we take our cue from the Seventh Circuit, which has affirmed summary judgment in many cases involving far more egregious misconduct. *See, e.g.,* Adusumilli, 164 F.3d at 361-362 (touchings, including a poke to plaintiff's buttocks); Saxton v. AT & T Communications, Inc., 10 F.3d 526, 533-34 (7th Cir.1993) (inappropriate remarks and impermissible touching); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 431 (7th Cir.1995) (defendant "never said anything to her that could not be repeated on primetime television" and "handful of comments" alleged to have occurred did not give rise to liability under Title VII); Weiss v. Coca Cola Bottling Co., 990 F.2d 333, 337 (7th Cir.1993) (unwanted touchings and attempts to kiss). Here, the incidents consisted of some inappropriate but minor physical contact, a handful of comments, and some anonymous drawings that only in some cases referred to sexuality. The conduct about which Plaintiff complains, though admittedly offensive and inappropriate in the workplace, is not sufficiently severe or pervasive to alter the terms of conditions of her employment. In conclusion, because the conduct of which she complains did not rise to the level of actionable hostile environment sexual harassment, we *GRANT* Defendant's motion for summary judgment with respect to this claim.

*2. Failure to promote Plaintiff to detective*

Ms. McKnight also alleges that Defendant failed to promote her to detective, in violation of Title VII. Defendant argues that Plaintiff is barred from pursuing this claim because she failed to include it in the EEOC charge providing the basis for her right-to-sue letter. A plaintiff may not bring claims in a lawsuit which were not included in her EEOC

charge. *Cable v. Ivy Tech State Coll.,* 200 F.3d 467, 476 (7th Cir.1999). "[T]his requirement serves to enhance the administrative enforcement process by ensuring that the EEOC can conduct a full investigation while also providing the employer with advance notice of the claim and an opportunity to resolve the dispute." *Id.* at 476- 77. An EEOC complaint includes a claim if the claim is "like or reasonably related to" the content of the EEOC charge and if the claim "reasonably could have developed from the EEOC's investigation of the charges before it." *Id.* at 477. Such a reasonable relationship exists if there is a factual relationship between the claim and the EEOC complaint. *Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7th Cir.1995). [FN3] The Seventh Circuit has elaborated that, in order to embrace a claim not explicitly mentioned, a charge must "at a minimum, describe the same conduct and implicate the same individuals." *Gawley v. Indiana University,* 276 F.3d 301, 315 (7th Cir.2001), *citing McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473, 481 (7th Cir.1996).

> FN3. An exception to this rule is where the retaliation is alleged to have occurred in response to the filing of the EEOC charge itself; the facts in the case at bar do not fit such an exception. *See Heuer v. Weil McLain,* 203 F.3d 1021, 1023-24 (7th Cir.2000).

**\*7** Here, the allegations in Plaintiff's EEOC charge clearly reference both a hostile work environment and alleged acts of retaliation, but make no mention of any failure to promote Plaintiff, nor any facts reasonably related to such a claim. The charge fails to mention Sheriff Sharp or any conduct leading to the alleged failure to promote Plaintiff, as described in the complaint. Indeed, in response to the Motion for Summary Judgment, Plaintiff does not attempt to refute or even respond to Defendant's contention regarding this alleged procedural defect. Because the plain language of the EEOC charge bears no reasonable relationship to Plaintiff's failure-to-promote claim, and because Plaintiff has failed to offer any showing to the contrary, we *GRANT* Defendant's Motion for Summary Judgment on this claim.

3. Retaliation

Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under the statute. 42 U.S.C. § 2000e-3(a). The Seventh Circuit recently clarified the two routes a plaintiff may travel to obtain or prevent summary judgment on a retaliation claim:

One [way] is to present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity ... and as a result suffered the adverse employment action of which he complains. If the evidence is uncontradicted, the plaintiff is entitled to summary judgment. If it is contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation....

... The second route to summary judgment ... requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

*Stone v. City of Indianapolis Public Utilities Div.,* 281 F.3d 640, 644 (7th Cir.2002).

a. Adverse employment actions

By either the direct or indirect methodology, the employee must establish some adverse employment action, defined as "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." Stockett v. Muncie, Ind. Transit Sys., 221 F.3d 997, 1001 (7th Cir.2000), quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir.1993). In other words, there must be a " 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " Stutler v. Ill. Dept. of Corr ., 263 F.3d 698, 703 (7th Cir.2001), quoting Bell v. EPA, 232 F.3d 546, 555 (7th Cir.2000), quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). By contrast, public humiliation does not rise to the level of an adverse employment action. Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir.1989).

**\*8** In response to the Motion for Summary Judgment, Plaintiff alleges that the retaliatory adverse employment action she suffered actually consisted of two incidents: 1) a requirement that Plaintiff submit to psychological testing and evaluation, and 2) a fifteen-day unpaid suspension. Pl's Resp. to Def's Mot. for Summ. J. at 15. The latter obviously qualifies as an adverse employment action. Patt v. Family Health Sys., Inc., 280 F.3d 749, 753 (7th Cir.2002) (explaining that adverse employment actions include terminations, suspensions, and demotions, as well as other actions, "some blatant and some subtle"), quoting Haugerud, 259 F.3d at 691. However, the psychological testing ordered in this case does not appear to rise to the level of an adverse employment action. McKnight was suspected of filing seven unfounded complaints against her coworkers in her first two weeks back on the job after a vacation. Following an investigation, Captain Chambers concluded that none of the complaints could be substantiated and that the truth of the allegations in each case turned on McKnight's credibility. McKnight does not directly dispute the basis of suspicion underlying the psychological exam. Indeed, McKnight's chief complaint about the exam was that it "subjected [her] to humiliation and embarrassment among her coworkers," that, McKnight argues, significantly affected the terms and conditions of her employment. Pl's Resp. to Def's Motion for Summ. J. at 16. The only evidence McKnight cites in support of the proposition that the exam altered the terms or conditions of her employment is an anonymous cartoon circulated within her department depicting Sharp and a doctor as stating that McKnight was "crazy." Id. McKnight argues that, given the nature of police responsibilities, it is "not difficult to imagine" how her coworkers' inferences about psychological testing impaired her ability to perform her job. We are not inclined to speculate as to the fact of such an impairment; to the contrary, on summary judgment we must confine our inquiry to the evidence presented. Plaintiff has simply identified no evidence from which a reasonable jury could conclude that submitting to the psychological evaluation materially or significantly affected her employment status. Defendant's requirement that she submit to such testing, therefore, did not rise to the level of an adverse employment action.

b. Legitimate, nondiscriminatory business reasons

As discussed previously, McKnight's fifteen-day suspension properly qualifies as an adverse employment action, which she contends Defendant imposed in retaliation for her complaints regarding incidents of harassment. Defendant counters that such discipline was implemented for legitimate, nondiscriminatory business reasons, namely that McKnight provided false information about co-employees in the course of lodging numerous complaints against them.

With regard to the suspension, McKnight has alleged that when she asked Sheriff Sharp if she was being suspended for complaining of sexual harassment, he replied, "Yes." If believed by the trier of fact, such a statement would be the paradigmatic example of direct evidence of discriminatory motivation. Therefore, we must next consider whether McKnight's complaints constituted "protected expression," such that Title VII prohibited discipline for lodging them. In order for employee complaints to be "objectively reasonable," and therefore qualify as "protected expression," such complaints must deal

with a type of harassment covered by the statute, even if the complaints would not necessarily prove meritorious at trial. *Hamner v. St. Vincent Hosp. and Health Care Center, Inc.,* 224 F.3d 701, 707 (7th Cir.2000) (stating that "even if the degree of discrimination does not reach a level where it affects the terms and conditions of employment, if the employee complains and the employer fires him because of the complaint, the retaliation claim could still be valid [so long as] the complaint [ ] involve[s] discrimination that is prohibited by Title VII"). "It is improper to retaliate for the filing of a claim of violation of Title VII even if the claim does not have merit-- provided it is not completely groundless." *McDonnell v. Cisneros,* 84 F.3d 256, 259 (7th Cir.1996), citing *Dey v. Colt Constr. & Dev. Co.,* 28 F .3d 1446, 1457-58 (7th Cir.1994); *Rucker v. Higher Educ. Aids Bd.,* 669 F.2d 1179, 1182 (7th Cir.1982). However, an employer does not violate Title VII by disciplining an employee for filing frivolous complaints. *McDonnell,* 84 F.3d at 259.

**\*9** Because McKnight alleges that she was suspended for complaining about "sexual harassment," without limiting the time frame of such complaints, her complaints prior to her demotion may bear on the retaliation claim as well. Although there may be some question as to whether the content of McKnight's complaints in February 2000 constitute protected expression, her earlier complaints to supervisors regarding harassing incidents certainly fall within the ambit of Title VII. McKnight has thus satisfied the prima facie requirements for her retaliation claim. In order to prevail on summary judgment, Defendant must establish that it would have suspended McKnight absent any impermissible motive. "The persuasiveness of that showing will normally be for the finder of fact to assess, unless the court can say without reservation that a reasonable finder of fact would be compelled to credit the employer's case on this point." *Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir.1997), citing *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 893 (7th Cir.1996).

Defendant contends that Sheriff Sharp imposed the fifteen-day suspension because he believed that McKnight was knowingly lodging false complaints against her coworkers. In support of this contention, Defendant submits Captain Chambers' investigative report regarding the seven incidents of which McKnight complained (in the first ten working days upon returning to work), based upon which Sharp concluded that McKnight's complaints were unjustified. In other words, after reading the entire investigative report and weighing the credibility of the parties involved, Sharp concluded that McKnight provided less-than-truthful accounts of the incidents underlying her complaints. The parties do not dispute that Sharp submitted this information to the Merit Board for consideration of disciplinary action, and that, after the Board's determination not to impose discipline, Sharp suspended McKnight for fifteen days without pay, the maximum penalty he could impose. Defendant has not offered evidence to establish that the severity of this penalty related solely to the seriousness of the alleged offense, or, stated differently, that the discipline was not upgraded as a penalty to penalize McKnight for lodging complaints of harassment.

When viewed in the light most favorable to McKnight, the direct evidence of retaliation tends to satisfy the prima facie requirements for her claim. In light of this evidence, and certain gaps in the proof offered by Defendant, we cannot say without reservation that a trier of fact would be compelled to adopt Defendant's justification for the suspension. Moreover, because Defendant's evidence as to whether it would have imposed the same suspension absent any retaliatory motive presents a close call, relying heavily on credibility determinations that are inappropriate for resolution on summary judgment, Defendant's Motion for Summary Judgment as to the retaliation claim is *DENIED.* [FN4]

> FN4. In the Response to the Motion for Summary Judgment, McKnight purported to offer both direct and indirect evidence of retaliation. However, because summary judgment must be denied on the basis of McKnight's direct evidence, we need not proceed to consider whether the indirect evidence precludes summary judgment as well.

*Conclusion*

**\*10** Beverly McKnight sued for sex discrimination and retaliation under 42 U.S.C. § 2000e, et seq. Defendant moved for summary judgment as to all claims. Based on the discussion above, we find that 1) the conduct of which McKnight complains does not rise to the level necessary to create a hostile working environment; 2) because McKnight failed to adequately reference the failure-to-promote claim in her EEOC charge, she is barred from presenting such claim as a part of this lawsuit; 3) Defendant's order that McKnight submit to psychological testing did not constitute an adverse employment action; and 4) regarding Plaintiff's retaliation claim, certain factual issues remain as to whether Defendant would have imposed the fifteen-day suspension absent any impermissible motive, which issues must be resolved at trial. Accordingly, Defendant's Motion for Summary Judgment is *GRANTED IN PART* and *DENIED IN PART.* [FN5]

> FN5. Defendant's Motion for Summary Judgment did not address factual allegations in McKnight's complaint regarding disparate treatment based on sex. We do not address any such claim, as the parties have not properly raised it to the Court.

S.D.Ind.,2002.
McKnight v. Monroe County Sheriff's Dept.
2002 WL 31132702 (S.D.Ind.), 90 Fair Empl.Prac.Cas. (BNA) 35
END OF DOCUMENT