1996 WL 111881 (N.D.Ill.)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
James W. MORELAND, Plaintiff,
v.
James F. SHERLOCK & Craig S. Crown, Defendants.
No. 93 C 4940.
March 12, 1996.

*MEMORANDUM OPINION AND ORDER*

MANNING, District Judge.

**\*1** This matter comes before the court on defendants' motion for summary judgment on the issue of qualified immunity. Plaintiff, James W. Moreland ("Moreland") filed this action pursuant to 42 U.S.C. § 1983 against defendants James F. Sherlock ("Sherlock") and Craig S. Crown ("Crown"), employees of the Sheriff of Cook County, alleging violation of his constitutional right to free association. Moreland was discharged from his position as a custodial employee with the Sheriff of Cook County after almost three years of service, the final year and a half of which he also served as union steward for the custodial employees. He now claims that defendants retaliated against him as a result of his effort's to act as an advocate for the members of his union, in violation of the right to free association guaranteed by the First and Fourteenth Amendments to the United States Constitution.

Under 42 U.S.C. § 1983 Moreland seeks: (1) actual damages, including lost wages and benefits; (2) compensatory damages for the loss and deprivation of plaintiff's constitutional right to free association; (3) punitive damages sufficient to deter similar future conduct by the defendants; and (4) an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988. For the reasons set forth below, defendants' motion for summary judgment is denied.

BACKGROUND

Plaintiff alleges the following relevant series of facts. Plaintiff, James W. Moreland began employment with the Sheriff of Cook County as a "Janitor II" at the Skokie, Illinois Cook County Court Building, in June of 1989 and was employed in that capacity for his entire period of employment.

Defendant Sherlock was appointed Chief County Custodian by the Sheriff. The Chief Custodian is responsible for care and maintenance of the Cook County courthouses. In executing this responsibility, he has the authority to establish rules and regulations governing employee conduct and must direct the transfer, suspension, and termination of the custodial staff.

Defendant Crown was appointed Building Custodian for the Skokie facility and served under Defendant Sherlock. As Building Custodian, Crown was responsible for the delegation of work assignments to custodial employees, the issuance of reprimands to discipline employees, ensuring employee compliance with department policy, the distribution of employee paychecks, and the distribution of supplies and equipment.

In January of 1991, Moreland was elected to the position of union steward for the evening shift of custodial employees. He served in this capacity until his termination. As part of his duties as union steward, Moreland filed grievances on behalf of other employees with various complaints.

On August 6, 1991, during a meeting attended by Moreland, Sherlock, Crown, and a union business agent, Moreland spoke out against a supervisor whom Moreland had

observed allowing other employees to leave work prior to the time stated on their time sheets. Moreland also expressed concern over the preferential treatment towards employees hired after the recently elected sheriff, a Democrat, took office. Moreland and several other employees apparently were hired during the prior Republican administration.

*\*2* On August 15, 1991, a series of grievances were filed by Moreland. The first claimed that Perrone was being intimidated by Meyer. The second grievance concerned a twenty-nine day suspension imposed on Perrone for fighting with Meyer. The final grievance asked that Meyer be disciplined for intimidating Moreland during Perrone's suspension hearing.

On August 21, 1991, Moreland filed a grievance stating that the employees were afraid to file grievances because of the reprisals by their supervisors for doing so. These reprisals took the form of changed work assignments, denials of vacation time, and requiring a medical excuse for absence though none was required. The grievance also noted the preferential allowance of vacation time to new employees.

On September 3, 1991, the evening shift of custodians did not receive their paychecks until 10:30 in the evening. The day shift received their paychecks at 2:30 in the afternoon. The withholding of these paychecks was ordered by Crown. Moreland demanded that paychecks be distributed at the same time for both shifts and that Crown post the time and place that such distribution would occur.

On September 16, 1991, during a meeting to address the proper distribution of paychecks, attended by Sherlock, Crown, Moreland, a union business agent, and another steward, Moreland repeated his demand that both shifts be paid at the same time. During that meeting, Moreland also stated that state law required the Sheriff to post the time and place of payment and also required the Sheriff to give advance notice of any change in the time or place.

On September 20, 1991, Moreland again filed a written complaint concerning the preferential treatment of certain employees.

On October 7, 1991, Moreland filed a complaint with the Illinois Department of Labor concerning the proper disbursement of paychecks to employees, the improper docking of Moreland's pay, and Crown's failure to post proper notice of time and place of payment in violation of state statute. Later that day, Moreland again confronted Crown about the improper treatment of employees by Crown and Gunn.

On October 11, 1991, in his capacity as representative of the members of his department, Moreland attended a contract bargaining session between the union, the county, and the Sheriff. At the meeting, Moreland bargained for and obtained a pay raise for the custodial employees, fully paid health insurance, and a change in the distribution of employee paychecks.

On November 25, 1991, Moreland requested that an employee with a physical disability be assigned work which required less physical effort. On November 27, 1991, Moreland filed a complaint against Crown on behalf of that fellow employee concerning his work assignments.

On December 13, 1991, Moreland filed complaints against Crown on behalf of other employees alleging that Crown improperly altered the union members' job classifications without notice to the union, and that Crown improperly prohibited the employees from entering the building earlier than one-half hour prior to the start of their shift. Moreland also filed a grievance stating that Crown had issued an order prohibiting employees from examining their files without Crown's permission.

*\*3* On December 17, 1991, Moreland filed a grievance against Crown which alleged that Crown had refused to distribute retroactive paychecks to employees who refused to sign the order previously issued by Crown which violated the union contract.

On December 20, 1991, Moreland filed a grievance against Crown regarding discrimination against a physically handicapped employee after that employee was denied a transfer to another facility. On January 6, 1992, Moreland, Sherlock, Crown, and a Union agent met to discuss the denial of the employee's transfer request, the proper posting of openings in other custodial positions, and other grievances filed by

Moreland.

On June 5, 1992, Sherlock terminated Moreland claiming that he failed to perform his duties and was absent from his job.

DISCUSSION

I. SUMMARY JUDGMENT

Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56 (c); *See* Local Rule 12(m). "[T]he non-moving party may not simply rest on his pleadings, but must demonstrate by specific evidence that there is a genuine issue of triable fact." Swanson v. Village of Lake in the Hills, 962 F.2d 602, 603-4 (7th Cir. 1992). However, "[a] motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining whether there is a genuine issue for trial." Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990). All reasonable inferences must be resolved in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); Kennedy v. United States, 965 F.2d 413, 417 (7th Cir. 1992).

In order to succeed in his §1983 claim that defendants deprived him of his rights under the First and Fourteenth Amendments, plaintiff must first prove that his conduct was constitutionally protected. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); Cromley v. Bd. of Educ. of Lockport Township H.S. Dist. 205, 17 F.3d 1059, 1067-68 (7th Cir. 1994), *cert. denied,*--- U.S. ---, 115 S.Ct. 74, 130 L.Ed.2d 28 (1994). The plaintiff must then show that "the protected conduct was a 'substantial' or 'motivating' factor in the defendant's action." Cromley, 17 F.3d at 1068. If the plaintiff meets this burden, the burden then shifts to the defendants to prove by a preponderance of the evidence that the same result would have occurred in the absence of the protected conduct. [FN1] Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576.

II. FREEDOM OF ASSOCIATION

Defendants contend that plaintiff's allegations fail to establish that his actions address a matter of public concern. Defendants argue that plaintiff's conduct related solely to private employment matters, that his association as a union steward was not authorized by the union's collective bargaining agreement, and that the complaints he filed as a union steward were not authorized by bargaining agreement. Furthermore, defendants contend that even if plaintiff's conduct did address a matter of public concern, they are entitled to assert the affirmative defense of qualified immunity. Defendants ask therefore that summary judgment be entered in their favor on the issue of qualified immunity.

*\*4* In his second amended complaint, plaintiff claims that the actions of the defendants violated his First Amendment right to association with others for the pursuit of mutual economic goals and improved working conditions.

It is well settled that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Plaintiff's claim is grounded in the First Amendment right of free association. *See* NAACP v. Alabama, 357 U.S. 449, 460-61, 78 S.Ct. 1163, 1170-71, 2 L.Ed.2d 1488 (1958). The proper analytical framework for addressing claimed violations of the constitutional right to free association is found in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and its progeny. Gregorich v. Lund, 54 F.3d 410, 414 (7th Cir. 1995). "Although *Pickering* focused upon a public employee's right of free speech, while [plaintiff's] First Amendment claim focuses upon his right of free association, our Circuit applies the test announced in *Pickering* and *Connick* to both free speech and free association claims." Id. at 414, n.4, (citing Griffin v. Thomas, 929 F.2d 1210, 1212-14 (7th. Cir. 1991)).

In *Pickering,* the Supreme Court determined that, in reviewing the alleged constitutional violation, courts must "arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734-35. "To be protected, a public employee's expressive activity must 'be on a matter of public concern' and his interest in the expression must outweigh the State's interest in promoting the efficiency of its public services." *Gregorich,* 54 F.3d at 414, (quoting *Waters v. Churchill,* 511 U.S. 661, ----, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994) (plurality opinion of O'Connor, J.) (citing *Connick, Pickering*)); *Cliff v. Bd. of Sch. Commissioners,* 42 F.3d 403, 409 (7th Cir. 1994) (citing *Pickering*).

There are, however, limits placed on the actions of government employees which are not placed on ordinary citizens. *Waters v. Churchill,* 511U.S. 661, ----, 114 S.Ct. 1878, 1886, 128 L.Ed.2d 686 (1994) (plurality opinion) ("[T]he government as employer indeed has far broader powers than does the government as sovereign."). Thus, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690; *see also United States v. Nat'l Treasury Employees Union,* 513 U.S. 454, ----, 115 S.Ct. 1003, 1013, 130 L.Ed.2d 964 (1995) ("[P]rivate speech that involves nothing more than a complaint about a change in the employee's own duties may give rise to discipline without imposing any burden of justification on the government employer.").

**\*5** Whether the speech in question touches upon a matter of public concern is a question of law for the court. *Marshall v. Porter County Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir. 1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1111, 130 L.Ed.2d 1076 (1995). In making this determination, the court must consider the content, form, and context of the conduct, of which, content is the most important. *Smith v. Fruin,* 28 F.3d 646, 651 (7th Cir. 1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Belk v. Town of Minocqua,* 858 F.2d 1258, 1264 (7th Cir. 1988). Furthermore, the motivation of the speaker, while not dispositive, may be considered by the court. *Cliff,* 42 F.3d at 409.

As union steward, plaintiff either filed grievances or orally discussed the following issues: treatment of public employees on the basis of political affiliation, retaliation against employees for the filing of union grievances, employees maintaining improper time records with the knowledge of a supervisor, the proper procedure for posting of job openings, and the proper procedure for distribution of employee paychecks. This court finds that when viewed in the light most favorable to the plaintiff the content, form, and context of plaintiff's conduct touched on a matter of public concern. Additionally, plaintiff's motivation appears to have been based on his duties as union steward.

Plaintiff did not file union grievances complaining merely of his own working conditions. *See Gray v. Lacke,* 885 F.2d 399, 411 (7th Cir. 1989) ("[G]rievances submitted on behalf of other individuals often touch upon matters of public concern."), *cert. denied,* --- U.S. ----, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Therefore, plaintiff's expression is not like the complaints which have been found to be entirely personal in nature. *See Smith v. Fruin,* 28 F.3d 646, 652 (7th Cir. 1994) (listing cases which found remarks did not constitute public speech where made for purely personal reasons). Although some of the grievances filed by plaintiff dealt with alleged retaliation against him, the record supports the conclusion that he was acting in his capacity as union advocate. *See Marshall,* 32 F.3d at 1219 ("[P]laintiff's speech could be characterized as a matter of public concern even if the speaker stands to gain a personal benefit in addition to bringing the wrongdoing to light.").

Furthermore, whether the grievances filed by plaintiff were "proper" under the agreement between the union and the sheriff is irrelevant to the constitutional

protection of those statements. Defendants did not have an affirmative constitutional duty to act on or give validity to plaintiff's union efforts. *Smith v. Arkansas State Highway Employees,* 441 U.S. 463, 464-65, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979) (per curiam). However, this lack of an affirmative duty does not mean that they would be entitled to retaliate against or terminate plaintiff as he alleges. *See Smith,* 441 U.S. at 464-65, 99 S.Ct. at 1828.

*\*6* Having found that plaintiff's expression involved a matter of public concern, the issue now becomes whether plaintiff's interest in advocating on behalf of his fellow union members outweighed the State's interest in promoting the efficiency of its public services. *See Connick,* 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734). In making this determination, this court considers "[w]hether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence is necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). Furthermore, the court should also look at the manner, time, and place of the employee's expression, as well as the context in which the dispute arose. *Id.*

"The First Amendment protects the right to advocate, either individually or through an association, and also the association's right to engage in advocacy on behalf of its members." *Hanover Township Fed'n of Teachers Local 1954 v. Hanover Community Sch. Corp.,* 457 F.2d 456, 459 (7th Cir. 1972). While not all union activities are afforded constitutional protection, "protected 'union activities' include advocacy and persuasion in organizing the union and enlarging its membership, and also in the expression of its views to employees and to the public." *Id.* at 460.

In this case plaintiff, in his capacity as union steward, acted as an advocate for his fellow employees. In his role as advocate, plaintiff followed procedures set out through a collective bargaining agreement which therefore implicates the right to free association. *See Stellmaker v. DePetrillo,* 710 F. Supp. 891 (D. Conn. 1989). The point of his expression was to communicate the grievances of his fellow employees with their employer. It is beyond dispute that any retaliation based on such advocacy is impermissible. *Hanover,* 457 F.2d at 459; *see also, Morfin v. Albuquerque Public Schools,* 906 F.2d 1434, 1438-39 (10th Cir. 1990) (cases cited therein); *Professional Ass'n of College Educators v. El Paso Community College Dist.,* 730 F.2d 258, 262 (5th Cir. 1984) ("[T]he First Amendment is violated by state action whose purpose is... to intimidate public employees... from taking an active part in [[[union] affairs or to retaliate against those who do.") (footnote omitted), *cert. denied,* --- U.S. ----, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984); *Columbus Educ. Ass'n v. Columbus City School Dist.,* 623 F.2d 1155, 1159 (6th Cir. 1980) ("[A] reprimand to retaliate against the zealous representation by a union spokesperson of a member's grievance impermissibly infringes upon the constitutional right of free association....").

This court cannot find any countervailing government interest which sways the balance in the government's favor. There does not appear to be any indication that plaintiff had any kind of "close and personal working relationship" which required "loyalty and confidence" with the defendants. Nor is there any indication that plaintiff's activities as union steward affected the performance of his duties or the regular operation of the custodial department. The context of the disputes arose through plaintiff's position as union steward.

*\*7* As has been noted, "[i]t is well established, as a general proposition, that public employees have the right to associate with each other to address issues of mutual concern and of public importance." *Gregorich,* 54 F.3d at 416 (collecting cases). Clearly, the government's interest in promoting the efficiency of its public service does not outweigh plaintiff's actions as a union steward. *See Terry v. Village of Glendale Heights,* No. 86-C4468, 1989 WL 106623, at *8 (N.D. Ill. Sept. 13, 1989) (stating that summary judgment not warranted where government showed no evidence that union activities disrupted harmony among coworkers, disrupted supervisor's ability to maintain

discipline, or impacted workers' ability to perform duties.). Therefore, plaintiff's union conduct constitutes protected activity under the First Amendment.

III. QUALIFIED IMMUNITY

Having found that plaintiff's conduct is protected by the First Amendment, the court now turns to defendants' assertion that they are entitled to invoke the affirmative defense of qualified immunity.

"The defense of qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."' *Marshall v. Allen,* 984 F.2d 787, 791 (7th Cir. 1993) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "When the law is settled on a particular point, public employees are expected to conform their conduct accordingly, and they may be held liable when they do not." *Smith,* 28 F.3d at 650. "If it were not clearly established that their conduct violated the law at the time the officials allegedly acted, then they are entitled to qualified immunity." *Marshall,* 984 F.2d at 792 (citing *Siegert v. Gilley,* 500 U.S. 226, 231-32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)).

Defendants argue that they could not have reasonably known that plaintiff's filing or representing grievances on his own and others behalf was clearly entitled to constitutional protection. Plaintiff argues that, at the time the defendants acted, the right to engage in associational activities that addressed a matter of public concern was clearly established. Whether such a right was clearly established at the time of the alleged conduct is a question of law for the court. *Smith,* 28 F.3d at 650. "At the summary judgment stage, the defendants cannot prevail if [the plaintiff] can present a version of the facts that is supported by the evidence and under which defendants would not be entitled to qualified immunity."

Though not explicitly found in the Bill of Rights, the freedom to associate has long been held to be implicit in the other listed freedoms in the First Amendment. *Healy v. James,* 408 U.S. 169, 181, 92 S.Ct. 2338, 2346, 33 L.Ed.2d 266 (1972) (collecting cases). "According protection to collective effort on behalf of shared goals is especially important in observing political and cultural diversity and in shielding dissident expression from suppression by the majority." *Roberts v. United States Jaycees,* 468 U.S. 609, 622, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984). Therefore, "state action that effectively chills the freedom to associate is subject to 'the closest scrutiny."' *Marshall,* 984 F.2d at 799 (quoting *NAACP v. Alabama,* 357 U.S. at 460-61, 78 S.Ct. at 1171).

**\*8** Furthermore, this court recognizes that in 1984 the Illinois legislature enacted the Illinois Public Labor Relations Act ("the Act") to address the issue of retaliation against employees based on their union association. See Ill. Rev. Stat. Ch. 5 §315/10 (1993). The Act states, in relevant part, that: "[i]t shall be an unfair labor practice for an employer or its agents... to dominate or interfere with the formation, existence, or administration of any labor organization..." or "to refuse to bargain collectively in good faith with a labor organization..., including, but not limited to, the discussing of grievances with the exclusive representative." Ill. Rev. Stat. Ch. 5 § 315/10 ¶¶ (1) & (4) (1993).

Clearly, at the time the defendants acted against plaintiff in 1991 and 1992, both the case law and relevant statutes were sufficiently settled on the issue of the right of association by union members. See *Gavrilles v. O'Connor,* 611 F. Supp. 210, 211 (D. Mass. 1985) ("The impermissibility of retaliating against an employee for engaging in union activities was clearly established in 1982. Insofar as the filing and processing of grievances is a legitimate union pursuit,... defendants should have known that retaliation for participating in that activity is constitutionally prohibited."). Therefore, this court finds that, at the time of defendants' actions, the law regarding the freedom to associate was sufficiently clear so as to notify them that terminating the plaintiff because of his actions as a union steward would be a violation of the plaintiff's constitutional rights. Thus, they are unable to assert the affirmative defense of qualified

immunity.

IV. CONCLUSION

As a matter of law, plaintiff's activities as union steward are entitled to protection under the First Amendment. Furthermore, the law regarding the protected status of plaintiff's conduct was sufficiently settled at the time of defendants' actions. Thus they are not entitled to assert the defense of qualified immunity. Accordingly, defendants' motion for summary judgment is denied.

> FN1. Defendants' moved for summary judgment solely on the issue of qualified immunity. Therefore, the issue of defendants' motivation is not addressed in this opinion because it is not before the court at this time

N.D.Ill.,1996.
Moreland v. Sherlock
1996 WL 111881 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

- 1:93CV04940 (Docket) (Aug. 16, 1993)

END OF DOCUMENT