2002 WL 31093609 (S.D.N.Y.), 171 L.R.R.M. (BNA) 2059, 147 Lab.Cas. P 59,647

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
Damon A. RUNYON, Plaintiff,
v.
NEW YORK CITY TRANSIT AUTHORITY and James Ruggiero, Defendants.
No. 99 Civ. 8670(CBM).
Sept. 18, 2002.

Employee of city transit authority brought § 1983 claim, alleging violation of First Amendment rights. On authority's motion for summary judgment, the District Court, Motley, J., held that: (1) employee's free speech right was not violated; (2) fact issue existed as to whether employee's association right was violated; (3) manager was not entitled to qualified immunity; and (4) authority could be held liable for manager's conduct.
Motion granted in part and denied in part.

West Headnotes

[1] KeyCite Notes 

◆170A Federal Civil Procedure
  ◆170AXVII Judgment
    ◆170AXVII(C) Summary Judgment
      ◆170AXVII(C)3 Proceedings
        ◆170Ak2535 k. Presentation of Case in General. Most Cited Cases

Plaintiff may not raise new claims for first time in submissions in opposition to summary judgment motion.

[2] KeyCite Notes 

◆92 Constitutional Law
  ◆92V Personal, Civil and Political Rights
    ◆92k90 Freedom of Speech and of the Press
      ◆92k90.1 Particular Expressions and Limitations
        ◆92k90.1(7) Labor Matters
          ◆92k90.1(7.2) k. Public Employment. Most Cited Cases

◆268 Municipal Corporations KeyCite Notes 
  ◆268V Officers, Agents, and Employees
    ◆268V(C) Agents and Employees
      ◆268k218 Removal, Discharge, Transfer or Demotion
        ◆268k218(3) k. Grounds. Most Cited Cases

City transit authority officials' alleged retaliation against employee who refused to fill out scheduling form as requested did not violate employee's free speech rights; although form was public record, its contents were not shown to be matters of public

concern. U.S.C.A. Const. Amend. 1.

[3] KeyCite Notes 

🔑170A Federal Civil Procedure
   🔑170AXVII Judgment
      🔑170AXVII(C) Summary Judgment
         🔑170AXVII(C)2 Particular Cases
            🔑170Ak2497 Employees and Employment Discrimination, Actions Involving
               🔑170Ak2497.1 k. In General. Most Cited Cases

Issue of material fact as to whether city transit authority manager sought to have employee terminated because of his union activities precluded summary judgment on employee's § 1983 claim for violation of his First Amendment association rights. U.S.C.A. Const. Amend. 1; 42 U.S.C.A. § 1983.

[4] KeyCite Notes 

🔑78 Civil Rights
   🔑78III Federal Remedies in General
      🔑78k1372 Privilege or Immunity; Good Faith and Probable Cause
         🔑78k1376 Government Agencies and Officers
            🔑78k1376(10) k. Employment Practices. Most Cited Cases
               (Formerly 78k214(4))

City transit authority employee's First Amendment right to be free from retaliation for union activities was sufficiently well establish to preclude employer, accused of engaging in such retaliation, from asserting qualified immunity from § 1983 liability. U.S.C.A. Const. Amend. 1; 42 U.S.C.A. § 1983.

[5] KeyCite Notes 

🔑78 Civil Rights
   🔑78III Federal Remedies in General
      🔑78k1342 Liability of Municipalities and Other Governmental Bodies
         🔑78k1351 Governmental Ordinance, Policy, Practice, or Custom
            🔑78k1351(5) k. Employment Practices. Most Cited Cases
               (Formerly 78k206(3))

City transit authority could be held liable under § 1983 for constitutional violations allegedly committed by it highest ranking representative at depot where complaining employee worked; representative was effectively final decisionmaker, even though his decisions could have been overturned through grievance process. 42 U.S.C.A. § 1983.
Christopher Watkins, Law Offices of Michael H. Sussman, for plaintiff.
Herbert Teitelbaum, Robinson Silverman Pearce Aronsohn & Berman LLP, for defendants.

*MEMORANDUM OPINION AND ORDER*

MOTLEY, J.
**\*1** The plaintiff in this matter, Damon Runyon, has worked for the New York City

Transit Authority ("T.A.") for more than 20 years. Since 1992, he has been a bus dispatcher at Gun Hill Depot in the Bronx. In 1998, he was disciplined for his conduct on several counts--among them, insubordination, abusive behavior and poor performance. An arbitrator sustained some of the charges against him but dismissed others. Runyon contends that he was disciplined not for insubordination or any other legitimate reason, but rather because he refused to falsify "Daily 24 Hour Bus Reports," or "ST-10 reports"("ST-10's"), that he was required to fill out as part of his job. He asserts that the First Amendment protects the reports he filed and that the disciplinary charges were filed in retaliation for the reports, constituting a violation of his First Amendment right to freedom of speech. In addition, Runyon claims that his election as shop steward within his union and his activity as such were motivating factors in the decision to bring charges against him, in violation of his First Amendment rights to freedom of association.

Plaintiff asserts a cause of action under 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Defendants moved for summary judgment. For the reasons set forth below, defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

As a bus dispatcher, Runyon was required to keep track of the times buses left the depot, and, if they left late, to enter the reason for the delay. If a bus was late because the driver was late in reporting for his or her shift, the dispatcher was supposed to record "No Operator" on the ST-10. If, on the other hand, the bus was behind schedule because the bus was defective in some way, the dispatcher was supposed to record "No Bus."

Runyon asserts that on numerous occasions, co-defendant James Ruggiero, the Assistant General Manager of the depot in question, pressured him, either directly or through subordinates, to enter "No Operator" when the proper entry should have been "No Bus." Runyon claims he refused to make such false entries, and that, after his election as shop steward, he told other dispatchers that they should also refuse to make them. Defendants deny they pressured Runyon to make false entries and claim that Runyon was difficult and insubordinate in a number of ways. They note that the arbitrator, in sustaining some of the charges against Runyon, described the situation as a "test of wills."

The conflict came to a head in October of 1998, shortly after Runyon was elected shop steward by his union. Two General Superintendents (above Runyon in the depot hierarchy but below Ruggiero) approached Runyon (for what reason is a matter of dispute), and somewhere during the conversation that ensued he referred to Ruggiero as "an asshole." On another occasion, while calling his union representative for advice as to how to deal with Ruggiero, he referred to him as "an idiot." He was overheard by other depot employees. Runyon does not dispute using either of these terms.

*2 Soon after these incidents, Ruggiero and two subordinates entered Runyon's dispatch office to tell him he was being brought up on disciplinary charges. Runyon claims that he attempted to call his union for assistance, and that Ruggiero pressed down the receiver of his phone mid-dialing. That the hand-set part of the phone left Runyon's hand is undisputed, but Runyon says he dropped it in astonishment at Ruggiero's actions, whereas Ruggiero says he threw it. Whether the hand-set actually hit Ruggiero is also in dispute.

Immediately following this incident, Runyon was suspended, and Ruggiero brought disciplinary charges against him, alleging poor performance/dereliction of duty (late buses), gross insubordination (referring to Ruggiero as an "asshole" and "an idiot"), and assault (throwing the phone at Ruggiero). He contested the charges through a three step grievance process, the final phase of which was an arbitration proceeding before an independent and impartial arbitrator, George Nicolau. At the end of the process, Nicolau sustained some of the charges (poor performance for late buses), dismissed others (the assault), and ordered Runyon reinstated with back pay, except for a 24 day

suspension (he had been out of the depot for close to six months). Runyon contends that the arbitrator failed to consider seriously his claims of retaliation.

## DISCUSSION

Preliminarily, defendants argue that plaintiff has added claims in his motion in opposition to summary judgment that did not appear in his complaint. Specifically, they note that there is no reference to Runyon's advice or counsel to other dispatchers not to be pressured into writing "No Operator" on an ST-10 when the real cause was "No Bus"; instead, the only causes of action he asserted are based on the "speech" contained in the ST-10's themselves and his union association.

[1] The Federal Rules of Civil Procedure require accurate pleadings in order to give defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To that end, "at the very least, plaintiff must set forth facts that will allow each party to tailor its discover to prepare an appropriate defense." *Beckman v. United States Postal Serv.,* 79 F.Supp.2d 394, 407 (S.D.N.Y.2000). Furthermore, "[b]ecause a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Id.* (internal citations and quotation marks omitted).

With regard to plaintiff's *speech* claim, defendants indeed had no warning that he would raise the issue of his advice to other dispatchers. Accordingly, the court will not consider it in deciding the motion for summary judgment on that claim. With regard to plaintiff's *association* claim, however, the complaint refers both to plaintiff's election as shop steward as well as to his "union activity." That language appears to have put defendants on notice that he was going to raise the issue in that context, since, in deposing him regarding his union activity, they asked him about it.

I. Legal Standards

*\*3* A motion for summary judgment should only be granted when the moving party can demonstrate that there are no issues of material fact to be resolved at trial. *Hale v. Mann,* 219 F.3d 61, 66 (2d Cir.2000). In deciding such a motion, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Delaware and Hudson Railway Co. v. Connecticut Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990). A plaintiff making a First Amendment retaliation claim, however, "may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary." *Morris v. Lindau,* 196 F.3d 102, 111 (2d. Cir.1999).

II. The Protected Speech Claim

[2] In order to establish a prima facie case of First Amendment retaliation, a plaintiff must show: 1) That the speech in question is protected by the First Amendment.; 2) that he suffered adverse employment consequences; and 3) that there is a causal connection between the protected speech and the employer's decision to sanction him. *Morris,* 196 F.3d at 110. The first two prongs are questions of law, not fact, and thus are to be determined by the court. *Id.* Because the court concludes that whether a dispatcher writes "No Operator" instead of "No Bus" on an ST-10 is not constitutionally protected, there is no need to consider the second and third prongs. Plaintiff asserts that the ST-10s are public records, that the information in them is used by "special interest groups" that monitor transportation, and that they may be relevant documents in law-suits arising out of bus accidents. Mere assertion in a pleading is not enough, however, and plaintiffs do not supply any evidence that any group or party to a lawsuit (other than this one) has actually ever used the records. That they are technically public records is not enough.

In *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the

Supreme Court held that for speech to be protected, it had to be "of public concern." In order to determine whether certain speech qualifies, the court is to look at the "content, form, and context of a given statement, as revealed by the whole record." _Id._ at 147. The Second Circuit has refined the test by looking at the speaker's motivation: did his interest in speaking on the issue arise "from the speaker's status as a public citizen or from the speaker's status as a public employee"? _Blum v. Shlegel,_ 18 F.3d 1005, 1012 (2d Cir.1994). In the instant case, it is clear that Runyon's refusal to put "No Operator" instead of "No Bus" was motivated by his status as an employee, not as a public citizen. _See also_ _Cahill v. O'Donell,_ 75 F.Supp.2d 264, 273 (S.D.N.Y.1999) ("[T]hat the speech arose during the usual performance of [the employees'] duties weighs strongly against a characterization of the speech as relating to a matter of public concern").

*4 Accordingly, defendants' motion for summary judgment is GRANTED with respect to the speech claim.

III. The Association Claim

[3] In _Clue v. Johnson,_ 179 F.3d 57 (2d Cir.1999) the Second Circuit held that there "is no doubt that retaliation against public employees solely for their union activities violates the First Amendment." [FN1] Seen in the light most favorable to the plaintiff, the evidence could support a finding that Ruggiero decided to bring charges against Runyon because of his activities within the union combined with his new elevated status. Plaintiff has provided more than mere conclusory assertions or speculation in making his case. There is evidence in the record (once again, viewed through plaintiff's lenses) to support the following inferences: 1) Ruggiero was hostile to the union; 2) he was afraid of Runyon's integrity with regard to ST-10s; 3) he was concerned about his newfound influence as shop steward (particularly since he was using that influence to encourage resistance to management directives to falsify records); and, 4) he brought charges to have Runyon terminated as a result.

> FN1. The _Clue_ court declined to hold that the union activities in question need to be "of public concern" in order to find shelter under the First Amendment. _Clue,_ 179 F.3d at 60, n. 2. To the extent that the activity alleged in the instant case consists of a shop steward urging his dispatchers to resist management pressure to falsify public records, it is apparent that public concern is implicated, at the very least.

Although the evidence is largely circumstantial and is hotly disputed, a reasonable jury could conceivably find for Runyon. Accordingly, on the freedom of association claim, defendants' motion for summary judgment is DENIED.

IV. Qualified Immunity for Ruggiero

[4] A government official is not civilly liable for his actions "if the official's conduct did not violate constitutional rights that were clearly established at the pertinent time or if it was objectively reasonable for the official to believe that the conduct did not violate such rights." _Cecere v. City of New York,_ 967 F.2d 826, 829 (2d Cir.1992) Whether a particular right was "clearly established" is determined by considering whether the right was defined with "reasonable specificity," whether there was a binding decision from a federal appellate court or the Supreme Court, and whether a reasonable official would have known that his or her acts were unlawful based on preexisting law. _Jermosen v. Smith,_ 945 F.2d 547, 550 (2d Cir.1991).

The _Clue_ decision was sufficiently specific with respect to the rights of an employee to be free from retaliation for his or her union activity to give notice to Ruggiero that his acts were unconstitutional. Accordingly, he cannot claim qualified immunity. (Of course,

that he in fact took action against Runyon based on his union activity remains to be proven at trial.)

V. The Transit Authority's Liability

[5] In order to bring a section 1983 claim against a governmental entity such as the Transit Authority, a plaintiff must prove that the alleged constitutional violation resulted from either government custom or policy (*Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), or action by a representative of that entity with the authority to make final decisions. *See Clue v. Johnson,* 179 F.2d 57, 62 (2d Cir.1999) (Where "an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy"). Moreover, a "single act of a municipal officer is sufficient to establish municipal liability if that individual officer is possessed of 'final policy-making authority with respect to the area in which the action is taken." ' *Rucci v. Thoubboron,* 68 F.Supp.2d 311, 325 (S.D.N.Y.1999) (*citing McMilian v. Monroe Cty.,* 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)).

*\*5* In *Clue,* the Second Circuit declined to find the T.A. liable, since the government official in question who suspended the plaintiff checked with her superiors before doing so. *Clue,* 179 F.3d at 62. In other words, she did not have final decision-making authority with respect to the decision to suspend her employees. By contrast, by his own admission, Ruggiero was (at the time) the highest ranking representative of the T.A. at the depot where Runyon worked. Defendants contend that he could have been overruled as part of the grievance process, or by the T.A.'s Office of Labor Relations, and thus that he is not in fact the final-decision maker. This argument must fail, however, since it was his decision alone to bring the charges and suspend Runyon; Runyon was then immediately without work or income and was required to defend himself through the grievance process. Furthermore, if defendants were to prevail on this point, no employee represented under a collective bargaining agreement with an arbitration clause could assert a claim for retaliation based on union activity, since there would always be a process that could overturn the supervisor's decision.

S.D.N.Y.,2002.
Runyon v. New York City Transit Authority
2002 WL 31093609 (S.D.N.Y.), 171 L.R.R.M. (BNA) 2059, 147 Lab.Cas. P 59,647

**Motions, Pleadings and Filings (Back to top)**

- 1:99cv08670 (Docket) (Aug. 05, 1999)

END OF DOCUMENT