2000 WL 306456 (D.Conn.)
Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.
Antonio CARVALHO,
v.
INTERNATIONAL BRIDGE & IRON CO.
No. 3:99CV605 (CFD).
Feb. 25, 2000.

RULING ON DEFENDANT'S MOTION TO DISMISS

DRONEY.
Introduction
*1 The plaintiff in this action seeks damages under Conn.Gen.Stat. § 31- 290a, which prohibits employers from retaliating against employees who exercise their rights under the Connecticut Workers' Compensation Act, and common law causes of action in a complaint originally filed in the Connecticut Superior Court. The defendant removed the action, asserting that this Court has original jurisdiction over the action pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), codified at 29 U.S.C. § 185. The defendant claimed removal was proper because resolution of each of the six counts of the complaint required the interpretation of a collective bargaining agreement ("CBA").

Pending is the defendant's motion to dismiss or, alternatively, for summary judgment (doc.# # 10-1 & 10-2), in which the defendant argues, inter alia, that the Court should dismiss every count of the complaint because the state law claims are preempted by Section 301 of the LMRA or because they do not state a claim upon which relief can be granted. The plaintiff argues that the state law claims are sufficiently pled and do not require the interpretation of the CBA and, therefore, are not preempted by Section 301 of the LMRA.

Background [FN1]

> FN1. The recited background facts are taken from the complaint. In ruling on the motion to dismiss, the Court does not treat the motion as one for summary judgment. See *Krijn v. Pogue Simone Real Estate, Co.,* 896 F.2d 687, 689 (2d Cir.1990); *see also Maggette v. Dalsheim,* 709 F.2d 800, 802 (2d Cir.1983). The Court has only considered the complaint and the CBA in reaching a decision on the defendant's motion. *See Argento v. Airborne Freight Corp.,* 933 F.Sup. 373, 376 fn. 2 (S.D.N.Y.1996) (appropriate to consider the collective bargaining agreement
>
> in ruling on a Rule 12(b)(6) motion to dismiss raising issues of LMRA preemption); *see also Wilhelm v. Sunrise Northeast, Inc.,* 923 F.Sup. 330 (D.Conn.1995) (court considered collective bargaining agreement in ruling on 12(b)(6) motion in which defendant argued plaintiff's common law claims, including breach of contract and wrongful discharge, were preempted by section 301 of the LMRA).

According to the complaint, [FN2] the plaintiff, Antonio Carvalho ("Carvalho"), began working for the defendant International Bridge & Iron Co. ("International") in October

1996. Carvalho's employment with International was subject to the CBA entered into between International and Carvalho's union, the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers.

> FN2. For the purposes of deciding the motion to dismiss, the court assumes as true the allegations of the complaint. *See Finnegan v. Campeau Corp., 915 F.2d 824, 826 (2d Cir.1990).*

Between December 1996 and January 1998, Carvalho suffered three job-related injuries. As a result of these injuries, Carvalho took time off from work and received treatment and benefits under the Connecticut Workers' Compensation Act (Conn.Gen.Stat. § 31-275, *et seq.*). Upon his return to work he was reassigned to light-duty job assignments and was allowed to take paid time off from work to attend physical therapy sessions.

After returning to work following his last injury, Carvalho was assigned to cleaning restrooms and picking up litter outside International's place of business. Carvalho claims that, during this time, he was harassed, threatened, and verbally abused by two of his supervisors because of his prior workers' compensation claims.

On July 24, 1998, Carvalho was notified that his employment was terminated because he had not attended two physical therapy appointments which he had reported he attended. Carvalho was given no opportunity to explain, given his last paycheck, and ordered to leave. Carvalho denied that he missed the two appointments, provided International with explanations and asked that he be reinstated. International refused to reinstate Carvalho and this action followed.

In his complaint, Carvalho alleges that the conduct of International (and its supervisors) violated the Connecticut Workers' Compensation Act because it was taken in retaliation for his making claims under the Act (count one), constituted tortious wrongful discharge in violation of public policy (count two), breached the implied covenant of good faith and fair dealing (count three), breached the CBA (count four), constituted intentional infliction of emotional distress (count five), and constituted negligent infliction of emotional distress (count six). As mentioned above, International claims that all six counts are preempted by section 301 of the LMRA, or, alternatively, fail to state a claim upon which relief can be granted.

Discussion

A. 12(b)(6) Standard

**\*2** In deciding a motion to dismiss, a court must construe in favor of the pleader any well-pleaded allegations in the complaint. *Finnegan v. Campeau Corp., 915 F.2d 824, 826 (2d Cir.1990).* The issue on a motion to dismiss is not whether the nonmoving party will prevail, but whether he is entitled to offer evidence to support his claims. *United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D.Conn.1990)* (*citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)*). A court may dismiss the complaint only where "it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him to relief." *Yale New Haven Hosp., 727 F.Supp. at 786* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46 (1957)*). "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991).*

B. LMRA Preemption

Section 301 of the LMRA provides this Court with subject matter jurisdiction over suits concerning violations of collective bargaining agreements. *See Wilhelm v. Sunrise Northeast, Inc., 923 F.Supp. 330, 334 (D.Conn.1995)* (citing *Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988)*) (citation omitted); *see also Baldracchi v. Pratt &*

*Whitney Division, United Technologies Corp., 814 F.2d 102, 104 (2d Cir.1987); Dittman v. Gen'l Motors Corp.-Delco Chassis Div., 941 F.Supp. 284, 288 (D.Conn.1996); Anderson v. Coca Cola Bottling Co., 772 F.Supp. 77, 80 (D.Conn.1991).* Section 301 reflects the intent of Congress to create a uniform body of federal labor law to remedy such violations, rather than leaving redress to inconsistent, state-specific rules. *See Wilhelm, 923 F.Supp. at 334* (citing *Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-10 (1984)*); *see also Dittman, 941 F.Supp. at 288; Anderson, 772 F.Supp. at 80.* As a result, disputes over terms in a collective bargaining agreement and the conduct subject to the agreement must be resolved according to the LMRA. *See Wilhelm, 923 F.Supp. at 334* (citing *Lueck, 471 U.S. at 211); see also Anderson, 772 F.Supp. at 80.*

"When resolution of a state-law claim depends upon interpretation of a collective bargaining agreement, the claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law." *Wilhelm, 923 F.Supp. at 334* (citing *Allis-Chalmers, 471 U.S. at 221, and Lingle, 486 U.S. at 405-06); see also Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir.1997), Dittman, 941 F.Supp. at 288; Anderson, 772 F.Supp. at 80.* However, if a state-law claim can be resolved without interpreting a collective bargaining agreement, section 301 does not preempt the claim. *See Wilhelm, 923 F.Supp. at 334* (citing *Lingle, 486 U.S. at 405-06); see also Dittman, 941 F.Supp. at 288; Anderson, 772 F.Supp. at 80. [FN3]*

> FN3. "However, 'the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.' " *Foy, 127 F.3d at 233* (quoting *Livadas v. Bradshaw, 512 U.S. 107, 124 (1994)*).

**\*3** To determine whether Carvalho's claims are preempted by section 301, the Court must examine whether the claims are independent of any rights established by the collective bargaining agreement or whether the claims are intertwined with the terms of the collective bargaining agreement. *See Wilhelm, 923 F.Supp. at 334* (citing *Allis-Chalmers, 471 U.S. at 213).* "If resolution of the plaintiff's claim hinges on the court's interpretation of the collective bargaining agreement, the claim is preempted regardless of whether it sounds in contract or tort." *Wilhelm, 923 F.Supp. at 334* (citing *Dulay v. United Technologies Corporation, 1994 WL 362149, \*2 (D.Conn.)* (Cabranes, C.J.). However, section 301 should not be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law. *See Foy, 127 F.3d at 233* (quoting *Livadas,* 412 U.S. at 123).

With these standards in mind, the Court examines each of the plaintiff's counts to determine whether it is preempted by section 301 of the LMRA or, alternatively, subject to dismissal for failure to state a claim upon which relief can be granted.

C. The Six Counts of the Complaint

1. Violation of Conn.Gen.Stat. § 31-290a--Count 1

In the first count of his complaint, Carvalho alleges that International retaliated against him for exercising his rights under the Connecticut Workers' Compensation Act in violation of Conn.Gen.Stat. § 31-290a. [FN4] Specifically, Carvalho claims that he was subjected to various forms of harassment and ultimately fired because he had received workers' compensation benefits following each of his three job-related injuries.

> FN4. The statute is entitled "Discharge or discrimination prohibited. Right of action" and provides:

(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers'

compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. An employee who prevails in such a civil action shall be awarded reasonable attorneys fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been

eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorneys fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court.

In *Ford v. Blue Cross & Blue Shield of Connecticut, Inc.,* 578 A.2d 1054 (Conn.1990), the Connecticut Supreme Court adopted the test set forth in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973), and its progeny as the appropriate analytical framework for evaluating a claimed violation of Conn.Gen.Stat. § 31-290a, where an employer is alleged to have discriminated against an employee for seeking workers' compensation benefits. Under *Ford* the plaintiff must first show a *prima facie* case of discrimination. *See Ford,* 578 A.2d at 1060 (citing *McDonnell Douglas,* 411 U.S. at 802). To establish the *prima facie* case, the plaintiff must present evidence that supports an inference of unlawful discrimination. *See Ford,* 578 A.2d at 1060 (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981)). Once the plaintiff meets this burden, the burden shifts to the employer to rebut the inference of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. *See Ford,* 578 A.2d at 1060 (citing *McDonnell Douglas,* 411 U.S. at 82). If the employer produces such an explanation, the inference is rebutted and the plaintiff must then prove his case in one of two ways: (1) directly, by persuading the fact finder that a discriminatory reason motivated the employer or, (2) indirectly, by showing that the employer's proffered explanation is "unworthy of credence." *See Ford,*

578 A.2d at 1060 (*citing* Burdine, 450 U.S. at 256).
***4** Accordingly, in order for Carvalho to prevail on his first claim for relief he would first have to show a *prima facie* case of discrimination based upon his filing of workers' compensation claims. Then--assuming International offered a legitimate non-discriminatory reason for its actions--he would have to prove that a discriminatory reason motivated International or prove that International's proffered legitimate non-discriminatory reason for its employment action was pretextual.
International argues that under the analytical framework set forth in Ford, the Court will be required to interpret the terms of the CBA. Specifically, International argues, assuming Carvalho proves his prima facie case, its non-discriminatory reason for terminating his employment will be that it had just cause under the CBA to do so, including Carvalho's absences from the physical therapy appointments. In evaluating that reason, International maintains, the Court must look to and interpret the definition of "just cause" in the CBA.
In *Baldracchi v. Pratt & Whitney Division United Technologies Corp.,* 814 F.2d 102 (2d Cir.1987), the Second Circuit rejected the same argument which International now makes, that is, in order for the defendant to establish that it terminated the employee for a legitimate non-discriminatory reason, the court would have to interpret the "just cause" provision of the CBA. *Id.* at 105. [FN5] The Court held that the employer's liability for retaliatory discharge under section 31-290a would not be determined by reference to the CBA. *Id.* Rather, while the defendant would have to show that it had a legitimate nondiscriminatory reason for firing Baldracchi, this would not require the employer to establish that the grounds for termination amounted to "just cause" under the CBA. *Id.* This is because an employee's rights under section 31-290a are independent of the CBA. *Id.* at 107.

> FN5. Although *Baldracchi* was decided prior to *Ford,* the Second Circuit evaluated the plaintiff's section 31-290a claim and the defendant's preemption argument in light of the burden shifting principles announced in *McDonnell Douglas* and eventually adopted in *Ford.*

In *Lingle v. Norge Division of Magic Chef Inc.,* 486 U.S. 399 (1988), the U.S. Supreme Court reached the same conclusion when examining an Illinois plaintiff's common law claim of retaliatory discharge for filing a claim under that state's workers' compensation act. *Id.* at 409-10. In holding that the claim was not preempted by section 301 of the LMRA, the Court noted that "[e]ven if dispute resolution pursuant to the collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." *Id.* at 409-10.
In the instant case, the resolution of Carvalho's section 31-290a claim will not require the interpretation of the CBA. His rights under the Connecticut Workers' Compensation Act are independent of his rights under the CBA. Enforcement of those rights, through section 31-290a, does not depend upon any particular interpretation of the CBA or its application. As was the case in *Baldracchi* and *Lingle,* some of the underlying facts relating to his termination that are relevant to the resolution of his section 31-290a claim may also be relevant to resolving a dispute concerning whether he was fired for "just cause" within the meaning of the CBA. However, that does not mean that the "just cause" provision of the CBA affects the section 31-290a claim.
***5** Accordingly, the defendant's motion is denied as to count one of the complaint.
[FN6]

FN6. The Connecticut Superior Court will determine, on remand, whether the conduct complained of constitutes a violation of Conn.Gen.Stat. § 31-290a.


2. Tortious Wrongful Discharge--Count 2

In count two of his complaint, Carvalho alleges that he was wrongfully discharged in violation of public policy. The public policies he claims were violated are the protection of the rights of workers not to be retaliated against for filing workers' compensation claims and federal and state laws prohibiting discrimination against disabled persons. International argues that resolution of this claim would also require the interpretation of the CBA because as its employment termination process is set forth in a multi-step procedure contained in the CBA and, therefore, any claim that Carvalho was wrongfully terminated would have to comply with the procedure set forth in the CBA. International also argues that count two should be dismissed because Carvalho was not an "at will" employee at the time of his termination and, under Connecticut law, the tort of wrongful discharge is only available to "at will" employees. Finally, International argues that Carvalho is not entitled to bring a wrongful discharge claim in order to redress violations of the public policies he has identified because there are statutorily created causes of action available to him.

An at-will employee may bring an action for wrongful discharge when the termination of his employment contravenes public policy *and* he would otherwise be without a remedy. *See Burnham v. Karl and Gelb, P.C., 717 A.2d 811, 816 (Conn.App.1998)* (emphasis added); *Atkins v. Bridgeport Hydraulic Co., 501 A.2d 1223, 1226 (Conn.App.1985); Anderson v. Coca Cola Bottling Co., 772 F.Sup. at 82* (citing *Magnan v. Anaconda Indus., Inc., 479 A.2d 781, 785 (Conn.1984)* and *Sheets v. Teddy's Frosted Foods, Inc., 427 A.2d 385, 387 (Conn.1980); see also Thomas v. St. Francis Hospital and Medical Center, 990 F.Supp. 81, 90 (D.Conn.1998); Wilhelm v. Sunrise Northeast, Inc., 923 F.Sup. at 336.* [FN7] Under Connecticut law, this cause of action is only available to workers who could be discharged at will. *See Wilhelm, 923 F.Sup. at 336;* (citing *D'Ulisse-Cupo v. Bd. of Dir. of Notre Dame High School, 520 A.2d 217, 220 fn. 1 (Conn.1987)); see also Tomlinson v. Bd. of Ed., 629 A.2d 333, 347 fn. 18 (Conn.1993); Appleton v. Bd. of Ed. of the Town of Stonington, 730 A.2d 88, 95 (Conn.App.1999).* An individual whose employment is contractually protected by a just cause provision in a collective bargaining agreement is not an "at-will" employee and, therefore, may not bring an action for wrongful discharge. *See Wilhelm, 923 F.Sup. at 336* (citations omitted); *see also Tomlinson, 629 A.2d at 347 fn. 18* (tenured teacher whose employment contract was governed by a state statute and a collective bargaining agreement with the school was not an "at-will" employee and, therefore, could not assert a common law claim for wrongful discharge); *Appleton, 730 A.2d at 95* (in considering a potential claim for wrongful discharge by a tenured teacher subject to the protections of a collective bargaining agreement, the court relied on *Tomlinson* and reached the same conclusion). *But see Anderson, 772 F.Sup. at 83* (holding "[n]ot every claim of wrongful discharge is necessarily preempted by § 301" and suggesting an employee subject to the protections of a collective bargaining agreement could assert claim for wrongful termination).


FN7. The cause of action is intended to place public policy limitations on the traditional employment at-will doctrine in an effort to balance the competing interests of employers and employees. *Daley v. Aetna Life and Casualty Company, 734 A.2d 112, 131 (Conn.1999)* (citing *Antinerella v. Rioux, 642 A.2d 699 (Conn.1994)*).

***6** Equally fatal to Carvalho's wrongful discharge claim is the availability of statutory causes of action to vindicate the public policies he claims were violated by International when it terminated his employment. Because the Connecticut Workers' Compensation Act, the Americans with Disabilities Act, and the Connecticut Fair Employment Practices Act each provide retaliation causes of action for this situation, a common law wrongful discharge claim on the same basis is not available. A number of Connecticut decisions support this view.

In *Burnham v. Karl and Gelb, P.C.,* 717 A.2d 811, 816 (Conn.App.1998), for example, the plaintiff alleged that her employer had terminated her employment because she had reported unsafe workplace conditions to the Occupational Safety and Health Administration ("OSHA"). She brought an action against her employer alleging, *inter alia,* wrongful discharge in violation of public policy. The court in *Burnham* held that the tort of wrongful discharge was not available to the plaintiff because the Occupational Safety and Health Act ("the Act") provided a private cause of action for retaliation for reporting unsafe work conditions to OSHA. *Burnham,* 717 A.2d at 816. The *Burnham* court concluded that because the Act provided a private cause of action which enabled aggrieved employees to vindicate the important public policy of ensuring that they would not be terminated in retaliation for reporting work place safety concerns, there was no need for a separate common law tort action--such as wrongful discharge--to protect that same public policy. *Id.*

In *Atkins v. Bridgeport Hydraulic Co.,* 501 A.2d 1223, 1226 (Conn.App.1985), the plaintiff alleged that his employer had terminated him because of his race. The plaintiff asserted claims for wrongful discharge and violation of the Connecticut Fair Employment Practices Act. With respect to the common law wrongful discharge claim, the plaintiff alleged that the defendant's conduct violated Connecticut's public policy regarding employment practices. *Id.* However, the *Atkins* court affirmed the trial court decision granting summary judgment in favor of the employer and held that an employee may not bring a common law claim for wrongful discharge unless he would otherwise be without a remedy and permitting the discharge to go unredressed would leave a public policy unvindicated. *Id.*

The Connecticut Superior Court in *Cowan v. Warner-Lambert Co.,* No. CV90032564S, 1994WL645965 (Conn.Super.Ct. Nov. 4, 1994), reached the same conclusion where the plaintiff--like Mr. Carvalho here--asserted a claim for violation of Conn.Gen.Stat. § 31-290a and a common law cause of action for wrongful discharge in violation of public policy. The court concluded that because Conn.Gen.Stat. § 31-290a provided a means to vindicate the public policy of deterring employer retaliation against employees who exercise their rights under the Connecticut Workers' Compensation Act, the plaintiff was precluded from also asserting a common law claim for wrongful discharge in violation of public policy. *Id.; see also Pucci v. American Republican,* No. 118491, 1994WL235316, at *3 (Conn.Super.Ct.1994) (plaintiff asserted claims for violation of Conn.Gen.Stat. § 31-290a and wrongful discharge; court reached same conclusion as *Cowan* and dismissed wrongful discharge claim); *Flores v. Santoro,* No. CV90-0442419S, 5 CONN.L.RPTR. 361, 1991WL273309, at *1 (Conn.Super.Ct. Nov. 26, 1991) (plaintiff asserted claims for violation of Conn.Gen.Stat. § 31-290a and wrongful discharge; court reached same conclusion as in *Cowan* and *Pucci* ); *Thomas v. St. Francis Hosp. & Med. Ctr.,* 990 F.Supp. at 90 (state and federal anti-discrimination laws provided remedy for conduct complained of and, therefore, wrongful discharge claim barred); *Hancock v. The Stop & Shop Co., Inc.,* No. CR9704061S, 1998WL951019, at *2 (CFEPA provided remedy for plaintiff's discrimination claim; therefore, wrongful discharge claim was barred); *Friel v. St. Francis Hosp.,* No. CIV.3:97-803(DJS), 1997WL694729, at *2-3 (D.Conn. Oct. 31, 1997) (plaintiff brought action under Title VII, ADA, and CFEPA, as well as a common law claim for wrongful discharge based on public policy reflected in those statutes; wrongful discharge claim dismissed because the statutes provided redress for the public policy violation); *Brosler v. Food Automation Service-Techniques*

*Inc.,* No. 3:96-2345(DJS), 1997WL711438, at *3 (D.Conn. Aug. 25, 1997) (same result where plaintiff brought action under Title VII and CFEPA, as well as a common law claim for wrongful discharge based on public policy reflected in those statutes); *Dais v. Laidlaw Transit, Inc.,* No. CV950146079S, 16 CONN.L.RPTR. 392, 1996WL176370, at *2 (Conn.Super.Ct. March 29, 1996) (plaintiff brought claim for violation of Conn.Gen.Stat. § 31-51t [relating to employee drug testing] and wrongful discharge based on violation of the public policy reflected in that statute; wrongful discharge claim dismissed because the statute provided redress for the public policy violation); *Hernandez v. Standard Mattress Co.,* No. CV910397408S, 1992WL205168, at *3 (Conn.Super.Ct. Aug. 12, 1992) (plaintiff brought Title VII claim and various common law causes of action, including wrongful discharge; court dismissed wrongful discharge claim because racial discrimination complained of was redressed through suit under Title VII and CFEPA). *But see Shearn v. Airborne Freight Corp.,* No. CV930134795, 1994WL198099, at *2 (Conn.Super.Ct. May 12, 1994) (court permitted plaintiff to bring claims for violation of Conn.Gen.Stat. § 31-290a and wrongful discharge); *Spagnolo v. Macristy Industries, Inc.,* No. CV92-0451874S, 1993WL452243 (Conn.Super.Ct. Oct. 1, 1993) (same).

***7** In the instant case, Carvalho's common law claim for wrongful discharge is based upon the allegation that his employment was terminated in violation of public policy. The public policies he asserts were violated are the protection of the rights of workers not to be retaliated against for filing workers' compensation claims and federal and state laws prohibiting discrimination against disabled persons. However, violations of these public policies can be redressed through existing statutory causes of action contained in the Connecticut Workers' Compensation Act, the Americans with Disabilities Act, and the Connecticut Fair Employment Practices Act. Because Carvalho has available to him statutory causes of action to redress the alleged public policy violations, there is no need for a common law cause of action to vindicate the same public policies; therefore, his wrongful discharge claim is barred.

Accordingly, the defendant's motion is granted as to count two.

3. Breach of the Implied Covenant of Good Faith and Fair Dealing--Count 3

In count three of the complaint, Carvalho alleges that by terminating his employment, International breached the implied covenant of good faith and fair dealing because his termination was in violation of public policy. Carvalho alleges that the relevant public policies are the ones described in count two: protecting the rights of workers not to be retaliated against for filing workers' compensation claims and prohibiting discrimination against disabled persons. International makes the same arguments with respect to dismissal of this count as for count two.

Implied in every contract, including employment contracts, is a covenant of good faith and fair dealing. *See Magnan,* 479 A.2d 781, 787 (Conn. at 1984). However, "the covenant is designed to provide job security to employees who at common law could be fired at will." *Anderson v. Coca Cola Bottling Co.,* 772 F.Supp. 77, 82 (D.Conn.1991) (citing *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 999 (9th Cir.1987)); *see also Knight v. Southern New England Telephone Corp.,* No. 3:97CV1159(WWE), 1998WL696014, at *5 (D.Conn, Sept. 18, 1998). The district court in *Anderson* held that because unionized employees enjoy job security under their collective bargaining agreement, § 301 preempts a cause of action for breach of the covenant of good faith and fair dealing. *See Anderson,* 772 F.Supp. at 82 (citations omitted); *see also Knight,* 1998WL696014, at *5; *Jones v. Carolina Freight Carriers Corp.,* No. CV970570128, 1997WL808634, at *4 (Conn.Super.Ct. Dec. 24, 1997).

In *Jones v. Carolina Freight Carriers Corp., supra,* the plaintiff, who was subject to a collective bargaining agreement, alleged that his employment with the defendant had been terminated in retaliation for making claims under the Connecticut Workers' Compensation Act. He brought an action alleging, *inter alia,* breach of the implied covenant of good faith and fair dealing. [FN8] *See Jones,* 1997WL808634, at *1-2. Relying on *Anderson,* the *Jones* court held that section 301 of the LMRA preempts claims for breach of the implied covenant of good faith and fair dealing where the

plaintiff's employment is governed by a collective bargaining agreement. *See Jones,* 1997WL808634, at * 4.

> FN8. The action had originally been filed in this court. However, the District Court granted the defendant's motion for summary judgment on several counts of the complaint and remanded the remaining counts to state court. The plaintiff had voluntarily withdrawn his claim for breach of the implied covenant of good faith and fair dealing prior to that ruling and, following remand, renewed that claim.

***8*** In the instant case, Carvalho alleges in his complaint that the terms of his employment, including the procedures by which his employment could be terminated and the specified reasons warranting such termination, were governed by the CBA. As in *Anderson* and *Jones,* where the plaintiffs were subject to collective bargaining agreements and, therefore, were barred from asserting claims for breach of the implied covenant of good faith and fair dealing, so too is Mr. Carvalho here. As such, his claim for breach of the implied covenant of good faith and fair dealing is preempted by § 301. Accordingly, the defendant's motion is granted as to count three of the complaint.

4. Breach of Express Contract--Count 4

In count four of his complaint, Carvalho alleges that International breached the CBA by terminating his employment without just cause. International argues that this count of the complaint is preempted by § 301 because the contract which Carvalho alleges it breached is the CBA.

Breach of express contract claims involving employment relationships governed by the terms of a collective bargaining agreement are preempted by section 301 of the LMRA. *See Jones v. Carolina Freight Carriers Corp.,* No. CV970570128, 1997WL808634, at *3 (Conn.Super.Ct. Dec. 24, 1997). The source of such express contractual rights here is the collective bargaining agreement agreed to by International and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers. *See Wilhelm,* 923 F.Sup. at 335; *see also Jones,* 1997WL808634, at *4 (plaintiff's right to maintain place on seniority list was guaranteed by collective bargaining agreement, therefore, his breach of contract claim was preempted by section 301).

The CBA included a provision that an employee, such as Carvalho, could not be terminated without just cause and set forth a procedure for bringing grievances against the employer. *See Wilhelm,* 923 F .Sup. at 335; *see also Jones,* 1997WL808634, at *4. Resolution of the merits of Carvalho's breach of contract claim would necessarily require the Court to interpret the terms and provisions of the agreement upon which the employment relationship was founded, the CBA. *See Wilhelm,* 923 F.Sup. at 335; see also *Anderson,* 772 F.Sup. at 81; *Jones,* 1997WL808634, at *4. Carvalho's claim cannot be resolved without determining just cause under the CBA. *Anderson,* 772 F.Sup. at 81. Therefore, Carvalho's breach of contract claim is preempted by § 301. *Id.* Accordingly, the defendant's motion is granted as to count four of the complaint. [FN9]

> FN9. The CBA here contains arbitration provisions with which Carvalho was required to comply in the event that he contested the results of his grievance proceedings. It is well settled that, before bringing an action such as this one, Carvalho must exhaust these arbitration procedures and failure to do so warrants dismissal of the action. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563 (1976). *See also Dougherty v. American Telephone and Telegraph Co.,* 902 F.2d 201, 203 (2d Cir.1990).

5. Intentional Infliction of Emotional Distress--Count 5

Carvalho alleges in count five that International intentionally inflicted emotional distress on him through the alleged verbal abuse, threats, the employment actions by his supervisors, and, ultimately, his termination. International argues that the claim is preempted by section 301 of the LMRA and the alleged conduct was not extreme and outrageous.

**\*9** Whether a claim for intentional infliction of emotional distress is preempted under section 301 of the LMRA depends upon an examination of the alleged facts underlying the plaintiffs claim. *See Ellis v. Lloyd,* 838 F.Sup. 704, 708-09 (D.Conn.1993); *see also Brandmeyer v. Brescome Barton, Inc.,* No. C 980148932, 1999WL391097, at \*4 (Conn.Super.Ct. June 1, 1999). The context of the alleged conduct is critical.

If the conduct is alleged to have occurred during the course of the termination process, as part of appropriate employee discipline, or in connection with the grievance or arbitration proceedings concerning the employee, the claim is preempted because resolution of the claim would require the Court to evaluate the conduct of the employer in light of the terms of the CBA. *See Kellman v. Yale-New Haven Hospital,* 64 F.Sup.2d 35, 36-37 (D.Conn.1999) (employee's claim for intentional infliction of emotional distress based on his termination preempted); *Ellis v. Lloyd,* 838 F.Sup. at 707-08 (intentional infliction of emotional distress claim preempted when based upon employment grievances filed against the plaintiff); *Anderson v. Coca Cola Bottling Co.,* 772 F.Sup. 77, 82 (D.Conn.1991) (employee's claim for intentional infliction of emotional distress based on issuance of written warnings by his supervisor preempted); *Petrucelli v. Cytec Industries, Inc.,* Civ .No. 3:95CV1055(AHN), 1996WL684401, at \*5 (D.Conn. May 23, 1996) (employee's claim for intentional infliction of emotional distress based on circumstances surrounding his promotions, layoffs, and grievances/arbitrations preempted).

If, however, the conduct is alleged to have occurred in a setting unrelated to the termination process, as part of appropriate employee discipline, or during grievance or arbitration proceedings, the claim is not preempted by section 301 of the LMRA. *See Vorvis v. Southern New England Telephone Co.,* 821 F.Sup. 851, 853-55 (D.Conn.1993) (employee's intentional infliction of emotional distress claim not preempted where supervisor mistreated the plaintiff through verbal abuse, false statements about her job performance and unfair discipline); *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Sup. 141, 154 (D.Conn.1993) (employee's intentional infliction of emotional distress claim not preempted where supervisor and superintendent engaged in a series of demeaning and abusive practices); *Brandmeyer v. Brescome Barton, Inc.,* No. C 980148932, 1999WL391097, at \*4 (Conn.Super.Ct. June 1, 1999) (intentional infliction of emotional distress claim based upon abusive practices of supervisors and unfair discipline not preempted).

Carvalho alleges intentional infliction of emotional distress based, in part, upon harassing, threatening, and abusive conduct by his supervisors unrelated to any incident of appropriate employee discipline or the termination of his employment. Based on these allegations, resolution of his claim of intentional infliction of emotional distress may not require the interpretation of the terms of the CBA. As such, his claim for intentional infliction of emotional distress is not preempted by section 301 of the LMRA. [FN10]

> FN10. Of course, to the extent that his claim for intentional infliction of emotional distress is based upon the termination of his employment or his grievance or any incident of employee discipline, the claim is preempted.

**\*10** Accordingly, the defendant's motion is denied as to count five of the complaint. [FN11]

> FN11. The Connecticut Superior Court will determine, on remand, whether the conduct complained of rises to the level of intentional infliction of emotional distress.

6. Negligent Infliction of Emotional Distress--Count 6

In the employment context, the cause of action for negligent infliction of emotional distress only arises where the defendant engaged in unreasonable conduct *in the termination process. Parsons v. United Technologies Corp., Sikorsky Aircraft Div.,* 700 A.2d 655, 667 (Conn.1997); *see also Pavliscak,* 711 A.2d at 755; *Belanger v. Commerce Clearing House,* 25 F.Sup.2d 83, 84 (D.Conn.1998); *Cooper v. Dick's Clothing and Sporting Goods,* 25 F.Sup.2d 59, 61 (D.Conn.1998); *Cowen v. Federal Express Corp.,* 25 F.Sup.2d 33, 39 (D.Conn.1998); *Thomas v. St. Francis Hosp. & Med. Ctr.,* 990 F.Sup. at 91 (emphasis added). *Rosenberg v. Meriden Housing Authority,* No. CV950377376, 1999WL1034611, at \*9-10 (Conn.Super.Ct. Oct. 29, 1999). But *see Karanda v. Pratt & Whitney Aircraft,* No. CV-98-582025S, 24 CONN.L.RPTR. 521, 1999WL329703, at \*5 (Conn.Super.Ct. May 10, 1999), criticized by *Dorlette v. Harborside Healthcare Corp.,* No. CV990266417, 1999WL6339915, at \*3 (Conn.Super.Ct. Aug. 9, 1999). In order to properly allege negligent infliction of emotional distress, Carvalho must allege that his "actual discharge was done in an inconsiderate, humiliating or embarrassing manner." *See Belanger,* 25 F.Sup.2d at 84-85; *Cooper,* 25 F.Sup.2d at 61; see also *Huff,* 10 F.Sup.2d at 124. Thus, in the employment context, in order for a plaintiff to sufficiently allege negligent infliction of emotional distress he must allege (1) his employer engaged in unreasonable conduct, that is, conduct which is inconsiderate or intended to humiliate or embarrass the employee and, (2) that the conduct was engaged in during the course of the employment termination process. [FN12]

> FN12. Claims for negligent infliction of emotional distress have been dismissed under Fed.R.Civ.P. 12(b)(6) based upon the plaintiff's failure to plead unreasonable conduct in connection with allegedly wrongful employment termination. *See Belanger,* 25 F.Sup.2d at 84-85; *Cooper,* 25 F.Sup.2d at 61.

In *Cooper v. Dick's Clothing and Sporting Goods, supra,* for example, the plaintiff employee was trying on golf shoes when he received an emergency telephone call in which he was informed that his father was gravely ill. The plaintiff rushed out of the store and, in the process, neglected to take off the shoes. Two and a half days later, he returned with the shoes, intending to purchase them. During his shift, however, the store employees confronted the plaintiff, accused him of theft, and he was terminated. *Id.* at 60. The plaintiff asserted, *inter alia,* a claim for negligent infliction of emotional distress. Recognizing that the termination of an employee, even if unjustified, is not sufficient by itself to sustain a claim for negligent infliction of emotional distress, the Court granted the defendant's motion to dismiss the claim because the plaintiff had failed to allege sufficiently egregious conduct engaged in by the defendant's agents during the process of terminating his employment. *Id.* at 61.

Similarly, in *Thomas v. St. Francis Hosp. & Med. Ctr., supra,* the plaintiff employee

alleged that the defendant hospital discriminated against her on the basis of her race, religion, marital status, and gender. She claimed that the discrimination led to her receiving verbal and written job performance warnings, a suspension, and, eventually, termination of her employment. 990 F.Sup. at 91. She also claimed that her supervisor made two comments to her relating to her race, marital status, and gender, characterizing the plaintiff as a black, unwed mother. *Id.* at 92. The plaintiff brought suit claiming, *inter alia,* negligent infliction of emotional distress. The court dismissed the negligent infliction of emotional distress claim on the basis that the plaintiff had not alleged any unreasonable conduct in the termination process itself. *Id.*

*\*11* As in *Cooper* and *Thomas,* Carvalho has not alleged facts which demonstrate that International humiliated him or embarrassed him when it terminated his employment. Carvalho alleges that he was informed of the termination of his employment in a memorandum from International, given his last paycheck, and told to leave. The alleged conduct of International during termination is not sufficient to sustain this cause of action.

As to Carvalho's allegations that two of his supervisors subjected him to harassment, berated him, threatened him, "hiss[ed]" at him, made gestures towards him, assigned him to work details which violated the physical restrictions placed on him by his doctor, and, on one occasion, ordered him to pick up papers from a deep puddle without foot coverings, these are not alleged to have occurred in the termination process and fail on that basis. *See Parsons,* 700 A.2d at 667; *see also* Pavliscak, 711 A.2d at 755; *Belanger,* 25 F.Sup.2d at 84; *Cooper,* 25 F.Sup.2d at 61; *Cowen,* 25 F.Sup.2d at 39; *Thomas,* 990 F.Sup. at 91. *But see Karanda v. Pratt & Whitney Aircraft,* No. CV-98-582025S, 24 CONN.L.RPTR. 521, 1999WL329703, at * 5 (Conn.Super.Ct. May 10, 1999) (concluding that Parsons did not foreclose an action against an employer for negligent infliction of emotional distress outside of the termination process), criticized by *Dorlette v. Harborside Healthcare Corp.,* No. CV 990266417, 1999WL639915, at *3 (Conn.Super.Ct. Aug. 9, 1999).

Therefore, for these reasons, the defendant's motion is granted as to count six of the complaint. Because this count is dismissed on the basis that it does not state a claim upon which relief can be granted, the Court does not address the separate basis for dismissal: LMRA section 301 preemption.

Conclusion

Based on the foregoing, the defendant's motion to dismiss or, alternatively, for summary judgment (doc. # # 10-1 & 10-2) is *GRANTED IN PART AND DENIED IN PART.* Counts two, three, four, and six are dismissed.

28 U.S.C. § 1447(c) provides in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The remaining counts of the complaint allege a violation of Conn.Gen.Stat. § 31-290a (count one) and a common law cause of action for intentional infliction of emotional distress (count five). The Court has ruled that these claims are not preempted by § 301 of the LMRA. There is no apparent federal question jurisdiction as to those counts. The complaint also alleges that both of the parties are citizens of Connecticut. Therefore, there is no apparent diversity jurisdiction. Accordingly, the Court lacks subject matter jurisdiction over the remainder of this action and it is hereby ordered that this case be remanded to the Connecticut Superior Court for the Judicial District of Hartford/New Britain at New Britain. The Clerk is ordered to close this case.

*\*12* SO ORDERED this 25th day of February, 2000, at Hartford, Connecticut.

D.Conn.,2000.

Carvalho v. International Bridge & Iron Co.

2000 WL 306456 (D.Conn.)

END OF DOCUMENT