# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN BURNS | : | CIVIL ACTION NO: 3:01CV01442(AVC) |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| TOWN OF SOUTHBURY AND IN | : | |
| THEIR INDIVIDUAL AND OFFICIAL | : | |
| CAPACITIES ALFIO A. CANDIDO, JR, | : | |
| FIRST SELECTMAN; JOSEPH | : | |
| FROEHLICH, CONNECTICUT STATE | : | |
| TROOPER | : | |
| Defendants | : | JULY 28, 2005 |
| | : | |

## <u>PLAINTIFF'S LOCAL RULE 56(A)2 STATEMENT</u>

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  Admitted.

6.  Admitted.

1

7.   Admitted only to the extent that Plaintiff began working for the Southbury Police Department in 1989.  Affidavit of Plaintiff dated July 27, 2005, paragraph 3, attached hereto as Exhibit 1, hereinafter referred to as "Exhibit 1, Pl. Aff., para.        ".

8.   Admitted.

9.   As to the first sentence, admitted.  As to the second sentence, denied as phrased.  Troopers report to the First Selectman for the purpose of reviewing decisions made in the operation of the Southbury Police Department, including investigations, discipline, and grievances.  Deposition of Joseph Froehlich dated April 12, 2005, pages 11, 15,16, attached hereto as Exhibit 2, hereinafter referred to as "Exhibit 2, Depo., Froehlich, pp.      ".

10.   Admitted.

11.   Admitted.

12.   Admitted.

13.   Admitted.

14.   Admitted.

15.   Admitted.

16.   Admitted.

17.   Admitted.

2

18.  Admitted only to the extent that the two Performance Observations Reports, and not Performance Evaluation Reports, reflect such statements.  Defendants' Exhibit G and J.  Denied that such documents can properly be relied upon in evaluating the Plaintiff's performance or eligibility for promotion.  Defendants' Exhibit F, Article 17, pp. 18-9; Exhibit 1, Pl. Aff., paras. 8-10.

19.  Admitted that Southbury has, at all times relevant to this case 17 officers.  Exhibit 1, Pl. Aff., para. 6.  Admitted as to the rest of the sentence.

20.  Admitted.

21.  Admitted only to the extent that the document reflects such a statement.  Denied to the extent that Defendants claim that Plaintiff was insubordinate. Exhibit 1, Pl. Aff., para. 16.

22.  As to the first sentence, admitted.  As to the second sentence, admitted only that Plaintiff worked overtime.  Denied to the extent that Defendants claim Plaintiff was insubordinate.  Exhibit 1, Pl. Aff., paras. 17-19.  As to the third sentence, admitted only to the extent that the Performance Observation Report contains such a statement.  Denied that such documents can properly be relied upon in evaluating the Plaintiff's performance or eligibility for promotion.  Defendants' Exhibit F, Article 17, pp. 18-9; Exhibit 1, Pl. Aff., paras. 8-10.

3

23.  Admitted only to the extent that such counseling took place.  Exhibit 1, Pl. Aff., para. 21.  Denied that such counseling can properly be relied upon in evaluating the Plaintiff's performance or eligibility for promotion or that Defendant Candido was even ware of such an incident.  Defendants' Exhibit F, Article 17, pp. 18-9; Exhibit 1, Pl. Affl., para. 21; Exhibit 2, Depo., Froehlich, p. 63.

24. Denied that such an event took place or that Defendant Candido was even aware of such an incident. Exhibit 1, Pl. Aff., paras.  20-21; Exhibit 2, Depo., Froehlich, p. 57.

25.  Denied.  Exhibit 1, Pl. Aff., paras. 22-23.

26.  Admitted only that such complaints were received.  Denied that such complaints can properly be relied upon in evaluating the Plaintiff=s performance or eligibility for promotion. Defendants' Exhibit F, Article 17, pp. 18-9; Exhibit 1, Pl. Aff., para 6-10.

27.  Admitted.

28. Admitted only to the extent that the Department received such complaints. Denied to the extent that Defendants claim Defendant Candido was informed of or received such a complaint.  Defendants' Exhibit F, Article 17, pp. 18-9; Exhibit 1, Pl. Aff., paras. 8-10; Exhibit 2, Depo., Froehlich, p. 49.

29. Admitted.

30. Admitted.

4

31. Admitted.

32. Admtted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

43. Admitted.

44. Admitted.

45. Admitted only that Plaintiff had served for approximately 18 months more than the other candidates whose service time was nearly a decade. Exhibit 1, Pl. Aff., para. 4.

46. As to the first sentence, denied as to the characterization of "scored well." Plaintiff was the highest scoring.  Defendants'Exhibit N.  As to the second sentence, admitted.

47. Admitted.

48. Admitted only to the extent that Mr. Candido conducted the third part of the evaluation. Denied that Defendant Candido' criteria were to select the "best leader in the Corporal position." Exhibit 1, Pl. Aff., paras. 12-14, 26; Testimony of Alfio Candido before Labor Board dated January 21, 2005, page 63 attached hereto as Exhibit 3, hereinafter "Exhibit 3, Candido Test., p.     "; Testimony of Carl Rosa before Labor Board dated September 23, 2004, page 118, attached hereto as Exhibit 4, hereinafter "Exhibit 4, Rosa Test., p.    . "

49. Denied.  Deposition of Alfio Candido dated October 26, 2004, pages 42-43, 46, 59-60, attached hereto as Exhibit 5, hereinafter "Exhibit 5, Depo., Candido, p.     ".

50. Admitted only to the extent that that is what Defendant Candido claims.

51. Admitted only to the extent that that is what Defendant Candido claims.

52. Admitted only to the extent that that is what Defendant Candido claims.

53. Admitted.

54. Admitted.

55. Admitted only to the extent that that is what Defendant Candido claims.  Denied to the extent that Plaintiff's experience as an officer was objectively superior.  Exhibit 1, Pl. Aff., paras. 12-14, 24-26; Exhibit 2, Depo., Froehlich, pp. 85, 97; Monthly Activity and Duty

6

Report Form 1999-2000 attached hereto as Exhibit 6 and authenticated as part of Plaintiff's Affidavit.

56. Admitted only to the extent that that is what Defendant Candido claims. Denied that Officer Manville's performance was superior to Plaintiff. Exhibit 1, Pl. Aff., paras. 12-14, 24-26; Testimony of Patrick Kenney before Labor Board dated September 23, 2004 attached hereto as Exhibit 7, page 103, hereinafter "Exhibit 7, Kenney Test., p.    . "

57. Admitted only as to that part of the sentence which states "the Plaintiff maintained a good record for DWI arrests." Denied as to that part of the sentence which states the Plaintiff "received credit for his accomplishments in that area." Exhibit 1, Pl. Aff., paras. 12-14, 24-26; Exhibit 3, Candido Test., p. 63; Exhibit 4, Rosa Test., p. 118; Exhibit 6.

58. Denied. Exhibit 1, Pl. Aff., paras. 12-14, 24-26; Exhibit 2, Depo., Froehlich, p. 85, 97; Exhibit 6.

59. Denied. Exhibit 3, Candido Test., p. 63; Exhibit 4, Rosa Test., p. 118.

60. Denied. Exhibit 5, Depo. Candido, pp. 42-43, 46, 59-60.

61. Admitted.

62. Admitted.

63. Admitted.

64. Admitted.

65. Admitted.

66. Admitted.

67. Admitted.

68. Admitted only to the extent that the statement of Sergeant Colangelo contains such statements.

69. Admitted.

70. All of the paragraph through the phrase "Trooper Brown handcuffed Jane Doe" is admitted only to the extent that the statement of Trooper Clayton Brown contains such statements.  As to rest and remainder of the paragraph, admitted only to the extent that approximately 15 minutes after Jane Doe's arrest, Plaintiff was instructed to arrest and take over the investigation. Exhibit 1, Pl. Aff., paras. 28-34.

71. Admitted only to the extent that Plaintiff initially refused the order on the grounds that Sergeant Colangelo informed Plaintiff that he did not want Jane Doe arrested. Admitted only that after Sergeant Colangelo changed his mind 15 minutes later, Plaintiff took over the arrest and investigation of Jane Doe.  Exhibit 1, Pl. Aff., paras. 28-34.

72. This paragraph cannot be admitted or denied as it refers to the "Complainant", a person not identified in the Defendants' Local Rule 56(a)1 Statement.

73. Denied. Exhibit 1, Pl. Aff., paras. 28-34.

74. Denied. Exhibit 1, Pl. Aff., paras. 28-34.

75. Admitted.

76. Admitted only to the extent that Plaintiff apologized for a misunderstanding. Exhibit 1, Pl. Aff., para. 35.

77. Admitted.

78. Admitted.

79. Admitted.

80. Admitted.

81. Admitted only to the extent that the statement of Sergeant Mark Colangelo contains such statements.  Denied that such incidents happened.  Exhibit 1, Pl. Aff., paras. 28-34.

82. Admitted only to the extent that the statement of Trooper Clayton Brown contains such statements.  Denied that such incidents happened. Exhibit 1, Pl. Aff., paras. 28-34.

83. Admitted only to the extent that the statement of Department Chaplain Father Frederick Curtis contains such a statement.

84. Admitted only to the extent that the report from Joseph Froehlich contains such a statement.  Denied that Plaintiff intentionally disobeyed an order.  Exhibit 1, Pl. Aff., paras. 28-34.

85. Admitted only to the extent that that as Chief of Police, Defendant Candido has the authority to recommend discipline.

86. Admitted only to the extent that the Town of Southbury Board of Selectman are the final decision makers for the purpose of imposing discipline upon Town police officers.

87. Admitted only to the extent that an Officer Tierney was suspended for 10 days for being insubordinate in refusing a direct order to remove such a pin from his helmet that included the statement "born to kill."  Exhibit 1, Pl. Aff., para. 42; Exhibit 5, Depo. Candido, p. 124; Testimony of Alfio Candido before Labor Board dated April 17, 2004, page 191 attached hereto as Exhibit 8.

88. Admitted only to the extent that the Town of Southbury Board of Selectman held a meeting at which they heard evidence regarding and imposed discipline upon Plaintiff. Denied to the extent that Plaintiff was not provided an opportunity to respond or explain his actions at that meeting or ever to the Board of Selectman. Exhibit 1, Pl. Aff., paras. 37-39.

89. Admitted only to the extent that Plaintiff was suspended by the Town of Southbury Board of Selectman for 60 days.  Denied to the extent that Plaintiff was not provided an opportunity to respond or explain his actions at that meeting of ever to the Board of Selectman. Exhibit 1, Pl. Aff., paras. 37-39.

90. Admitted.

91. Admitted only to the extent that the grievance states, in part, that Plaintiff was wrongfully denied overtime wages.  Denied to the extent that that was the sole motivation or topic of said grievance.  Exhibit 1, Pl. Aff., paras. 17-18.

92. Admitted.

93. Admitted.

94. Admitted.

95. Admitted only to the extent that the grievance challenges, in part, the Department's order that computers be used to draft reports, rather than allowing reports to be done by hand in the field. Denied to the extent that that was the sole motivation or topic of said grievance. Exhibit 1, Pl. Aff., para. 49.

96. Admitted only to the extent that the grievance challenged, in part, the rate of pay received by officers for private duty jobs. Denied to the extent that that was the sole motivation or topic of said grievance. Exhibit 1, Pl. Aff., para. 50.

97. Admitted only to the extent that the grievance challenges, in part, the use of pagers within the Department. Denied to the extent that that was the sole motivation or topic of said grievance. Exhibit 1, Pl. Aff., para. 51.

98. Admitted.

99. Admitted.

100. Admitted only to the extent that the grievance challenged, in part, schedule changes for Department officers. Denied to the extent that that was the sole motivation or topic of said grievance. Exhibit 1, Pl. Aff., para. 52.

101. Admitted.

102. Admitted only to the extent that, at some unidentified time in the past, Defendant Candido was a member of a union and ran for a local office in the union. Denied that Defendant Candido therefore had no anti-union animus or retaliatory motive with respect to Plaintiff's union activities.  Exhibit 3, Candido Test., p. 63; Exhibit 4, Rosa Test., p. 118.

103. Admitted.

104. Admitted.

105. Admitted.

106. Admitted that such correspondence was sent.  Denied that such correspondence satisfies the constitutional requirements of procedural due process. Exhibit 1, Pl. Aff., paras. 37-39.

## PLAINTIFF'S LIST OF DISPUTED ISSUES OF MATERIAL FACTS

1. Plaintiff Kevin Burns commenced employment with the Town of Southbury Police Department ("Department") on or about 1989.  Exhibit 1, Pl. Aff., para. 3.

2. Plaintiff's colleagues, Officers Duane Manville and Brian Hughes, began service with the Department approximately 18 months after Plaintiff began.  Exhibit 1, Pl. Aff., para.

3. At all times relevant to this case, Defendant Southbury employed Patrick Kenney as a corporal.  Corporal Kenney served as a supervisor to both Plaintiff and Officer Manville. Exhibit 1, Pl. Aff., para. 5.

4. At all times relevant to this case, the Department employed approximately 17 officers. Exhibit 1, Pl. Aff., para. 6.

5   Although the Department is supervised on a day-to-day basis by Connecticut State Police, the Town of Southbury's First Selectman retains authority over and review of investigations, discipline and grievances relating employment.  Exhibit 1, Pl. Aff., para. 7; Exhibit 2, Depo., Froehlich, pp. 11, 15, 16.

6. The Collective Bargaining Agreement, Article 17, Reprimand Removal, permits only the retention of official reprimands, requires their removal upon request of the employee, and prohibits the use of Performance Observation Reports unless incorporated into an annual Performance Evaluation Report.  Defendants' Exhibit F, pp. 18-19; Exhibit 1, Pl. Aff., paras. 8-10.

13

7. To the extent that they are incorporated into the annual Performance Evaluation Report, Performance Observation Reports are maintained in the personnel file.  Exhibit 5, Depo. Candido, p. 41.

8. The only documents used by the Department to evaluate an employee's performance are the Performance Observation Reports and Performance Evaluation Reports.  Exhibit 1, Pl. Aff., paras. 8-10; Exhibit 2, Depo., Froehlich, p. 32.

9. Throughout his tenure, Plaintiff was not formally investigated or disciplined in connection with any citizen complaints.  Exhibit 1, Pl. Aff., paras. 10-11.

10. Citizen complaints never became part of any Performance Observation Report and were not incorporated into Plaintiff's Performance Evaluation Reports. Exhibit 1, Pl. Aff., paras. 10-11.

11. Sergeant Froehlich never discussed with Defendant Candido the alleged complaint from James Diamond, Esq.  Exhibit 2, Depo., Froehlich, p. 49.

12. Prior to August 29, 2000, Plaintiff had never received any official reprimands, including for insubordination.  Exhibit 1, Pl. Aff., paras. 39-40.

13. In 1997 and 1998, Plaintiff received "very good" on his annual Performance Evaluation Report and in 1999 received a "superior" rating.  Exhibit 1, Pl. Aff., para. 12.

14. In 1998 and 1999 respectively, Officer Manville received "very good" ratings. Exhibit 1, Pl. Aff., para. 13.

14

15. In 1998 and 1999 respectively, Officer Hughes received "satisfactory" and "very good" ratings.  Exhibit 1, Pl. Aff., para. 14.

16. On or about February 15, 1996, Plaintiff requested a clarification of the chain of command within the Department for traffic authority functions and was informed by Defendant Candido that the Connecticut State Police supervised all functions within the Department.  Plaintiff was not, however, insubordinate and was not disciplined or reprimanded in any way for insubordination in connection with his request for a clarification of the chain of command.  Defendants' Exhibit H; Defendants' Exhibit I; Exhibit 1, Pl. Aff., para. 16.

17. On or about December 11, 1999, Plaintiff was involved in arresting two DUI suspects. Defendants' Department had at that time a rule requiring the completion of reports by the end of an employee's shift.  Further, state law requires that reports of DUI arrests be completed within 72 hours.  Pursuant to those requirements, Plaintiff completed his reports before he went home after informing Trooper Clayton Brown that he would require time beyond his regular shift to do so.  Trooper Brown did not order Plaintiff to cease work on the reports but merely stated that he would not pay overtime for such activities.  Exhibit 1, Pl. Aff., paras. 17-19.

18. Plaintiff was not insubordinate and was not formally counseled in connection with his conduct on December 11, 1999. Exhibit 1, Pl. Aff., paras. 17-19.

15

19. Plaintiff subsequently requested payment for overtime from Trooper Brown, indicating that the policy of not paying overtime for the completion of reports was threatening DUI arrests and was contrary to the Department's requirements that employees complete reports before they ended their shift.  Trooper Brown persisted in denying compensation. Exhibit 1, Pl. Aff., paras. 17-19.

20. Plaintiff filed a grievance on or about December 19, 1999, alleging a failure to pay overtime compensation and challenging the Department's policies on the grounds that they threatened DUI arrests and were required compliance, without compensation, with the Department's requirements of report completion.  Exhibit 1, Pl. Aff., paras. 17-19.

21. Only after that grievance was filed, did Trooper Brown prepare the Performance Observation Report dated January 1, 2000 referred to as Defendants' Exhibit J.  Exhibit 1, Pl. Aff., paras. 17-19.

22. The Performance Observation Report dated January 1, 2000 was not incorporated into Plaintiff's performance evaluation for 1999 or 2000.  Exhibit 1, Pl. Aff., paras. 17-19.

23. Throughout his tenure, Plaintiff was not required to salute non-supervisory members of the Connecticut State Police until directed by Sergeant Froehlich to do so in approximately 1998.  Plaintiff was not disciplined or even accused of insubordination in connection with that incident.  Exhibit 1, Pl. Aff., paras. 21.

24. Sergeant Froehlich never informed Defendant Candido about the alleged incident involving saluting.  Exhibit 2, Depo., Froehlich, p. 63.

25. None of the incidents in which Sergeant Froehlich counseled Plaintiff in any way were incorporated into Plaintiff's annual Performance Observation Reports.  Exhibit 2, Depo., Froehlich, p.73.

26. Throughout his tenure, Plaintiff was not required to and was not informed by Sergeant Froehlich of any requirement that he obtain the approval of Sergeant Froehlich or another supervisor before applying for a warrant.  On or about 1997, when Plaintiff continued the Department's established practice of executing his own arrest warrant affidavits, Plaintiff received a memorandum informing him for the first time that he needed to obtain supervisory approval.  Exhibit 1, Pl. Aff., para. 20.

27.  Plaintiff was not disciplined or even accused of insubordination in connection with that incident.  Exhibit 1, Pl. Aff., paras. 20.

28.  Sergeant Froehlich never informed Defendant Candido about the alleged incident involving the submission of warrants.  Exhibit 2, Depo., Froehlich, p. 57.

29. In 1998, Plaintiff was involved in a chase of a DUI suspect.  When the suspect aimed his vehicle at Plaintiff's cruiser, Plaintiff terminated his pursuit under orders from his supervisor.  Plaintiff thereafter located the suspect and arrested him.  At that time, Sergeant Froehlich praised Plaintiff's work.  Exhibit 1, Pl. Aff., paras. 22-23.

30. Approximately one year later, without warning, Sergeant Froehlich accused Plaintiff of not terminating the pursuit.  Exhibit 1, Pl. Aff., paras. 22-23.

31.  Plaintiff was not disciplined or even accused of insubordination in connection with that incident.  Exhibit 1, Pl. Aff., paras. 22-23.

32. Throughout his tenure, Plaintiff has not limited his activities to DUI enforcement only.  Exhibit 1, Pl. Aff., para. 25; Exhibit 6.

33.  Throughout his tenure, Plaintiff was the most active officer in terms of overall arrests, and exceeded the activity of both Officers Hughes and Manville in all categories of crime. Exhibit 1, Pl. Aff., paras. 12-14, 24-26; Exhibit 2, Depo., Froehlich, p. 85, 97; Exhibit 6.

34. Prior to the scoring of the third part of the promotional test, Sergeant Froehlich provided to Defendant Candido a spreadsheet which showed the arrest and investigative activities of the three candidates over the preceding 4 years and which included even more detail than that of Plaintiff's spreadsheet. Exhibit 2, Depo., Froehlich, p. 85, 97; Exhibit 6.

35. Corporal Kenney testified that Plaintiff's performance was superior to that of Officer Manville.  Exhibit 7, Kenney Test., p. 103.

36. In scoring the third component of the promotional test, Defendant Candido did not review any personnel files.  Exhibit 5, Depo., Candido, p. 45.

37. Upon completion of the scoring of the first two parts of the promotional test, Sergeant Froehlich regularly met with and was involved by Defendant Candido in the scoring of the third component of the test . Exhibit 5, Depo., Candido, pp.  42-43, 46, 59-60.

38. Defendant Candido expressly took into account Plaintiff's past history of filing grievances when considering the score to give him in the third component of the test. Exhibit 3, Candido Test., p. 63.

39. Defendant Candido testified that in evaluating Plaintiff for his promotion, Plaintiff "kept coming up on the negative side" and then Plaintiff "grieved" it and that Plaintiff "would say no first and then eventually would do it" and that Plaintiff "would always file a grievance."  Exhibit 3, Candido Test., p. 63.

40. On or about June 23, 2000, Plaintiff was informed in writing of the results of the promotional test.  Letter from Sergeant Froehlich to Plaintiff dated June 23, 2000 attached hereto as Exhibit 9.

41. The day after he grieved the outcome of the promotional test, and on or about July 20, 2000, Plaintiff was dispatched to a call involving a suicidal individual located on a steel bridge between Southbury and Newtown.  Exhibit 1, Pl. Aff., paras. 28-36.

42. After his arrival at the scene and without his involvement, the suicidal individual's sister was placed under arrest and maintained in custody by Trooper Clayton Brown. Exhibit 1, Pl. Aff., paras. 28-36.

43. During the incident, Plaintiff was informed by Sergeant Mark Colangelo that he did not want the sister arrested.  Exhibit 1, Pl. Aff., paras. 28-36.

44. When ordered by Trooper Clayton Brown to take over the arrest and investigation of the sister, Plaintiff refused on the grounds that Sergeant Mark Calangelo had issued a contradictory order.  Exhibit 1, Pl. Aff., paras. 28-36.

45. Plaintiff's initial refusal did not contribute to any operational problems with the incident and did not increase the risk to anyone.  Exhibit 1, Pl. Aff., paras. 28-36.

46. Approximately 15 minutes after the sister was initially arrested and taken into custody by Trooper Clayton Brown, Sergeant Mark Colangelo changed his mind and directed Plaintiff to take over the arrest and investigation of the sister. Exhibit 1, Pl. Aff., paras. 28-36.

47. Plaintiff thereafter immediately complied and arrested the sister and took over the arrest and investigation of the sister. Exhibit 1, Pl. Aff., paras. 28-36.

48. Plaintiff apologized to Sergeant Colangelo and to Trooper Brown for any misunderstanding but did not admit to any insubordination.  Exhibit 1, Pl. Aff., paras. 28-36.

49. At no time was Plaintiff insubordinate or otherwise inappropriate, defiant, or engaged in the use of profanity.  Exhibit 1, Pl. Aff., paras. 28-36.

50. On or about August, 2000, Plaintiff was informed in writing by Defendant Candido of the charges against him.  Exhibit 1, Pl. Aff., para. 37.

51. On or about August, 2000, the Town of Southbury Board of Selectman held a hearing at which Defendant Candido acted on behalf of management and recommended discipline of 60 working days suspension for Plaintiff in connection with the incident of July 20, 2000. Exhibit 1, Pl. Aff., paras. 37-38.

52. Plaintiff was given no opportunity to respond to or provide any information to rebut the presentation of Defendant Candido and was not allowed to make any presentation to the Town of Southbury Board of Selectman. Exhibit 1, Pl. Aff., paras. 37-38.


53. On or about August 29, 2000, Plaintiff was informed of the decision of the Town of Southbury Board of Selectman suspending him for 60 working days in connection with the incident of July 20, 2000. Exhibit 1, Pl. Aff., paras. 39.

54. Plaintiff's penalty far exceeded that given to any other officer for any similar accusation of insubordination or for any other offense.  Exhibit 1, Pl. Aff., paras. 41-43; pp. Exhibit 5, Depo., Candido, pp. 122-24.

55. On or about 1997, Defendants suspended Officer Frank Tierney for 5 days for insubordination and 5 days for defacing Town property for refusing a direct order to remove

painting from his helmet that included a shamrock and the statement "born to kill."  Exhibit 1, Pl. Aff., paras. 42; Exhibit 5, Depo., Candido, p. 124.

56. On or about September 7, 2000, Defendants suspended Officer George Slaiby for 4 days for investigating a case in which a relative was the suspect and in which he had a personal conflict of interest.  Exhibit 1, Pl. Aff., para. 43; Exhibit 5, Depo., Candido, p. 122-23.

57. On or about September 7, 2000, Defendants demoted Officer George Slaiby for a second disciplinary incident for failing to properly respond to a 911 hang-up call and which resulted in the death of the caller.  Exhibit 1, Pl. Aff., para. 43.

58.  Throughout his tenure as Union Vice President, Plaintiff filed more than 6 allegations of violations of Connecticut Labor law. Exhibit 1, Pl. Aff., para. 44.

59. On or about September 3, 1999, Plaintiff caused to be filed a complaint with the Connecticut Labor Board which alleged that the Defendant Town had engaged in "bad faith bargaining by not responding to grievances submitted by the union."  Exhibit 1, Pl. Aff., para. 45; Complaint to Labor Board dated September 3, 1999 attached hereto as Exhibit 10.

60. In late 1999 or early 2000, Plaintiff filed two other complaints asserting that the Town had violated labor law by failing to comply with a grievance settlement and unilaterally ceasing a past practice.  Exhibit 1, Pl. Aff., para. 46; Complaint to Labor Board

Case Number 22,750 attached hereto as Exhibit 11; Complaint to Labor Board Case

Number 22,455 attached hereto as Exhibit 12.

61. In March, 2000, Plaintiff filed a complaint alleging that the Town's subcontracting

of bargaining unit work was "hindering its employees from continuing to bargain collectively"

and was an attempt to "disband and eliminate the union." Exhibit 1, Pl. Aff., para. 47;

Complaint to Labor Board Case Number 22,751 attached hereto as Exhibit 13.

62. In addition, Plaintiff filed at least 12 grievances in his individual or representative

capacity. Exhibit 1, Pl. Aff., para. 48.

63. On or about March 9, 1998, Plaintiff filed a grievance regarding the Department's

policy requring officers to complete reports on computers located in the station rather than

permitting them to complete them by hand in the field, in part, because such a practice

impacted public safety by reducing patrolling officers. Exhibit 1, Pl. Aff., para. 49.

64. On or about June 25, 1999, Plaintiff a grievance regarding the Department's

payment policies for private duty jobs, in part, because the Department's pay policies would

deter officers from taking such work and would impact public safety by leaving construction

or road sites unattended. Exhibit 1, Pl. Aff., para. 50.

65. On or about Decemer 16, 1999, Plaintiff filed a grievance regarding the

Department's practice of using emergency pagers for routine communication, in part,

because such a practice impacted public safety by preventing the proper use of such

23

pagers for real emergencies and prompting officers to ignore pager calls.  Exhibit 1, Pl. Aff., para.51.

66. On or about December 19,1999, Plaintiff filed a grievance regarding the Department's directive that he leave work without completing a DUI report and for failing to compensate him for overtime, in part, because such a practice threatened to impact arrests which required the timely preparation of reports.  Exhibit 1, Pl. Aff., para. 18.

67. On or about January 4, 2000, Plaintiff filed a grievance regarding the Department's failure to properly notify officers of schedule changes, in part, because the practice resulted in the waste of taxpayer money by requiring overtime compensation to cover shift changes. Exhibit 1, Pl. Aff., para. 52.

68. Following Plaintiff's suspension, the Union President, Carl Rosa, concluded that Defendant Candido was biased against Plaintiff because Defendant Candido had justified the punishment and suspension of Plaintiff by reference to Plaintiff's several grievances. Exhibit 4, Rosa Test., p. 118.

PLAINTIFF

By:
    Marc P. Mercier
    Beck & Eldergill, P.C.
    447 Center Street
    Manchester, CT 06040
    (860) 646-5606

Fed Bar No: ct10886
Email: mmercier@beckeldergill.com

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed this 28th day of July, 2005, to the following parties:

James M. Sconzo
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT   06103

_____
Marc P. Mercier              Burns\Pleadings\Rule56(a)207-05.pld

25