## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
KEVIN BURNS                    :
Plaintiff,                     :
                               :
v.                             :    Civil No. 3:01CV1442(AVC)
                               :
TOWN OF SOUTHBURY, ET AL.,     :
Defendants.                    :
```

### RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action for damages alleging violations of the First and Fourteenth Amendments to the United States Constitution. The action stems from alleged employment discrimination. The complaint is brought pursuant to 42 U.S.C. § 1983[1] and also alleges violations of common law tenets concerning intentional infliction of emotional distress.

The defendants, the Town of Southbury and Alfred A. Candido, Jr., now move for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

The issues presented are: 1) whether Candido retaliated against the plaintiff for engaging in protected activity; 2) whether the defendants violated the plaintiff's procedural due

---

[1] 42 U.S.C. § 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

process rights; 3) whether Candido violated the plaintiff's equal protection rights; 4) whether the Town of Southbury violated the plaintiff's First and Fourteenth amendment rights; and 5) whether Candido, in his individual capacity, intentionally inflicted emotional distress upon the plaintiff.

For the reasons set forth below, the motion for summary judgment is granted.

### FACTS

Examination of the complaint, pleadings, Local Rule 56(a) statements, and exhibits accompanying the motion for summary judgment, and the responses thereto, reveals the following undisputed, material facts.

On November 1, 1990, the Town of Southbury ("Southbury") hired the plaintiff, Kevin Burns, as a police officer. At all times relevant herein, Burns was a member in good standing of the American Federal of State, County, and Municipal employees Local 15 ("the Union"). Since 1999, Burns has served as vice president of the Union. The vice president's duties include assisting Union members with grievances.

The defendant, Alfred Candido, served as the first selectman for Southbury from December 1995 until December 2001. In essence, the first selectman is the chief executive officer of Southbury.

The Southbury Police Department ("the Department") operates

in conjunction with the Connecticut state police. While the first selectman serves as the chief of police, the day-to-day operations of the Department are managed by state troopers assigned to Troop A. The troopers do not report to the first selectman. Still, the first selectman retains some authority to review investigations, disciplinary actions, and grievances relating to Southbury police officers.

From April 1997 to August 2001 state police sergeant Joseph Froehlich managed the Department. Two additional troopers comprised the next level of command below Froehlich, and three town officers with the rank of corporal comprised the next level of command below the troopers. Froehlich was originally named in this action as a defendant, but was dismissed in an earlier ruling.

I.   The Union Grievances

Burns' complaint alleges that he filed twelve Union grievances, but he only discusses eleven in his response to interrogatories and in his memorandum in opposition to defendant's motion for summary judgment.[2] Furthermore, only ten are relevant to this case because one was filed before Candido assumed office as first selectman.

---

[2] Burns also alleges in his memorandum in opposition to defendant's motion for summary judgment that he was retaliated against because of his "filing of unfair labor practice charges." However, he does not make this allegation in the complaint.

Burns filed the following grievances:

1. <u>Grievance One</u>: a 3-9-98 grievance claiming that a new procedure implemented by the Department requiring officers to write reports on a computer in the office, instead of by hand in the field, violated the collective bargaining agreement between Southbury and the Union;

2. <u>Grievance Two</u>: a grievance filed on either 6-25-99 or 7-8-99 relating to the rate of pay received by officers for private duty jobs;

3. <u>Grievance Three</u>: a 12-13-99 grievance filed solely on behalf of a corporal because he was ordered to come to work on a day that had been approved as his personal vacation time;

4. <u>Grievance Four</u>: a 12-16-99 grievance protesting the use of pagers issued by the Department for non-emergency calls to officers while off-duty;

5. <u>Grievance Five</u>: a 12-16-99 grievance claiming lost overtime pay solely for Burns and a corporal;

6. <u>Grievance Six</u>: a 12-19-99 grievance alleging Burns was wrongfully denied overtime wages;

7. <u>Grievance Seven</u>: a 1-4-00 grievance protesting Froehlich's changes to the officers three-month work schedule;

8. <u>Grievance Eight</u>: a 1-21-00 grievance similarly claiming that Burns was owed overtime wages;

9. <u>Grievance Nine</u>: a 7-19-00 grievance related to Burns' non-

4

promotion to corporal; and

10. <u>Grievance Ten</u>: a 10-3-00 grievance related to Burns' medical

benefits while on suspension.

Burns also filed what he calls "unfair labor practice

charges." Burns filed the following charges:

1. <u>Charge One</u>: a 9-3-99 charge in furtherance of Grievance Two

(disputing the private duty rate of pay);

2. <u>Charge Two</u>: a charge filed in either late 1999 or early 2000

alleging that Southbury had failed to comply with a

grievance settlement;

3. <u>Charge Three</u>: a charge filed in either late 1999 or early

2000 alleging that Southbury had unilaterally ceased a past

practice concerning holidays; and,

4. <u>Charge Four</u>: a March 2000 charge alleging that Southbury was

"hindering its employees from continuing to bargain

collectively" and was attempting to "disband and eliminate

the union."

II. <u>Burns' Alleged Problems at the Department</u>

The defendants point out a number of instances in which

Burns exhibited troubling behavior, "including insubordination

toward superiors and problem interactions with citizens."

1. In February 1996, Burns refused to report to a resident

state trooper regarding a traffic control issue,

articulating his concerns in a memo to Candido. In

response, Candido advised Burns in writing that "if you refuse to comply with a request from the Resident trooper that falls within your realm of police expertise, this could be considered insubordination, and therefore is subject to discipline."

2.   In December 1999, trooper Clayton Brown ordered Burns not to work overtime on a particular project.  However, Burns violated Brown's order.  Consequently, Brown and Froehlich warned Burns in writing that "future instances of insubordination will be dealt with on a progressive discipline level."  Burns acknowledged this warning by signing it.

3.   In 1998, Burns disobeyed an order to discontinue a high-speed chase.  Froehlich verbally reprimanded Burns and counseled him on the appropriate course of action in future situations.

4.   Also in 1998, Candido and Froehlich received complaints from two Southbury families claiming that Burns was "unfairly targeting them" in an attempt to retaliate against the families.  The Department ordered Burns not to have any contact with either family.

III.   The Promotional Exam

On April 25, 2000, Froehlich sent a memorandum to all town officers notifying them of a promotional exam for the position of

corporal.  Burns and two other Southbury officers, officers Brian
Hughes and Duane Manville, applied for the position.

The collective bargaining agreement ("CBA") between
Southbury and the Union stipulates that the "First
Selectman/Police Chief has the sole responsibility for
determining selection criteria for the position of corporal."
The selection of corporals is within the first selectman's
discretion.

The examination consisted of written and oral parts, each
worth forty percent of the examination.  The examination also
consisted of a component worth twenty percent based upon a
subjective evaluation of the officers' training and experience.
Burns received the highest score on the written and oral
components of the examination, a 21.50 and a 32 respectively.
Hughes received a score of 20.25 on the written examination and a
31.83 on the oral examination.  Candido however decided to give
Hughes a considerably higher score than Burns on the subjective
evaluation portion of the examination.  Burns claims that, "based
on the illegitimate score by Candido," he was denied the
promotion.  Candido claims that Hughes received a higher score on
the subjective evaluation because: 1) "he was known for his
leadership, selfless teamwork and initiative at the Department;"
2) he created and organized "a very successful program that
introduced young people to careers in law enforcement, [and]

[u]nder Hughes' leadership, that program [became one] of the most recognized in the State;" 3) he "volunteered to undertake the considerable task of helping to run the Department's Motor Pool;" and, 4) he "was well-liked and known as a dependable officer with well-rounded credentials." Candido contrasted Hughes' achievements and leadership ability with Burns' history of problems with the Department in deciding to award Hughes the highest score on the subjective evaluation component of the examination. Subsequently, Burns filed a grievance protesting the denial of promotion pursuant to the CBA. The grievance was the subject of an arbitration hearing before the state board of mediation and arbitration. The board's decision is pending.

VI.  The Bridge Incident

On July 20, 2000, while on duty, Burns responded to a call involving a suicidal man ("John Doe") running on the girders of a steel bridge connecting the towns of Southbury and Newtown. Troopers Mark Colangelo and Brown also responded to the call. Subsequently, John Doe's sister ("Jane Doe") arrived at the scene, visibly intoxicated and acting irrationally. Jane Doe's presence at the scene caused a disturbance, jeopardizing efforts to effectively handle the John Doe situation.

When Jane Doe arrived on the scene, she walked onto the bridge to confront her brother. Brown eventually approached Jane Doe on the bridge, identified himself as a state trooper, and

requested that she leave the bridge.  After refusing Brown's request, Jane Doe physically assaulted Brown.  Brown was forced to physically restrain the sister and place her under arrest once they reached the end of the bridge on the Southbury side.  Brown handcuffed Jane Doe and ordered Burns to continue the arrest and to assume the investigation of Jane Doe.  Burns at first refused the order from Brown.  Burns claimed that he had not seen the incident and therefore did not want to get involved.  However, within 15 minutes Burns acquiesced.

V.    The Suspension

Following the bridge incident, Candido met with Froehlich and requested an investigation regarding Burns' refusal to comply with Brown's order.  Froehlich relayed this to his superior at the state police, who thereafter assigned the investigation to Froehlich.  Froehlich notified Burns of the impending investigation and allegedly told him that he "might get a couple days off for his [alleged insubordination]."  Froehlich conducted the investigation and prepared a written report for Candido.  The report concluded that Burns violated four counts of the administration and operational manual, including insubordination, improper execution of commands, improper demeanor, and violation of general directives.

In August 2000, Candido informed Burns in writing of the evidence and charges against him.  Candido also told Burns that

there would be a pre-disciplinary hearing he was required to
attend, and at which Burns would be entitled to union
representation.  As the chief of police, Candido recommended
disciplinary actions against town officers.  In this instance, he
concluded that a sixty work day suspension was appropriate due to
the serious nature of the alleged insubordination.  However, the
Southbury board of selectmen would ultimately approve or
disapprove Candido's recommendations.

     Pursuant to their disciplinary authority, and "based on
Trooper Froehlich's report, the Plaintiff's unsatisfactory
explanation for his actions, and the potential danger caused by
the Plaintiff's actions," the Board held a meeting and decided to
follow Candido's recommendation and suspend Burns for sixty
working days.  The complaint here alleges that "[s]ome of the
members of the Board did not read the written report of the
investigation conducted by Froehlich."  Furthermore, the
complaint alleges Candido was the only person to address the
Board, and that "[a]lthough present at the meeting, [Burns] was
not allowed an opportunity to address the Board in response to
the allegations."  Although the applicable administrative and
operations manual section states that "the maximum allowable
suspension is sixty calendar days," Burns received a suspension
"equal to eighty-eight calendar days."  Moreover, "[b]efore the
suspension of [Burns], the largest penalty handed out to an

10

officer for any infraction in the town of Southbury was ten

working days.[3]  This infraction was also for insubordination."

Consequently, Burns filed a grievance over his suspension.  The

state board of mediation eventually arbitrated the dispute.

## STANDARD

Summary judgment is appropriately granted when the

evidentiary record shows that there are no genuine issues of

material fact and that the moving party is entitled to judgment

as a matter of law.  Fed. R. Civ. P. 56(c).  In determining

whether the record presents genuine issues for trial, the court

must view all inferences and ambiguities in a light most

favorable to the non-moving party.  See Bryant v. Maffucci, 923

F.2d 979, 982 (2d. Cir.), cert. denied, 502 U.S. 849 (1991).  A

plaintiff raises a genuine issue of material fact if "the jury

could reasonably find for the plaintiff."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 252 (1986).  Rule 56 "provides that

the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion

for summary judgment; the requirement is that there be no genuine

issue of material fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986).  "One of the principal purposes of the

summary judgment rule is to isolate and dispose of factually

---

[3] This suspension related to an officer who refused to remove
a four-leaf clover pin from his helmet when instructed to do so
by a superior.

11

unsupported claims . . . [and] it should be interpreted in a way
that allows it to accomplish this purpose."  <u>Celotex v. Catrett</u>,
477 U.S. 317, 323-24 (1986).

### DISCUSSION

### I.   First Amendment Retaliation Claim

Candido first moves for judgment as a matter of law on the
claim of first amendment retaliation.  Specifically, Candido
asserts that Burns "engaged in no activities protected by the
first amendment and fails to plead or produce any evidence of a
causal connection between his [alleged protected activities] and
the alleged harm he complains of."[4]

Burns counters that his "filing of unfair labor practice
charges and numerous [union] grievances are protected under the
First Amendment both intrinsically and because they involve
speech on matters of public concern."

As a threshold matter, a plaintiff claiming first amendment
retaliation must demonstrate that: "(1) his speech addressed a
matter of public concern, (2) he suffered an adverse employment
action, and (3) a causal connection existed between the speech
and the adverse employment action so that it can be said that his

---

[4] Burns also alleges in the complaint that he "consistently
leads the Southbury police force in DWI arrests [and that]
Candido retaliated against [Burns] for activities that negatively
impact [Candido's] liquor store."  However, Candido does not own
a liquor store, and Burns admits in his deposition, "I didn't
make that claim.  My attorney did."  Therefore, Burns' DWI
arrests are not an issue.

speech was a motivating factor in the determination." <u>Cobb v. Pozzi</u>, 363 F.3d 89, 102 (2d Cir. 2004)(citation omitted).  If the plaintiff satisfies these threshold considerations, the government may still avoid liability pursuant to either of two rationales.  <u>Id.</u>  The government may either: (1) demonstrate by a preponderance of the evidence that it would have taken the same adverse action regardless of the protected speech, or (2) show that the plaintiff's activities were likely to disrupt the government's activities, and that the likely disruption was sufficient to outweigh the plaintiff's first amendment protections.  <u>Id.</u>

      i.   <u>Matter of Public Concern</u>

"Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record."  <u>Lewis v. Cowen</u>, 165 F.3d 154, 163 (2d Cir. 1999)(citing <u>Connick v. Myers</u>, 461 U.S. 138, 147-48 and n. 7 (1983)).  Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community."  <u>Connick</u>, 461 U.S. at 146. "[W]hen a public employee speaks not as a citizen upon a matter of public concern, but instead as an employee upon matters of only personal interest, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken

13

by a public agency allegedly in reaction to the employee's
behavior.  Connick v. Myers, 461 U.S. 138, 147 (1983).  An
employee's speech relating to dissatisfaction with working
conditions or internal office affairs does not touch on a matter
of public concern.  See Connick v. Myers, 461 U.S. 138, 148-49
(1983)("To presume that all matters which transpire within a
government office are of public concern would mean that virtually
every remark - and certainly every criticism directed at a public
official - would plant the seed of a constitutional case."); see
also Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999).  Where the
employee speech at issue does not touch on a matter of public
concern, courts need not scrutinize the reason for the adverse
employment action.  Connick, 461 U.S. at 146.

To determine whether an employee's speech touches upon an
issue of public concern, the Second Circuit adheres to an
analysis which examines the employee's motives "to determine
whether the speech was calculated to redress personal grievances
or whether it had a broader public purpose."  Lewis v. Cowen, 165
F.3d 154, 163-64 (2d Cir. 1999); see Harman v. New York, 140 F.3d
111, 119 (2d Cir. 1998)(examining whether speaker was motivated
by "a desire to continue contributing to the public debate" when
criticizing practices and policies of social services agency);
also Blum v. Schlegal, 18 F.3d 1005, 1012 (2d Cir. 1994)("the
fact that an employee's speech [critical of national drug policy]

touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal"); Ezekwo v. New York City Health & Hospitals Corp., 940 F.3d 775, 781 (2d Cir.), cert. denied, 502 U.S. 1013 (1991)(examining whether speaker was "on a mission to protect the public" despite inherent public interest in criticism aimed at quality of physician training program).

Because Burns claims he was retaliated against due to his "filing of unfair labor practice charges and numerous grievances," the court examines each grievance to determine whether it constitutes protected speech.

Grievances Six, Eight, Nine, and Ten were clearly intended to "redress personal grievances" and had no broader public purpose because they were brought solely on Burns' behalf regarding personal disputes with the department. See Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999). In this regard, Grievance Six alleged Burns was wrongfully denied overtime wages. Grievance Eight similarly claimed that Burns was owed overtime wages. Grievance Nine related to Burns' non-promotion to corporal, while Grievance Ten related to Burns' medical benefits while suspended from the Department. In addition to failing to touch on a matter of public concern, Grievance Nine and Grievance Ten could not play a part in any retaliatory motive relating to the corporal examination because both were filed after Burns'

non-promotion.  Furthermore, Grievance Ten could not play a part in any retaliatory motive because it was filed after the non-promotion and suspension hearing.  Because these grievances related to internal personnel disputes and working conditions, and were solely intended to redress personal grievances, they do not touch on a matter of public concern.

The remaining six grievances, while not filed solely on behalf of Burns, still fail to touch on a matter of public concern because they relate only to union members dissatisfaction with working conditions.  See Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999).  Grievance One claimed that a new procedure implemented by the Department requiring officers to write reports on a computer in the office, instead of by hand in the field, violated the collective bargaining agreement between Southbury and the Union.  Burns filed Grievance Two because of a disagreement over the rate of pay received by officers for private duty jobs.  Grievance Three was filed solely on behalf of a corporal because he was contacted to work on a day that had been approved as his personal vacation time.  Burns filed Grievance Four protesting the use of pagers issued by the Department for non-emergency calls to officers while off-duty. Burns filed Grievance Five claiming lost overtime pay solely for himself and a fellow officer.  Burns filed Grievance Seven in protest of Froehlich's changes to the officers three-month work

16

schedule.  Even viewed in a light most favorable to the
plaintiff, the court can not discern a broad public purpose from
any one of these internal personnel, working condition disputes.

While none of the grievances touch on a matter of public
concern, one of the unfair labor charges arguably touches on a
matter of public concern.  Charge One failed to touch on a matter
of public concern because its sole purpose was to further a
grievance that was a working condition dispute.  Charges Two and
Three were similar in nature to Charge One, their sole purpose
being to further grieve working condition disputes.  However,
Charge Four, alleging that Southbury was "hindering its employees
from continuing to bargain collectively" and attempting to
"disband and eliminate the union," viewed in the light most
favorable to the plaintiff, arguably touches on a matter of
public concern.  See Heil v. Santoro, 1997 WL 102451(S.D.N.Y.
Feb. 28, 1997), aff'd, 147 F.3d 103 (2d Cir. 1998)(finding that
filing of unfair labor practice charges alleging defendant town
failed to bargain in good faith and violations of state labor law
arguably touched on matters of social and political concern).
Therefore, since Burns engaged in protected activity under the
first amendment, and because the defendants admittedly made an
adverse employment decision in regards to Burns, the court must
decide whether there was a causal connection between Charge Four
and the adverse employment action.

ii.  <u>Causal Connection</u>

A plaintiff may not rely on conclusory assertions to establish a causal link between the protected activity and the adverse action.  <u>Cobb v. Pozzi</u>, 363 F.3d 89, 108 (2d Cir. 2004). Candido acknowledged in his deposition that he considered Burns' grievances when evaluating him for promotion.  In addition, Candido brought up the grievances at Burns' disciplinary hearing before the Board, although the court does not know in what context or to what extent.  Nevertheless, Burns fails to produce any evidence that Candido considered the unfair labor charges at any point in either the scoring of the promotional examination or in his suspension recommendation to the Board.  However, the temporal proximity of the filing of the unfair labor charge and the non-promotion and eventual suspension is enough to provide circumstantial evidence of a causal connection.  <u>See</u> <u>Bennett v. Goord</u>, 343 F.3d 133, 138 (2d Cir. 2003)("the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of a retaliation.").  Therefore, the court must determine whether the government would have made both of the adverse employment decisions despite the unfair labor charges.

iii. <u>Would Southbury have taken the same adverse employment action despite the protected speech?</u>

If the defendants can demonstrate by a preponderance of the evidence that, 1) Hughes would have been promoted over Burns

18

regardless of the unfair labor charge, and 2) that Burns would have been suspended for insubordination regardless of the unfair labor charge, they would not be liable for violation of the First Amendment.

The promotional examination essentially turned on the third component, the subjective evaluation portion graded by Candido. Hughes and Burns had essentially identical scores on the first two components. Candido claims that Hughes received the highest score on the third component because he was an exemplary leader within the department, while Burns had problems interacting with authority figures and the general citizenry. Furthermore, the CBA stipulates that it is within the discretion of the first selectman to promote officers to corporal. Given the compelling evidence the defendants have presented indicating Hughes was best suited for the job, it can not be said that the government would have promoted Burns over Hughes if not for the unfair labor charge even viewing the evidence in the light most favorable to the plaintiff. The defendants have demonstrated by a preponderance of the evidence that they would have made the same adverse employment decision even if Burns had not filed the unfair labor charge.

The Southbury board of selectman disciplined Burns for a serious instance of insubordination. Burns admits that he did not follow a superior's order in a highly volatile situation,

19

possibly putting lives in danger.  The defendants have also
presented evidence of past instances of insubordination on Burns'
part.  While Burns did receive an unprecedented suspension in
regards to the Department, his insubordination was much more
severe and potentially dangerous to effective policing than an
officer refusing to remove a four-leaf clover pin from his
helmet.  Due to the severe nature of Burns' admitted
insubordination, given the evidence presented by both parties, a
reasonable jury would find that the government would have taken
the same action regardless of the unfair labor charges.
Accordingly, because the defendants have demonstrated by a
preponderance of the evidence that they would have taken the same
adverse action in both the non-promotion and the suspension,
regardless of the unfair labor charge, summary judgment is
granted with respect to count I.

II.  Procedural Due Process Claim

     The defendants next move for summary judgment on the claim
of denial of procedural due process.  Specifically, the
defendants claim that Burns was provided with notice of the
charges and evidence against him and an opportunity to present
his side of the story at a pre-disciplinary hearing.

     Burns claims that he has been denied procedural due process
by the defendants because the Southbury board of selectman did
not provide him with an opportunity to respond to the charges

20

levied against him prior to his suspension. Specifically, Burns alleges he was denied "a fair and meaningful opportunity to be heard" and "an opportunity to cross-examine the evidence against him."

"In analyzing plaintiffs' procedural due process claims, the court must first determine (1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." Martin v. Town of Westport, 329 F. Supp. 2d 318, 334 (D. Conn. 2004)(quoting Sealed v. Sealed, 332 F.3d 51, 55 (2d Cir. 2003). "The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Narumanchi v. Board of Trustees, 850 F.2d 70, 72 (2d Cir. 1988); see also Mathews v. Eldridge, 424 U.S. 319 (1976).

The defendants do not contest the plaintiff's allegation that he has a constitutionally "protected property interest in his continued employment with the government." However, the parties disagree over Burns' opportunity to be heard prior to his suspension. Thus, the issue is whether Burns had the opportunity to be heard prior to his suspension, and if not, whether the arbitration proceedings before the state board of mediation and arbitration subsequent to the suspension were sufficient procedural protections.

While the defendants assert that a letter sent to Burns on March 17, 2000, offering him a chance to present his response to the charges against him, is proof that he was offered an opportunity to be heard, there is no evidence establishing Burns was offered an opportunity to speak at the pre-disciplinary hearing. Nevertheless, "[i]t is well established . . . that the type of grievance procedure provided [to Burns subsequently] is sufficient to satisfy constitutional standards." Martin v. Town of Westport, 329 F. Supp. 2d 318, 335 (D. Conn. 2004). Burns was able to pursue arbitration with the state board of mediation and arbitration following the suspension hearings pursuant to the collective bargaining agreement with Southbury. "Courts have held that such post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process." Martin v. Town of Westport, 329 F. Supp. 2d 318, 335 (D. Conn. 2004)(citing Narumanchi v. Board of Trustees, 850 F.2d 70, 72 (2d Cir. 1988)(dismissing appellant's due process claim because the limited procedural rights guaranteed are satisfied by pre-deprivation notice and hearing rights provided in grievance procedures under collective bargaining agreement); see also Costello v. Town of Fairfield, 811 F.2d 782, 786 (2d Cir. 1987)(Van Graafeiland, J., concurring) (finding post-deprivation arbitration of grievances under collective bargaining agreement satisfied due process). Because

22

Burns was not denied procedural due process with regard to his suspension, summary judgment is granted with respect to count II.

III. <u>Violation of Equal Protection Clause</u>

     Defendant Candido next contends that he is entitled to summary judgment on the plaintiff's equal protection claim as a matter of law.  Specifically, Candido claims that there is no right to be free from retaliation under the equal protection clause.

The plaintiff claims that Candido, by virtue of his authority as chief of police, denied the plaintiff the equal protection of the law when he allegedly pursued charges and prosecution in retaliation for the plaintiff's union activities.

Even if the plaintiff has presented enough evidence to support his allegations, the court concludes, as a matter of law, that the plaintiff's equal protection claim is insufficient to withstand the defendant's motion for summary judgment.

"The Second Circuit has not recognized a right under the Equal Protection Clause to be free from retaliation based on union activity." <u>Petrario v. Cutler</u>, 187 F.Supp.2d 26, 35 (D. Conn. 2002)(granting motion for summary judgment when state employee alleged retaliation after filing a union grievance for alleged collusion between union and state health center); <u>see, e.g.,</u> <u>Thompson v. City of Starkville</u>, 901 F.2d 456, 468 (5th Cir. 1990)(dismissing plaintiff's equal protection retaliation claim

because "it amounts to no more than a restatement of his first amendment claim").  Furthermore, "[a]lthough claims of retaliation are commonly brought under the First Amendment . . . and may also be brought under Title VII . . . we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination." Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996)(holding that teacher's allegations that school principal retaliated against her for making racial-discrimination complaints did not state equal protection claim); see also Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997) ("a pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause."); but cf. Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1353 (2d Cir. 1994) (reversing dismissal of contractor's equal protection claim against building inspectors because he had adequately alleged "selective treatment . . . in retaliation for the exercise of [his] First Amendment rights").  Accordingly, as the plaintiff has not offered an alternate basis for his equal protection claim, the motion for summary judgment with respect to count III is granted.

IV.    Violation of First and Fourteenth Amendment

The defendant further moves for judgment as a matter of law on the claim that Candido's alleged violations of Burns' constitutional rights properly form the basis for liability

24

against both Candido and Southbury.  Specifically, the defendants
argue that Burns can not cite any municipal practice or custom of
retaliation in employment practices; therefore, he is unable to
impute any liability to Southbury.

The plaintiff claims that Southbury, through Candido,
"failed to secure to the plaintiff, unlawfully deprived the
plaintiff, or caused the plaintiff to be unlawfully deprived of
rights secured to him by the United States Constitution and Title
42 United States Code §1983 [sic], et seq., in one or more of the
following ways: a) Failure or refusal to promulgate and enforce
appropriate guidelines, regulations, policies, practices,
procedures, or customs regarding personnel actions and discipline
of officers; b) Failure or refusal to adequately supervise the
supervisors in the  performance of their duties and conduct
toward employees," and that "such conduct . . . constituted a
continuing and moving force behind the violation of the civil
rights of the plaintiff. . . ."

"A municipality may not be held liable in an action under 42
U.S.C. § 1983 for actions alleged to be unconstitutional by its
employees below the policymaking level solely on the basis of
*respondeat superior*."  Zahara v. Town of Southold, 48 F.3d 674,
685 (2d Cir. 1995)(citation omitted).  A municipality can only be
held liable under 42 U.S.C. § 1983 when a plaintiff pleads and
proves three elements: "(1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a
constitutional right." Id. (citation omitted); see also Monell
v. Department of Social Servs., 436 U.S. 658 (1978). A municipal
policy may be inferred from the acts or omissions of supervisory
municipal personnel. Additionally, "municipal inaction such as
the persistent failure to discipline subordinates who violate
[persons'] civil rights could give rise to an inference of an
unlawful municipal policy of ratification of unconstitutional
conduct." Zahara, 48 F.3d at 685 (citation omitted).

While the plaintiff did plead in his complaint that
Candido's actions "became the custom, decisions, and policies of
Southbury," "the mere assertion . . . that a municipality has
such a custom or policy is insufficient in the absence of
allegations of fact tending to support, at least
circumstantially, such an inference." Dwares v. City of New
York, 985 F.2d 94, 100 (2d Cir. 1993). This court finds the
record devoid of any evidence from which a reasonable juror could
infer the existence of a municipal policy.

All of the plaintiff's allegations in regards to this count
are merely conclusory. The plaintiff alleges that Southbury has
refused to properly promulgate and enforce appropriate guidelines
regarding personnel actions and discipline; however, Southbury's
personnel rules explicitly set forth such guidelines.
Furthermore, the plaintiff admits that he is unaware of any other

26

incidents of Union retaliation and thus can not establish any pattern which could be inferred as an official policy or custom regarding Union retaliation.

Because the plaintiff is unable to establish an official policy or custom of Union retaliation on the part of Southbury, the motion for summary judgment with respect to count IV is granted.

V.    Intentional Infliction of Emotional Distress

_____The defendants move for judgment as a matter of law on the claim of intentional infliction of emotional distress. Specifically, the defendants assert that even if the plaintiff's claims in the complaint are true, they are insufficient to withstand a motion for summary judgment.

Burns alleges that Candido "intended to inflict severe emotional distress upon the Plaintiff, and knew or should have known at all times that [his] acts and/or omissions . . . would result in severe emotional distress to the Plaintiff."

To sustain a claim for the intentional infliction of emotional distress, a plaintiff must allege: "(1) that the actor intended to inflict emotional distress, or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the

27

plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253 (1986)(citation omitted).  The Connecticut supreme court has defined "extreme and outrageous conduct" as conduct that exceeds "all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Peytan, 200 Conn. at 254 n.5 (1986)(citation omitted, internal quotations omitted).  A defendant is liable "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized community." Reed v. Signode Corp., 652 F.Supp. 129, 137 (D. Conn. 1986)(citation omitted, internal quotations omitted).

The plaintiff has failed to provide factual support for his allegation that Candido's behavior was "extreme and outrageous." Even if the plaintiff's allegations are true, they essentially amount to employment discrimination.  Although employment discrimination is illegal, it does not per se give rise to a claim for intentional infliction of emotional distress.  See, e.g., Allen v. Egan, 303 F.Supp.2d 71, 78 (D. Conn. 2004); see also Hill v. Meta Group, 62 F.Supp.2d 639 (D. Conn. 1999).  Some of the incidents that Burns complains of may have been hurtful and ultimately distressing, but as a matter of law they are not matters which can be considered utterly intolerable in a

civilized community.  <u>See</u> <u>Appleton v. Board of Educ. of Town of Stonington</u>, 254 Conn. 205, 211 (2000); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Lucuk v. Cook</u>, No. CV950050210S, 1998 WL 67412, at *5 (Conn. Super. Ct. Feb. 11, 1998)("[C]ourts appear to agree that mere insults or verbal taunts do not rise to the level of extreme and outrageous conduct even when they include obnoxious activity like threats, insults, or taunts.").

        The plaintiff has failed to adduce sufficient facts from which a reasonable jury could conclude that Candido's behavior was extreme and outrageous.  Accordingly, the defendants motion for summary judgment on this count is granted.


## Conclusion

    For the reasons stated herein, the defendant's motion for summary judgment on all counts is GRANTED.

    It is so ordered this 2nd day of November, 2005, at Hartford, Connecticut.


                        _____
                        Alfred V. Covello
                        United States District Judge